**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION**

| | |
|---|---|
| JOHN DOE,<br><br>  Plaintiff,<br><br>v.<br><br>UNIVERSITY OF IOWA; BOARD OF REGENTS, STATE OF IOWA; TIFFINI STEVENSON EARL, individually and in official capacity; IRIS FROST, individually and in official capacity; LYN REDINGTON, individually and in official capacity; ANGIE REAMS in official capacity; CONSTANCE SCHRIVER CERVANTES, individually and in official capacity; JOHN KELLER, individually and in official capacity; MONIQUE DICARLO, individually and in individual capacity; and MARK BRAUN, individually and in official capacity,<br><br>  Defendants. | **CASE NO. 3-19-CV-00047**<br><br><br><br>**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................3

BACKGROUND ..................................................................................................................4

ARGUMENT ..................................................................................................................5

I.     Legal Standard for a 12(b)(6) Motion..............................................................................5

II.    Defendants Stevenson Earl, Frost, Redington, Keller, and Braun Are Entitled to Quasi-Judicial Immunity. ..........................................................................................................6

III.   Defendant Constance Schriver Cervantes Is Entitled to Quasi-Prosecutorial Immunity. 8

IV.   The Individual Defendants Should Be Dismissed from Plaintiff's 42 U.S.C. § 1983 Claims for Denial of Due Process.....................................................................................9

A.      The individual Defendants are shielded by the doctrine of qualified immunity. ...................................................................................................................9

B.      Even if Defendants are not entitled to qualified immunity at this stage, most of Plaintiff's individual capacity claims fail as a matter of law. ............................12

V.      Plaintiff Has Failed to Assert Plausible Claims for Relief Under Title IX of the Education Amendments of 1972. ..................................................................................................15

      A.      Plaintiff has failed to assert a plausible claim that the discipline imposed on him by the University was motivated by gender bias. ........................................16

      B.      Plaintiff has failed to assert a plausible claim that the University created a hostile environment of discrimination against male students. ...........................19

      C.      Plaintiff has failed to assert a plausible claim that the University demonstrated "deliberate indifference" to discrimination against male students. ...................20

VI.     Plaintiff's Race Discrimination Claim Fails as a Matter of Law. ...................................23

      A.      A federal action to enforce rights under 42 U.S.C. § 1981 against a state actor may only be brought pursuant to 42 U.S.C. § 1983...........................................23

      B.      Plaintiff's 42 U.S.C. § 1981 claim fails as a matter of law................................23

VII.    Plaintiff's Breach of Contract Claim Fails as a Matter of Law. ....................................24

      A.      Plaintiff's state law claims are barred by the Eleventh Amendment. .................24

      B.      Even if Plaintiff's claims are not barred, this Court should dismiss Plaintiff's Breach of Contract claim because it fails to state a claim for which relief can be granted.......................................................................................................26

      C.      Plaintiff fails to sufficiently allege the existence of a contract. .........................26

      D.      Plaintiff's claim that the University of Iowa entered into an implied contract with him must be dismissed as a matter of law. .................................................27

CONCLUSION.................................................................................................................28

## INTRODUCTION

Plaintiff John Doe brings his Third Amended Complaint against the University of Iowa ("UI" or "the University"), the Board of Regents, State of Iowa ("the Board"), and several University and Board officials after he was expelled for violating UI's Sexual Misconduct Policy and Code of Student Life by sexually harassing and assaulting two fellow students and by possessing and consuming alcohol on campus. Plaintiff does not deny violating the campus alcohol policy.[1] Plaintiff does deny he violated the Sexual Misconduct Policy, asserts a number of faults with the University's handling of his case and claims various violations of his constitutional, statutory, and contractual rights. Specifically, Plaintiff's Third Amended Complaint outlines claims for Violations of 42 U.S.C. § 1983 for denial of Fourteenth Amendment Procedural and Substantive Due Process (Count I); Violation of Title IX of the Education Amendments of 1972 under various theories (Counts II-IV);  Violations of 42 U.S.C. § 1981 for Race, National Origin, and Color Discrimination (Count V); Violation of 42 U.S.C. § 1983 for denial of Fourteenth Amendment Equal Protection (Count VI); Violation of State Contract law (Count VII); and Declaratory Judgment for Violation of the United States and Iowa Constitutions (Count VIII). Plaintiff's conclusory assertions that Defendants violated his rights are insufficient as a matter of law. Because Plaintiff's Third Amended Complaint does not contain sufficient factual matter to state a claim for relief that is plausible on its face, Plaintiff's claims for violations of his 42 U.S.C. § 1983 due process rights; violations of Title IX of the Education Amendments of 1972; violations of his Fourteenth Amendment equal protection rights; violations of 42 U.S.C. § 1981; and breach of contract must be dismissed in their entirety. Additionally, Defendants urge the Court to issue an

---

[1] Plaintiff does not appear to challenge his violation of the campus alcohol policy in this case and thus, Defendants focus on his challenges to the University's findings related to sexual misconduct and the sanctions imposed.

order dismissing the Defendants named in their individual capacities under the doctrines of qualified immunity, quasi-judicial immunity, and prosecutorial immunity.

## BACKGROUND[2]

On February 10, 2017, Defendant Lyn Redington, the University's Dean of Students, informed Plaintiff John Doe that her office was launching an investigation into allegations against him for sexual assault and harassment brought by UI student Sally Roe.[3] 3rd Am. Compl. ¶ 118; Attachment 1 (Mar. 20, 2017, Notice of Second Complaint and Interim Sanctions). As a result of this complaint, Defendant Redington assigned Defendant Tiffini Stevenson Earl, a compliance officer with UI's Office of Equal Opportunity & Diversity ("OEOD"), to investigate the complaint.[4] 3rd Am. Compl. ¶ 118; Attachment 1. On March 20, 2017, Defendant Redington notified Plaintiff of a second complaint, filed by UI student Lisa Roe, alleging sexual harassment by Plaintiff. Attachment 1. Given the factual similarities between the two complaints, Defendant Redington also assigned the second complaint to Defendant Stevenson Earl. Attachment 1.

Upon completion of her investigations, Defendant Stevenson Earl issued two memoranda of findings for the respective complaints: a 25-page report for Sally Roe's complaint, and a 23-page report for Lisa Roe's complaint. *See* 3rd Am. Compl. ¶ 120; Attachment 2 (June 23, 2017, Memo. of Findings – Sally Roe Complaint); Attachment 3 (June 23, 2017, Memo. of Findings –

---

[2] Defendants take the well-pleaded allegations in Plaintiff's Third Amended Complaint as true only for purposes of this motion. *See, e.g., McCauley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007). This presumption does not extend to conclusory allegations or "legal conclusion[s] couched as . . . factual allegation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Defendants adopt Plaintiff's chosen pseudonyms for Plaintiff's accusers.

[4] Plaintiff's Third Amended Complaint states that Redington informed Doe that Stevenson Earl would be designated as the Judicial Administrator or Investigator
"for both complaints", but Dr. Redington was not yet aware of the second complaint on February 10, 2017. *See* Attachment 1.

Lisa Roe Complaint). Plaintiff was ultimately expelled for violating the University's Code of Student Life. 3rd Am. Compl. ¶ 6.

## ARGUMENT

### I.     Legal Standard for a 12(b)(6) Motion.

A complaint that fails to state a claim upon which relief can be granted must be dismissed. Fed. R. Civ. P. 12(b)(6). While a complaint need not contain "detailed factual allegations," in order to state a claim, Plaintiff must provide more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]". *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also* Fed. R. Civ. P. 8(a)(1)–(3). Complaints which offer nothing more than "labels or conclusions" or "formulaic recitation of the elements of a cause of action" are not sufficient. *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility" standard is not the equivalent of a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

In evaluating the sufficiency of a complaint pursuant to a 12(b)(6) motion, a court must accept the factual allegations as true. *Id.* There is no such requirement that the Court accept the legal conclusions set forth in a complaint as true. *Id.* Courts evaluate plausibility under *Iqbal* and *Twombly* by "'draw[ing] on [their own] judicial experience and common sense'" and will consider "only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint.'" *Whitney v. Franklin General Hosp.*, 995 F. Supp. 2d 917, 925 (N.D. Iowa 2014)

(citing *Whitney v. Guys*, 700 F. 3d 1118, 1127 (8th Cir. 2012); *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003)). When deciding a motion to dismiss, "a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003).

## II. Defendants Stevenson Earl, Frost, Redington, Keller, and Braun Are Entitled to Quasi-Judicial Immunity.

Individual Defendants Tiffini Stevenson Earl ("Judicial Administrator/Investigator"), Iris Frost ("Adjudicator"), Lyn Redington ("Dean of Students"), John Keller ("Associate Provost for Graduate Education"), and Mark Braun ("Executive Director") are entitled to quasi-judicial immunity from Plaintiff's claims and should be dismissed in their individual capacities. Quasi-judicial immunity provides absolute immunity from suit for "persons who perform quasi-judicial functions." *VanHorn v. Oelschlager*, 457 F.3d 844, 847 (8th Cir. 2006).[5] An official's function is a "quasi-judicial function" where that function is "similar to the judicial process," "likely to result in lawsuits for damages by disappointed parties, and sufficient safeguards exist in the regulatory framework to control unconstitutional conduct." *Id.* The doctrine of judicial immunity "is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages for liability." *Fink c. Kitzman*, 881 F. Supp. 1347, 1394 (N.D. Iowa 1995). Like judges, University officials presiding over and facilitating a student misconduct process are exposed to substantial risk of becoming the target of legal actions brought by disappointed students. In *Vanhorn*, the Eighth Circuit Court of Appeals determined that quasi-judicial immunity applied to shield hearing officers where they

---

[5] Defendants acknowledge that quasi-judicial immunity is not available for defendants sued in their official capacities. *VanHorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007).

completed various tasks which were similar to those undertaken as part of the judicial process, including activities such as preparing an official record including testimony and exhibits, admitting evidence, recognizing the rules of privilege, administering oath, compelling the attendance of witness and the production of documents, requiring the submission of briefs, and rendering final decisions. *Id.* at 847-848; *see also Doe v. University of Arkansas-Fayetteville*, No. 5:18-CV-05182, 2019 WL 1493701, at *11 (8th Cir. April 24, 2019) (holding that student conduct appeal board members at the University of Arkansas were entitled to quasi-judicial immunity relating to their role).[6]

Here, each of the individual capacity Defendants named above played an important quasi-judicial role in processing Plaintiff's case. Defendant Stevenson Earl was involved in investigating the complaint, interviewing witnesses, gathering documents, and compiling the hearing record. Defendant Frost served as the adjudicator in this matter, directed the proceedings, heard testimony, excluded or admitted evidence, examined witnesses, reviewed documents, and issued a decision relating to Plaintiff's responsibility for the conduct of which he was accused. Defendant Keller, in his role as Associate Provost, reviewed Plaintiff's appeal and the underlying record, reviewed the applicable University policies, and issued a decision to uphold the sanctions which were imposed on Plaintiff. Defendant Braun, in his role as the Executive Director of the Board of Regents, received the record on appeal to the Board of Regents, reviewed the evidence, directed the parties to submit briefing, and issued a decision. Each of these individuals served the University in a quasi-judicial capacity. Any decision made by them in their service to the University and thus to the State of Iowa "may result in a § 1983 lawsuit for damages by disappointed students." *See Doe*, 2019 WL 1493701, at *11.   As such, extra protections are needed to shield them from frequent

---

[6] Appeal argued and submitted on various issues, including the question of quasi-judicial immunity for individually named defendants. *See Doe v. University of Arkansas-Fayetteville*, No. 19-1842 (8th Cir. Jan. 15, 2020).

lawsuits brought against them in their individual capacities. *Id.* Finally, a grant of quasi-judicial immunity is reasonable and just, because Plaintiff and other students are protected by Title IX regulations and the due process clause of the Fourteenth Amendment, which "work in conjunction to ensure that hearing panel members and university officials act constitutionally" in adjudicating claims. *Id.* This Court should grant the individual capacity Defendants listed above quasi-judicial immunity in this case.

### III. Defendant Constance Schriver Cervantes Is Entitled to Quasi-Prosecutorial Immunity.

Prosecutors are absolutely immune from a suit for civil damages under 42 U.S.C. § 1983 in "initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Such immunity is necessary, because "affording . . . only a qualified immunity to the prosecutor . . . could have an adverse effect upon the functioning of the criminal justice system" insofar as prosecutors frequently act under serious constraints of time and information, and "inevitably make[] many decisions that could engender colorable claims of constitutional deprivation." *Id.* at 425-26. Where the role of a State official is "functionally comparable to that of a prosecutor," an absolute quasi-prosecutorial immunity can be extended to protect the official with relation to actions taken by the official as a participant in the underlying administrative proceedings. *See Whisman Through Whisman v. Rinehart*, 119 F.3d 1303, 1308 (8th Cir. 1997).

Defendant Constance Schriver Cervantes was the functional equivalent of a prosecutor in the University's student misconduct process. In that role, Defendant Schriver Cervantes built a case against Plaintiff based on the evidence provided to her, drafted a direct examination to be provided to the Adjudicator, presented evidence at the hearing, and generally represented the interests of the University in maintaining a safe campus environment for students. Doe's allegations against Schriver Cervantes are framed in relation to actions she would have taken

pursuant to her prosecutorial role. *See* 3rd Am. Compl. ¶¶ 139, 370 (Schriver Cervantes issuing charges and interim sanctions against Doe); ¶¶ 140, 370, 451 (Schriver Cervantes rejecting Doe's demand that the sanctions against him be altered or lifted); ¶¶ 16, 119 (Schriver Cervantes compiling evidence for hearing and providing evidence to Plaintiff and his attorney); ¶ 161 (Schriver Cervantes "barraging" Doe with questions at the hearing). Since Doe's complaints against Schriver Cervantes relate to actions she undertook through her quasi-prosecutorial role, she is absolutely immune from suit based on those actions and should be dismissed in her individual capacity.

## IV.     The Individual Defendants Should Be Dismissed from Plaintiff's 42 U.S.C. § 1983 Claims for Denial of Due Process.

### A.   The individual Defendants are shielded by the doctrine of qualified immunity.

Under the doctrine of qualified immunity, government officials whose conduct has not "violated clearly established statutory or constitutional rights of which a reasonable person would have known" are not liable for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Whether a legally protected interest is clearly established turns on the 'objective legal reasonableness of an official's acts.' Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate." *Burnham v. Ianni*, 119 F.3d 668, 674 (8th Cir. 1997). Qualified immunity balances the need to hold public officials accountable for their conduct with the need to shield public servants from harassment, distraction, and liability when their conduct has been reasonable. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Government officials who meet the above criteria are protected by qualified immunity whether the alleged error in conduct is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (citing *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (KENNEDY, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507

(1978), for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")). Further, a qualified immunity defense "may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

Lower courts were once required to engage in a rigid two-step analysis to determine whether defendants were entitled to qualified immunity—first, analyzing the facts to decide whether a case could be made for a constitutional violation, and then determining whether, at the time of defendant's alleged misconduct, the constitutional right at issue was "clearly established." *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, in *Pearson v. Callahan*, the United States Supreme Court did away with the rigid framework set forth in *Saucier* and determined that requiring courts to determine difficult constitutional questions in cases in which, for example, "it is plain that a constitutional right is not clearly established, but far from obvious whether in fact there is such a right" was an unwise use of scarce judicial resources. 555 U.S. at 236–37. Under *Pearson*, the procedure set forth in *Saucier* is no longer mandatory, and district court judges are encouraged to decide which prong of the test to address first in order to make a "fair and efficient disposition of each case." *Id.* at 236–42.

Because of the potentially lost benefits of qualified immunity, which include "the costs and expenses of litigation, and discovery in particular, which is a type of burden distinct from appeals and other lawyer-driven aspects of a case [,]" qualified immunity questions should be resolved "at the earliest possible stage in litigation." *Payne v. Britten*, 749 F. 3d 697 (8th Cir. 2014).

1. *The constitutional rights plaintiff claims were not "clearly established" at the time of Defendants' alleged misconduct.*

Plaintiff cannot show that the law was so clearly established regarding any of the actions outlined in his Petition that a reasonable university administrator would have known that he or she was allegedly acting in violation of the law by implementing the University of Iowa's student conduct procedures. Indeed, in the context of student disciplinary proceedings on a college campus, a university is not required to maintain a student conduct system which complies with all aspects of criminal procedure. *See Jones v. Snead*, 431 F.2d 1115, 1117 (8th Cir. 1970) (citing *Esteban v. Central Missouri State College*, 415 F.2d 1077 (8th Cir. 1969) (noting that "it is not sound to draw any analogy between student discipline and criminal procedure.")). Since the application of the Due Process clause is "intensely practical" and can vary based on the facts of a particular case, "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Goss v. Lopez,* 419 U.S. 565, 577 (1975). Courts apply a "reasonableness" standard in determining whether a student has been deprived of his or her constitutional rights, and require only that due process be afforded "by way of adequate notice, definite charge, and a hearing with opportunity to present one's own side of the case and with all necessary protective measures." *Jones*, 431 F.2d at 1117.

Further, universities are afforded additional flexibility in adjudicating student conduct cases, and not "every deviation from a University's regulations constitutes a deprivation of due process." *See Edwards v. Board of Regents of Northwest Missouri State University*, 397 F. Supp. 822, 830 (W.D. Mo. 1975) (collecting cases in which courts have upheld a student's dismissal or suspension where the university failed to follow its established procedures but nevertheless complied with the requirements of due process). This flexibility allows for practical adjustments to the process—particularly when those adjustments have no real bearing on Plaintiff's ability to

be heard. Since Plaintiff will be unable to show that a reasonable public official would have been on notice, pursuant to clearly established law on each topic, that taking the actions outlined in his Amended Complaint would violate Plaintiff's due process rights, this Court must dismiss his claim against the individual Defendants as barred by the doctrine of qualified immunity.

**B.   Even if Defendants are not entitled to qualified immunity at this stage, most of Plaintiff's individual capacity claims fail as a matter of law.**

In his Amended Complaint, Plaintiff names as a Defendant every University official who had contact with his case in any capacity. However, "liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (internal quotations and citations omitted). "In a § 1983 suit . . . masters do not answer for the torts of their servants" and "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.  Plaintiff accuses the individual Defendants of the following conduct:

*1.   Lyn Redington*

In his Amended Complaint, Plaintiff alleges that Defendant Redington's decision to expel him resulted in a sanction which was "disproportionate to both the severity of the conduct . . . . and to the sanctions imposed in more serious cases of penetrative sexual assault." 3rd Am. Compl. ¶¶ 371, 471. Plaintiff complains that Redington "violated UI Policies and Doe's constitutional rights" by "failing to provide a rationale for her decision." *Id.* at ¶ 370. Defendant Redington is referenced throughout the Amended Complaint for her participation in emailing documents to the various individuals involved, and for designating Defendant Tiffini Stevenson Earl as Judicial Administrator and Investigator. *Id.* at ¶¶ 118, 231. Plaintiff complains that Defendant Redington

declined to defer his sanctions, though apparently conceding that she had discretion whether or not to do so. *Id.* at ¶ 138. Plaintiff also claims that Defendant Redington denied him access to mental health services on campus by refusing to reduce or waive the sanctions against him. *Id.* at ¶¶ 142, 233-35, 373, 425. Each of the discretionary decisions described above were objectively reasonable for Defendant Redington to take in her role as the University of Iowa's Assistant Vice President and Dean of Students for Student Affairs and cannot plausibly support Plaintiff's claim that she was directly responsible for depriving him of his constitutional rights. As such, Redington should be dismissed in her individual capacity.

### 2. *Constance Schriver Cervantes*

Though acknowledging the University's right to issue sanctions in student misconduct cases, Plaintiff accuses Defendant Schriver Cervantes of refusing to allow Doe to finish his degree and of "increasing the interim sanctions" which, while excluding Doe from most University buildings, allowed him to attend his classes in the Lindquist Center. 3rd Am. Compl. ¶¶ 139-140, 370. Plaintiff characterizes Schriver Cervantes' discretionary decisions relating to sanctions as failing to "accommodate his needs." 3rd Am. Compl. ¶ 451. Plaintiff complains that "Cervantes' notice fail[ed] to mention that Doe will be held responsible for the 'educational mission' of Complainants" and asserts that "[e]very reasonable official would understand that this, along with Doe's right to be heard at a meaningful time and in a meaningful manner, violates clearly established law." 3rd Am. Compl. ¶ 370. Schriver Cervantes is further accused of "barraging Doe with questions one after another" at the disciplinary hearing in this matter. 3rd Am. Compl. ¶ 161. Without establishing any cognizable duty to report, Plaintiff complains generally about Schriver Cervantes' alleged failure to report purported "discriminatory conduct" of which she "knew or should have known." 3rd Am. Compl. ¶¶ 469, 500. All of the acts of which Defendant Schriver Cervantes is accused, if taken as true for the purposes of this motion, are objectively reasonable

13

behavior for the Charging Officer in a student misconduct case and do not support a claim that she directly violated any of Plaintiff's constitutional rights. Defendant Schriver Cervantes should be dismissed in her individual capacity.

### 3. John Keller

Defendant Keller is accused only of upholding the University's sanctions decision and writing a "single sentence stating he found no violations, and that the sanction was not disproportionate." 3rd Am. Compl. ¶¶ 243-44. Defendant Keller is not accused of violating any of the University's policies—only of addressing Plaintiff's appeal in a "callously indifferent" manner by apparently not including a sufficient explanation for his affirmation of the sanctions decision in his appeal letter. *Id.* at ¶ 244. Plaintiff's allegations against Defendant Keller[7] do not support his claim that Keller directly violated his constitutional rights, and as such, Defendant Keller should be dismissed in his individual capacity.

### 4. Monique DiCarlo

Defendant DiCarlo is accused of implementing evidence-based training, programming, and policies on the University of Iowa's campus through her role as Sexual Misconduct Response Coordinator and Title IX Coordinator for the University of Iowa, and of making public statements related to her job responsibilities. *See, e.g.,* 3rd Am. Compl. ¶¶ 29, 32-35, 40-41, 49, 80-81, 90, 191, 229, 288, 298, 300, 316, 318, 322, 325, 330. Plaintiff further accuses Defendant DiCarlo of helping Lisa Roe to come to the realization that she had described a sexual assault during the course of her report to the Office of Sexual Misconduct Response Coordinator ("OSMRC"), and suggests that DiCarlo was "highly motivated" to influence the investigation in Plaintiff's case to

---

[7] Plaintiff also makes various conclusory claims about Keller's supposed motivations in denying Plaintiff's appeal, such as a purported conflict of interest which resulted from being "mainly responsible for UI paying millions in a Title IX lawsuit." 3rd Am. Compl. ¶¶ 362, 237. Such naked assertions contribute nothing to the sufficiency of Plaintiff's complaint and should not be considered by the Court.

"safeguard the school's Title IX federal funding." ¶¶ 80-82, 90. Without justification or factual basis, Plaintiff accuses DiCarlo of "pressur[ing the victims] to inflate or falsify accusations." *See id.* at ¶¶ 81-82, 90, 359. Finally, Plaintiff claims that Defendant DiCarlo publicly criticized the Department of Education's proposed definition of sexual harassment and discussed the new interim Title IX guidelines—a statement which apparently met Plaintiff's disapproval. ¶¶ 32-35, 191, 229, 288, 298, 300, 316, 318, 322, 330. All of the actions allegedly taken by Defendant DiCarlo are objectively reasonable, encompassed by her job duties, and do not support Plaintiff's claim that DiCarlo directly violated his constitutional rights. Defendant DiCarlo should be dismissed in her individual capacity.

### 5. Mark Braun

Defendant Mark Braun is accused of denying Plaintiff's request for a stay. 3rd Am. Compl. ¶ 249. Plaintiff further accuses Braun of failing to grant Plaintiff's request for a stay on the basis of his visa status. *Id.* at 250. Defendant Braun is otherwise accused of denying Plaintiff the number of pages he desired for his brief, and of ultimately denying his  appeal based on the applicable legal standards. 3rd Am. Compl. ¶¶ 252, 272. Doing so was objectively reasonable given his role as Executive Director of the Board of Regents, State of Iowa, and his actions do not support Plaintiff's claim that Defendant Braun directly violated his constitutional rights. As such, Braun should be dismissed in his individual capacity.

## V.   Plaintiff Has Failed to Assert Plausible Claims for Relief Under Title IX of the Education Amendments of 1972.

Plaintiff asserts three claims under Title IX. Count II of Plaintiff's Third Amended Complaint, asserted against Defendants UI and the Board of Regents, alleges that Defendants' decisions were motivated by gender bias. Counts III and IV, asserted against Defendants UI and the Board of Regents, allege that the University created a hostile/discriminatory environment

against male students and remained "deliberately indifferent" to this environment throughout Plaintiff's case. All three of Plaintiff's claims fail because Plaintiff has failed to assert sufficient factual allegations to support plausible claims under Title IX.

**A. Plaintiff has failed to assert a plausible claim that the discipline imposed on him by the University was motivated by gender bias.**

Count II should be dismissed because Plaintiff fails to state a plausible claim that the University's decision was motivated by gender bias. Title IX states that ""[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . [.]" 20 U.S.C. § 1681(a). Violations of Title IX for sex discrimination may fall into two categories: (1) "erroneous outcome" cases, where a plaintiff alleges he was innocent and wrongly found to have committed an offense and gender bias was a motivating factor behind the erroneous finding; and (2) "selective enforcement" cases, where a plaintiff alleges that, regardless of his actual guilt or innocence, the severity of the penalty and/or decision to initiate the proceeding was affected by the plaintiff's gender. Plaintiff raises allegations against Defendants UI and Board of Regents under an erroneous outcome theory. 3rd Am. Compl. ¶¶ 389-412.

*1. Plaintiff fails to assert a plausible "erroneous outcome" claim.*

A plaintiff "may assert a claim under Title IX based upon an erroneous outcome theory in which 'the plaintiff attacks the university disciplinary proceeding on grounds of gender bias by arguing that the plaintiff was innocent and wrongfully found to have committed an offense.'" *Salau v. Denton*, 139 F. Supp. 3d 989, 998 (W.D. Mo. 2015) (quoting *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015)). A successful Title IX claim under an erroneous outcome theory must plausibly state "(1) facts sufficient to cast doubt as to the accuracy of the outcome of the disciplinary proceeding and (2) a causal connection between the flawed outcome and gender bias."

16

*Sahm*, 110 F. Supp. 3d at 778. Title IX is not, however, "an invitation for courts to second-guess disciplinary decisions of colleges or universities." *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 982 (D. Minn. 2017).

Put another way, to successfully plead a "Title IX claim based on a disciplinary proceeding under either [an] erroneous outcome or deliberate indifference theory, [a plaintiff] must plausibly allege circumstances suggesting gender bias motivated [the] disciplinary proceeding." *Id.* at 990. Here, Plaintiff's Complaint summarily asserts that Defendant UI implemented its policies "in a sexually discriminatory manner" and "prosecuted an accused male student under a presumption of guilt." Compl. ¶¶ 400-407. Plaintiff does not connect his claims relating to the allegedly faulty UI disciplinary proceeding with the fact that he is a male student, or claim that a female student who had been accused of sexual harassment or assault would have been treated more favorably. Plaintiff's claims as they relate to his erroneous outcome claim are the sort of "'naked assertion[s]' devoid of 'further factual enhancement'" that must be dismissed for failure to state a claim. *Twombly*, 550 U.S. at 557.

### 2.   *Plaintiff fails to assert a plausible "selective enforcement" claim.*

Though Plaintiff does not expressly assert a selective enforcement theory in his Complaint, he appears to attempt to plead such a claim through his various allegations that the UI disciplinary process was tainted by gender discrimination. A selective enforcement claim is "premised on the allegation that regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Rossley v. Drake University*, 342 F.Supp.3d 904, 931 (S.D. Iowa 2018). As such, Defendants move to dismiss any implicitly stated Title IX claim brought under a selective enforcement theory. To support a selective enforcement claim, a plaintiff must demonstrate that a "similarly situated" individual of the opposite gender received more favorable treatment by the university. *Id.* A plaintiff cannot

simply point to the treatment of his accuser, unless he also initiated or attempted to initiate a counter-complaint against the accuser. *Id.* at 933.

Here, Plaintiff summarily asserts that Defendant UI implemented its policies "in a sexually discriminatory manner" and "prosecuted an accused male student under a presumption of guilt." 3rd Am. Compl. ¶¶ 400-407. Wholly conclusory allegations such as Plaintiff's are insufficient to maintain a Title IX "selective enforcement" claim. *See Doe v. University of Dayton*, 766 F. Appx. 275, 284 (6th Cir. 2019) ("Doe has not identified any woman accused of sexual assault at Dayton University who was not referred to disciplinary proceedings. Instead, he returns to his allegation that, '[u]pon information and belief, Dayton possesses additional documentation evidencing their refusal to discipline female students who were alleged to have sexually assaulted male students.' Doe provides no factual content to underpin this allegation. The bare allegation, unsupported by facts, does not suffice to state a claim.") (citing *16630 Southfield L.P. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) ("[T]he plaintiffs have not identified any similarly situated individuals whom [the defendant] treated better. They have merely alleged their 'belief' that such people exist. These 'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint."); *Doe v. Columbia College Chicago*, 299 F.Supp.3d 939, 958 (N.D. Ill. 2017) ("Doe's allegation that CCC possesses evidence that it has refused to discipline female students accused of sexually assaulting male students is boilerplate and conclusory. This lone allegation is not sufficient to support a plausible inference that similarly situated females were treated more favorably than Doe . . ." (citing *Yusuf*, 35 f.3d at 715; *Ludlow v. Northwestern University*, 125 F.Supp.3d 783, 793 (N.D. Ill. 2015)); *Streno v. Shenandoah University*, 278 F.Supp.3d 924, 932 (W.D. Va. 2017) (dismissing a "selective enforcement" claim based upon "entirely…conclusory terms"); *Doe v. Salisbury University*, 123 F.Supp.3d 748, 758 (D. Md.

2015) (rejecting Title IX allegations based solely "upon information and belief" as insufficient for dismissal purposes); *Doe v. University of the South*, 687 F.Supp.2d 744, 756-57 (E.D. Tenn. 2009). As such, Plaintiff's selective enforcement claim must be dismissed.

**B.   Plaintiff has failed to assert a plausible claim that the University created a hostile environment of discrimination against male students.**

Plaintiff also raises a hostile environment claim under Title IX (Count III), alleging that the University's sexual assault disciplinary process creates a hostile environment for male students. 3rd Am. Compl. ¶¶ 413-437. Courts have held that "Title VII precedent is appropriate for analyzing hostile environment sexual harassment claims under Title IX." *Doe v. Perry Community School District*, 316 F.Supp.2d 809, 833 (S.D. Iowa 2004) (quoting *Wright By and through Wright v. Mason City Community School District*, 940 F. Supp. 1412, 1419 (N.D. Iowa 1996)). Thus, to establish a claim for hostile environment, a plaintiff must allege: (1) that he is a member of a protected group; (2) that he was subject to unwelcome sexual harassment; (3) that the harassment was on the basis of sex; (4) that the harassment was sufficiently severe or pervasive as to alter the conditions of his education and create an abusive educational environment; and (5) that the educational institution knew of the harassment and intentionally failed to take proper remedial measures because of his sex. *Id.* (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 20-23 (1993); *Burrow v. Postville Community School District*, 929 F. Supp. 1193, 1205-06 (N.D. Iowa 1996)). Simple allegations of gender bias in a university's sexual assault disciplinary process are insufficient to support a claim of hostile environment, absent clear factual allegations that support a reasonable inference that his educational experience was "permeated with discriminatory intimidation, ridicule, and insult." *Doe v. Miami University*, 882 F.3d 579, 590 (6th Cir. 2018) (quoting *Harris*, 510 U.S. at 21) (internal quotation marks omitted).

Here, Plaintiff simply asserts that the University's disciplinary policies and procedures created a discriminatory environment for male students due to inherent gender bias. 3rd Am. Compl. ¶¶ 413-437. Plaintiff makes other unsupported accusations that UI shifted its "institutional hostility" toward males after "being accused of and settling [a case] for millions[.]" *Id.* at ¶ 418. This "institutional hostility" takes the form of Defendant Frost's purported harassment of Plaintiff. *Id.* at ¶¶ 421-428 (alleging that Frost excluded evidence from the hearing, allowed the hearing to last three days, took three weeks to write her decision, and "asked gratuitous questions" during the hearing). Essentially, Plaintiff reasserts his claim of "selective enforcement" as the grounds for his claim of hostile environment. Again, Plaintiff fails to connect any of the supposed discriminatory acts with his status of male student. Absent any plausible allegations connecting Defendants' allegedly discriminatory behavior to Plaintiff's sex, his claims are insufficient as a matter of law and must be dismissed for failure to state a claim.

### C. Plaintiff has failed to assert a plausible claim that the University demonstrated "deliberate indifference" to discrimination against male students.

A plaintiff may also assert a Title IX claim on a "deliberate indifference" theory where an institution's official policy[8] is not involved. *See Shrum ex. rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001); *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 291 (1998). As recipients of federal funds, educational institutions are subject to Title IX liability, but only for damages arising from their own misconduct. *See Ostrander v. Duggan*, 341 F.3d 745, 750 (8th Cir. 2003). Though usually considered in terms of student-on-student harassment, a deliberate

---

[8] Here, it is unclear whether Plaintiff is claiming that Defendant University of Iowa's "official policy" is at issue. In some instances, Plaintiff appears to claim that Defendants are at fault for deviating from their established policy. *See, e.g.*, 3rd Am. Compl. ¶ 160 (consolidation of the hearings under the University's policy was problematic for Plaintiff). In others, Plaintiff appears to claim that the student misconduct policies are themselves discriminatory. *See, e.g.,* 3rd Am. Compl. ¶ 537 (Doe stating that while he "is not suggesting that the rules and policies be written with mathematical certainty" that "the lack of definition or vagueness allowed and/or encouraged serious arbitrary and discriminatory enforcement."). To the extent that Plaintiff has claimed that the official policies of the University of Iowa are not at issue, this analysis applies.

indifference theory can be asserted where the educational institution was "(1) deliberately indifferent (2) to known acts of discrimination (3) which occur[ed] under its control." *Id.* The statute instructs that the "acts of discrimination" at issue must be done "on the basis of sex[.]" *See Davis v. Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 649-50 (1999).

In enacting Title IX, Congress did not contemplate a plaintiff's recovery to be based in vicarious liability or constructive notice theories. *See Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 288 (1998). Indeed, a plaintiff asserting a successful Title IX claim under a deliberate indifference theory must demonstrate that an "appropriate person" received actual notice of the violation, had the opportunity to voluntarily comply with Title IX, and chose not to do so. *Id.* at 277. Here, Plaintiff claims that Defendants demonstrated deliberate indifference to his complaints of discrimination when they refused to grant either of his appeals or to further investigate. 3rd Am. Compl. ¶¶ 438-456. Plaintiff also claims that the University was deliberately indifferent to his harassment complaint when it failed to grant his requested "accommodations" (i.e., reduction or removal of many of the sanctions imposed). 3rd Am. Compl. ¶ 451.

The "actual knowledge" element of a deliberate indifference claim requires schools to have more than "after the fact" notice of an instance of discrimination or harassment. *See Doe v. University of Arkansas-Fayetteville*, No. 5:18-CV-05182, 2019 WL 1493701, at *11 (8th Cir. April 24, 2019) (citing *K.T. v. Culver-Stockton College*, 865 F.3d 1054 (10th Cir. 2017) (holding that the "actual knowledge element requires schools to have more than after-the-fact notice of a single instance in which the plaintiff experienced sexual assault)) (*appeal argued and submitted* No. 19-1842 (8th Cir. Jan. 15, 2020)). Despite providing pages of conclusory allegations regarding Defendant's policies, Plaintiff has not plausibly alleged that the University or the Board had actual knowledge of discrimination against Plaintiff or any other male student with relation to its student

misconduct process *prior* to his complaint. Further, even if Plaintiff's complaints, couched in his appeal to the Board of Regents, were sufficient for notice to an appropriate person under a deliberate indifference theory, which they were not, he has not alleged that the University's purported indifference to those complaints "either directly cause[d] the abuse to occur or ma[de] him] vulnerable to such abuse[.]" *See Ostrander v. Duggan*, 341 F. 3d 745, 750 (8th Cir. 2003) (citing *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001)).

Further, the implied private right of action under Title IX does not allow recovery in damages for violations of administrative requirements, such as an institution's failure to publish a grievance procedure or failing to notify students that it does not discriminate on protected bases. *See Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 291-92 (1998). Even alleged failure to comply with Title IX regulations does not establish actual notice or deliberate indifference on the part of a University. *See Roe v. St. Louis University*, 746 F.3d 874, 883-84 (8th Cir. 2014). Many of Plaintiff's complaints relate to "failures" of the University to provide the sorts of programs or training that he feels are appropriate or to engage in Plaintiff's vision of perfect compliance with Title IX guidelines. *See, e.g.,* 3rd Am. Compl. ¶¶ 29, 32-35, 191, 229, 288, 298, 300, 316, 318, 322 (DiCarlo influenced gender-biased programs); ¶ 143 (the University prohibited Plaintiff from talking about the case with his and the complainants' mutual friends prior to the hearing); ¶ 364 (requiring the parties to submit questions for examination of witnesses to the Adjudicator prior to the hearing and allowing the Adjudicator to ask questions in her preferred manner); ¶ 160 (the University decided that the complaints brought by two different women would be consolidated into one hearing). Such claims cannot form the basis of a deliberate indifference claim under Title IX, and Plaintiff's claim should be dismissed for failing to state a claim.

**VI.    Plaintiff's Race Discrimination Claim Fails as a Matter of Law.**

**A.  A federal action to enforce rights under 42 U.S.C. § 1981 against a state actor may only be brought pursuant to 42 U.S.C. § 1983.**

Count V of Plaintiff's Complaint asserts a claim for race discrimination, harassment, and hostile environment "against Frost, Cervantes, Redington, Keller, & Braun." 3rd Am. Compl., p. 62. Plaintiff does not indicate whether he is asserting Count V against the individuals listed above in their official or individual capacities.[9] "A federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (1998) (citing *Johnson v. Railway Express Agency*, 421 U.S. 454, 459-60 (1975)). Plaintiff has not brought his race discrimination claim pursuant to 42 U.S.C. § 1983, and as such, any claim against the individual defendants in their official capacities must be dismissed for failing to state a claim upon which relief can be granted.

**B.  Plaintiff's 42 U.S.C. § 1981 claim fails as a matter of law.**

It is well-settled that 42 U.S.C. § 1981 can be violated only by intentional discrimination. *See, e.g., General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982); *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (*cert denied* 643 F.3d 1031 (2011)). Plaintiff's bare accusations of unequal treatment, including unsupported claims that UI employees "knew or should have known" that he was being discriminated against on the basis of his race, are insufficient to support his § 1981 claim. In Count V, Plaintiff claims that Defendant Frost, specifically, discriminated against him on the basis of race when she used terms such as "authoritarian" and "sexist" to describe his conduct, and allegedly accused Plaintiff of being "sexually aggressive." *Id.* at ¶ 463. Plaintiff does not explain why he thinks that Defendant Frost's alleged comments—in the context of a student disciplinary hearing for a student who had been

---

[9] In the "Parties" section of his complaint, Plaintiff notes that each of the individuals listed in this section are sued in their individual and official capacities. 3rd Am. Compl. ¶¶ 13, 14, 16, 17, 19.

accused of abusing his authority as a lab supervisor to sexually harass and assault young female students—have anything to do with his race. Plaintiff's descriptions of Frost's comments are not plausible. Without explanation, he describes Frost's comments as "undertaken based on Doe's protected status as a South Asian/Arab male." *Id.* at ¶ 464. Plaintiff's "general and conclusory accusations of race-based discrimination and unequal treatment . . . do not state a claim under § 1981." *Rodgers v. University of Missouri Board of Curators*, 56 F. Supp. 3d 1037, 1051 (E.D. Mo. 2015). Plaintiff's threadbare complaints against the other individual Defendants fare even worse. 3rd Am. Compl. ¶ 467 (Stevenson Earl "amplified" the victims' allegations against Plaintiff); ¶ 469 (Schriver Cervantes "knew or should have known of this discriminatory conduct"); ¶ 471 (Redington's decision to expel Plaintiff was "motivated, in part, by Doe's race and national origin"); ¶ 474 (Braun and Keller were made aware of the discriminatory conduct, but were deliberately indifferent to it). None of the allegations outlined in Count V state a plausible claim that each of the individual Defendants named therein intentionally discriminated against Plaintiff on the basis of his race. "A mere factual assertion of unequal treatment or race-motivated conduct is insufficient to survive a Rule 12(b)(6) motion; instead, a plaintiff must specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'" *Rogers*, 56 F. Supp. 3d at 1051. Accordingly, this Court should dismiss Count V for failure to state a claim.

## VII.    Plaintiff's Breach of Contract Claim Fails as a Matter of Law.

### A.    Plaintiff's state law claims are barred by the Eleventh Amendment.

Plaintiff asserts his Breach of Contract claim (Count VII) against Defendants University of Iowa and the Board of Regents. 3rd Am. Compl. ¶¶ 511-530. Plaintiff's claim is barred by the Eleventh Amendment to the United States Constitution and must be dismissed as a matter of law. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States

by Citizens of another State, or by Citizens or Subjects of any Foreign State." Pursuant to that Amendment, a private party may not sue a state in federal court unless the state has explicitly waived its sovereign immunity. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) ("While the amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens[.]").

States and "arms" of States "possess immunity from suits authorized by federal law." *N. Ins. Co. of N.Y. v. Chatham Cty., Ga.*, 547 U.S. 189, 193 (2006). The majority of courts that have considered the issue have determined that public universities are "arms" of the State. *See Sherman Curators of Univ. of Mo.*, 16 F. 3d 860, 863 n.3 (8th Cir. 1994) (citing various cases); *Clark v. Iowa State Univ.*, No. 4:09-cv-370 RP-CFB, 2009 WL 10677892 (S.D. Iowa Dec. 17, 2009) (citing *Van Pilsum v. Iowa State University of Science and Technology*, 863 F. Supp. 935, 939 (S.D. Iowa 1994) for its holding that Iowa State University shares in the State of Iowa's Eleventh Amendment immunity). The State of Iowa has not waived its Eleventh Amendment immunity in suits involving breach of contract claims asserted under Iowa law.

Eleventh Amendment immunity may be waived by a state in two ways.  First, a state may explicitly waive its immunity and consent to be sued in federal court. *See Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Second, "Congress can abrogate the Eleventh Amendment without the States' consent when it acts," pursuant to § 5 of the Fourteenth Amendment, "'to enforce, by appropriate legislation' the substantive provisions of the Fourteenth Amendment." *Id.* at 474.  Neither type of waiver applies here, and Plaintiff's breach of contract claim against Defendant University of Iowa must be dismissed in its entirety.

**B.  Even if Plaintiff's claims are not barred, this Court should dismiss Plaintiff's Breach of Contract claim because it fails to state a claim for which relief can be granted.**

To survive a motion to dismiss on his breach of contract claim, Plaintiff must plausibly allege "(1) the existence of a contract, (2) the terms and conditions of that contract, (3) that [plaintiff] has performed all the terms and conditions required under the contract, (4) the defendant's breach of the contract in some particular way, (5) that plaintiff has suffered damages as a result of defendant's breach." *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010). A contract will not be valid unless the parties "express mutual assent to the terms of the contract." *Id.* Mutual assent cannot be established unless the contract terms are "sufficiently definite for the court to determine the duty of each party and the conditions of performance." *Id.*

**C.  Plaintiff fails to sufficiently allege the existence of a contract.**

Plaintiff has failed to sufficiently allege the existence of a contract. In his complaint, Plaintiff alleges that "Doe applied to and enrolled at UI and, assisted by his parents, paid tuition and other fees and expenses. Doe did so in reliance on the understanding, and with the reasonable expectations, among others that: (a) UI would implement and enforce UI Policies; and that (b) UI Policies would comply with the requirements of applicable law." 3rd Am. Compl. ¶ 512. However, the vague "policies" Plaintiff references are not contracts. Courts limit the extent to which materials intended to apply to the entire student body, such as student handbooks, student disciplinary regulations, and student codes of conduct, are interpreted as a contract between a university and a student. *See, e.g.*, *Slaughter v. Brigham Young Univ.*, 514 F.2d 622, 626–27 (10th Cir. 1975) (reversing judgment for plaintiff on a contract claim because plaintiff did not show he had a contract with the university in the disciplinary context where the documents alleged as the contract were the graduate school catalogue and student code of conduct); *Harvey v. Palmer Coll.*, 363 N.W.2d 443, 444 (Iowa Ct. App. 1984) (explaining that contract theory is not a perfect fit for

the relationship between a student and a university and should not be rigidly applied against a university); *Tibbets v. Yale*, 47 F. App'x 648, 656 (4th Cir. Sept. 26, 2002) (unpublished) (denying plaintiff's motion to amend the complaint to add a breach of contract claim against the university, finding that such a claim would be "without merit" because a "Student Handbook is not a contract but merely a university policy"). This Court should determine that those documents that Plaintiff's breach of contract relies upon are not contracts as a matter of law and should dismiss Plaintiff's breach of contract claim in its entirety.

### D. Plaintiff's claim that the University of Iowa entered into an implied contract with him must be dismissed as a matter of law.

In contract law, there are two traditional types of contracts: express and implied. *See Irons v. Community State Bank*, 461 N.W.2d 849, 855 (Iowa App. 1990). "When the parties manifest their agreement by works, the contract is said to be express." *Id.* Where there is "merely a tacit promise, one that is inferred in whole or in part from expressions other than words on the part of the promisor," the contract is said to be implied in fact. *Iowa Waste Systems, Inc. v. Buchanan County*, 617 N.W.2d 23, 29 (Iowa Ct. App. 2000). Under Iowa law, "an express contract and an implied contract cannot coexist with respect to the same subject matter, and the law will not imply a contract where there is an express contract." *Scott v. Grinnell Mut. Reinsurance Co.*, 653 N.W.2d 556, 563 n. 2 (Iowa 2002).

Defendant University of Iowa, as a state agency, is immune from implied contract claims. *See North v. State*, 400 N.W.2d 566, 568 (Iowa 1987) (explaining that the court only has jurisdiction to decide breach of contract actions to the extent the State waives its defense of governmental immunity, which it has done only in "breach of express contract actions"); *Kersten Co. v. Dep't of Soc. Servs.*, 207 N.W.2d 117, 122 (Iowa 1973). This Court should dismiss Plaintiff's claims for breach of implied contract against the University.

**CONCLUSION**

For all the reasons set forth above, Defendants urge the Court to dismiss Plaintiff's claims for violations of his 42 U.S.C. § 1983 due process rights; violations of Title IX of the Education Amendments of 1972; violations of 42 U.S.C. § 1981; breach of contract; and violations of his First and Fourteenth Amendment rights. Additionally, Defendants urge the Court to issue an order dismissing the State Defendants named in their individual capacities under the doctrines of qualified immunity, quasi-judicial immunity, and prosecutorial immunity.

Respectfully Submitted,

**THOMAS J. MILLER**
Attorney General of Iowa

*/s/ Christopher J. Deist*
CHRISTOPHER J. DEIST

*/s/ Kayla Burkhiser Reynolds*
KAYLA BURKHISER REYNOLDS
Assistant Attorneys General
Hoover Building, Second Floor
1305 East Walnut Street
Des Moines, Iowa 50319
PHONE: (515) 281-7240
FAX: (515) 281-7219
E-MAIL: christopher.deist@ag.iowa.gov
             kayla.burkhiser@ag.iowa.gov
ATTORNEYS FOR DEFENDANTS

| PROOF OF SERVICE |
| --- |
| The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on February 25, 2020: |
| ☐ U.S. Mail  ☐ FAX<br>☐ Hand Delivery  ☐ Overnight Courier<br>☐ Federal Express  ☐ Other<br>☒ CM/ECF |
| Signature: */s/Audra Drish* |