IN THE STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) CASE NO. 3:19-CV-00047-RGE-HC |
| | ) |
| Plaintiff, | ) |
| | ) PLAINTIFF'S APPENDIX |
| v. | ) IN SUPPORT OF MOTION TO COMPEL |
| | ) PRODUCTION |
| | ) |
| UNIVERSITY OF IOWA, et al., | ) **VOLUME I** |
| | ) |
| Defendant. | ) |

1. Exhibit 1 – Plaintiff's Request for Production…………………………………………

2. Exhibit 2 – Email Exchanges………………………………………………………..

3. Exhibit 3 – Defendants' Response to Request for Production…………………………

4. Exhibit 4 – Plaintiff's First Letter (Jan. 12, 2021)………………………..………...

5. Exhibit 5 – Plaintiff's Second Letter (Jan. 14, 2021)………………………………...

6. Exhibit 6 – OCR Investigation (Separately Filed Under Seal in Volume II)

7. Exhibit 7 – Declaration of Rockne Cole in Support of Plaintiff 's Motion to Compel

   Defendants to Produce Requested Discovery Materials……………………………….

Respectfully submitted,
/s/ Rockne Cole

_____
ROCKNE COLE
Cole Law Firm, PC
209 E. Washington, Ste.
   304
Iowa City, IA 52240
(319) 519-2540   phone
(319) 359-4009   fax
rocknecole@gmail.com
Iowa Pin AT1675
**Attorney for Plaintiff**

**CERTIFICATE OF SERVICE**
I, Rockne Cole, certify that a true copy was
was served upon all parties of record via EM-ECF on January 29, 2021
/s/ Rockne Cole

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**DAVENPORT DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | **)** | |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | |
| vs. | **)** | Case No. 3:19-CV-00047-RGE-HCA |
| | **)** | |
| UNIVERSITY OF IOWA , et al. | **)** | |
| | **)** | |
| Defendants. | **)** | |
| | **)** | |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO**
**DEFENDANT UNIVERSITY OF IOWA**

**PROPOUNDING PARTY:** Plaintiff John Doe

**RESPONDING PARTY:**   Defendant UNIVERSITY

OF IOWA

**SET NUMBER:**          One

Plaintiff John Doe ("Plaintiff") in the above-captioned matter, by and through his attorneys, and pursuant to Federal Rules of Civil Procedure 26 and 34, does hereby serve written requests upon Defendant UNIVERSITY OF IOWA   ("Defendant") to produce for inspection and reproduction the following documents and things specified below at the offices of Cole Law Firm, PC, 209 East Washington, Ste. 304, Iowa City, Iowa 52240 within thirty (30) days of service and in accordance with the following definitions and instructions:

**Definitions**

1.     The term "ACCUSED" means and refers to any Iowa student who was the subject of an allegation of Sexual Misconduct that was brought to the attention of Iowa.

EXHIBIT 1, Page 1

2. The term "ACCUSER" means and refers to any Iowa student who made an allegation of Sexual Misconduct that was brought to the attention of Iowa.

3. The term "ADJUDICATOR" refers to Defendants Iris Frost

4. The term "ALL" means "any and all" and the word "any"means "any and all."

5. The words "AND" and "OR" shall, where the circumstances so permit, be construed either conjunctively or disjunctively to bring within the scope of these document requests any information which might otherwise be construed to be outside their scope.

6. The term "COMMUNICATION(S)" means and refers to every method and manner of transmitting or receiving data, opinions, thoughts, inquiries, representations and other information, whether orally, in writing, electronically, or otherwise, between two or more persons or entities. Communications include drafts and other written information intended for communicating to another person, even if not ultimately transmitted to or received by another person.

7. The terms "CONCERNING," "RELATED," and/or "REGARDING" mean containing, alluding to, responding to, commenting upon, discussing, explaining, mentioning, analyzing, constituting, memorializing, comprising, repeating, incorporating, confirming, listing, evidencing, setting forth, summarizing, or characterizing, either directly or indirectly, in whole or in part.

8. If not expressly stated, "CONTROL" means in your possession, custody, or control and under your direction, and includes in the possession, custody or control of those under the direction of your employee(s), subordinate(s), counsel, accountant(s), consultant(s), expert(s), parent(s) or affiliated corporation(s), and any person(s) purporting to act on your behalf.

9. The term "TITLE IX LAWSUITS" means and refers to lawsuits referenced in Paragraphs 281-282 of John Doe's 3rd Amended Complaint.

2

EXHIBIT 1, Page 2

10. The term "DEPT. OF ED. " refers to the United States Department of Education.

11. The term "DOCUMENT" shall have the broadest meaning possible under Rule 34 of the Federal Rules of Civil Procedure and includes all originals and drafts, in any and all languages, of any nature whatsoever, in your possession, custody or control, regardless of where located, and include, but are not limited to, letters, correspondence, logs, drafts, contracts, prospective contracts, agreements, reports, records, studies, surveys, resolutions, tabulations, notes, summaries, memoranda, Electronically Stored Information ("ESI"), electronic mail ("email" whether in draft, inbox, outbox or sent folders), calendar or diary entries, handwritten notes, working papers, work sheets, spread sheets, diagrams, minutes of meetings, agendas, bulletins, periodicals, circulars, advertisements, notices, announcements, invoices, statements, checks (front and back), bank statements, ledgers, orders, vouchers, instructions, drawings, charts, graphs, manuals, brochures, pamphlets, schedules, telegrams, teletypes, photographs, audio tapes, voice-mail messages, videotapes, electronic recordings, facsimile transmissions, and information of whatever kind either stored on computers, including computer disks, hard drives and other media, or contained in any computer or information retrieval devices.

12. The term "IDENTIFY" or "IDENTIFYING" refers to (1) full name, (2) phone number on file, and (3) address on file.

13. The term "INCLUDING" means "including, but not limited to."

14. The term "INDIVIDUAL DEFENDANTS" refers to  University of Iowa;

    Board of Regents, State of Iowa ; Tiffini Stevenson, Iris Frost; Lyn Redington; Angie Reams; Constance Schriver Cervantes; John Keller; Monique DiCarlo; Mark Braun.

15. The term "Sally Roe" refers to the female Iowa Student who alleged John Doe engaged in the Sexual Misconduct detailed in Doe's 3rd Amended Complaint (her initials are SM). Lisa Rose (here initials are LK).

16. The term "ADJUDICATOR" refers to Iris Frost

17. The term "LAWSUIT" refers to *the 3rd Amended Complaint* filed in this case.

18. The term "OCR" refers to the Dept. of Ed's Office of Civil Rights.

19. The term "OCR INVESTIGATION(S)" refers to any investigation by the Dept. of Ed. and/or OCR concerning Iowa's handling of Sexual Misconduct cases or gender discrimination, including, but not limited to OCR investigations addressed in ¶¶56-59 of John Doe's 3rd Amended Complaint.

20. The term "PLAINTIFF" refers to Plaintiff John Doe

21. The term "PRESENT" should be deemed the date of producing the requested Documents and/or Communications.

22. The term "IOWA" refers to Defendant UNIVERSITY OF IOWA .

23. The term "RELEVANT TITLE IX LAWSUITS" refers to lawsuits reference in Paragraphs 281 and 282 of John Doe's 3rd Amended Complaint.

24. The term "SEXUAL MISCONDUCT" refers to sexual misconduct, sexual violence, sexual assault, sexual harassment, relationship violence, and/or stalking.

25. The term "TITLE IX TRAINING" refers to all training or advice on how to process, investigate, and/or adjudicate allegations of sexual misconduct.

26. The term "UNIVERSITY INITIATED COMPLAINT(S)" refers to any University Level Title IX Proceedings in which Iowa was the "complainant" against an Accused.

27. The term "UNIVERSITY LEVEL TITLE IX PROCEEDING(S)" refers to Sexual Misconduct allegations addressed by Iowa's employees or agents.

28. The terms "YOU," "YOUR," "DEFENDANT," or "IOWA" refers to Iowa

EXHIBIT 1, Page 4

University, and/or its assignees, trustees, partners, joint ventures, co-ventures, subsidiaries, affiliates, agents, attorneys, accountants, employees, representatives, and/or any other person or entity acting or purporting to act on its behalf or under its control, including but not limited to, Individual Defendants.

## **Instructions**

(a)    You must serve your responses and any objections within 30 days after being served the requests.

(b)    Each paragraph and subparagraph of each request should be construed independently, and not be referenced to any other paragraph or subparagraph of this request for purposes of limitation.

(c)    Pursuant to the Fed. R. Civ. P. 26(e), these requests are continuing in nature, so as to require a supplemental response to correct any incomplete or incorrect answer based on information you may become aware of between the time of your initial response and the time of trial.

(d)    In responding to these requests, you shall respond based on information in your possession, custody, or control, including (by way of illustration only and not limited to) information in the possession, custody, or control of your affiliates, subsidiaries, or subcontractors, your present or former attorneys, accountants, directors, officers, partners, employees, other representatives and agents, independent contractors over which or whom you have or have had control, and any other persons acting on your behalf.

(e)    Notwithstanding the assertion of any objection to production, any Documents as to which an objection is raised that also contain non-objectionable matter that is relevant and material to a request herein must be produced, but that portion of the Documents for

EXHIBIT 1, Page 5

which the objection is asserted may be redacted, provided that the material redacted is listed in the privilege log.

(f)      If you claim that the attorney-client privilege, or any other privilege, doctrine or reason for withholding a document is applicable, please set forth in writing and with your response to this Request: (1) the date of the document; (2) the type of document; (3) the subject matter of the document; (4) the name, employment and title of each person who prepared or received the document or any copy thereof; and (5) the basis for the claim of privilege or other ground for withholding the document. If you claim only part of the document is privileged or otherwise need not be produced, please produce the remaining part of the document. In the case of attorney work-product privilege, you must also identify the litigation for which the work-product was prepared.

(g)      If any document to be produced has been lost, discarded, transferred to another person or entity, destroyed, or otherwise disposed of, please set forth in writing: (1) the date, name and subject matter of the document; (2) the name, employment and title of each person who prepared, received, reviewed, or had custody, possession, or control of the document; (3) all persons with knowledge of the contents or any portion of the contents of the document; (4) the previous location of the document; (5) the date of disposal or transfer of the document; (6) the reason for disposal or transfer of the document; and, if applicable, (7) the manner of disposal of the document; or, if applicable, (8) the names and addresses of the transferees of the document.

(h)      For the convenience of the Court and the parties, Plaintiff requests that each request be quoted in full immediately preceding the answer.

(i)      Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated entities, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients, or other representatives of affiliated third parties.

(j)      Unless specified by the request, there is no time limitation to any of these requests.

(k)      As provided by Federal Rule of Civil Procedure Rule 34(b)(2)(E)(iii), please produce all

EXHIBIT 1, Page 6

electronically stored information in their native electronic format with all metadata preserved in a *.DAT file format. "Electronically stored information" includes the full scope of that term as contemplated by Federal Rule of Civil Procedure Rule 34, and refers to all computer or electronically stored or generated data and information, and shall include all attachments to the enclosures with any requested item, to which they are attached or with which they are enclosed, and all drafts thereof. "Electronically stored information" includes, but is not limited to, all information stored in any format on any storage media, including for example, but not limited to: hard disks, floppy disks, optical disks, flash memory devices, and magnetic tape, whether fixed, portable, or removable. The format of "electronically stored information" includes, for example, but is not limited to: word processing documents, electronic spreadsheets, electronic presentation documents, email messages, image files, sound files, material or information stored in a database, or accessible from a database, of whatever description. "Electronically stored information" also includes all associated metadata that is routinely maintained or saved, which includes for example, but is not limited to document title or name, file name, date and time of creation, date and time of last edit, identity of author, identity of owner, identities of editors, identities of recipients, changes, history of changes, email header information, and email routing information.) Please produce all metadata in a *.DAT file format. If a document contains a single redaction, please provide the appropriate metadata for the remainder of the document, notwithstanding the redactions and the information provided separately as part of a privilege log.

(l)     For the convenience of the parties and to reduce production costs, please produce all Documents and/or Communications which exist only in hardcopy, i.e., cannot be produced in the electronic format discussed above, form in an electronic format such as a *.PDF format or equivalent.

(m)     In response to each request, please specifically reference which Bates numbered pages are responsive to that request. Generalized reference to categories of Documents is the

EXHIBIT 1, Page 7

equivalent of no response at all. If no Documents are responsive, please indicate such. If you are not responding to a request or any portion therein, please indicate such.

(n)    Estimated data should be given when exact data cannot be supplied. Any such estimated data should be designated as such and the basis, source or sources, and/or derivation of each estimate should be separately set forth.

## DOCUMENTS REQUESTED

1.    All Documents and/or Communications that Individual Defendants relied on in determining Lisa Roe's and Sally Roe's and/or her witnesses were more credible than John Doe and his witnesses with regard to Lisa and Sally Roe's allegations of Sexual Misconduct against John Doe.

2.    All Documents and/or Communications Concerning Lisa Roe's and Sally Roe's allegations of Sexual Misconduct against John Doe.

3.    All Documents and/or Communications Concerning Iowa's handling of Lisa Roe's and Sally Roe's allegations of Sexual Misconduct against John Doe.

4.    All Documents and/or Communications Concerning Iowa's investigations and/or decisions Related to John Doe's name appearing on Iowa's *Persona Non Grata* list.

5.    All Documents and/or Communications Concerning University Level Title IX Proceedings that involved Individual Defendants.

6.    All Documents and/or Communications exchanged between Iowa and the Dept. of Ed. and/or OCR that relate to OCR Investigations.

7.    All Documents and/or Communications Concerning the OCR Investigations.

8.    All Documents and/or Communications Concerning University Level Title IX Proceedings addressed in the OCR Investigations.

8

9.    All Documents and/or Communications Concerning Iowa's evaluation and/or implementation of guidelines and/or Dear Colleague letter(s) issued by OCR from 2011-present.

10.   All Documents and/or Communications Concerning the University Level Title IX Proceedings addressed in the Relevant Lawsuits.

11.   All Documents and/or Communications Concerning the Relevant Lawsuits that were received or sent by Individual Defendants.

12.   All Documents and/or Communications Concerning Title IX Trainings received by Individual Defendants from 2011-present.

13.   All social media posts, Documents, and/or other Communications sent or received by Individual Defendants Relating to Sexual Misconduct from 2012-present.

14.   All social media posts, Documents, and/or other Communications sent or received by Individual Defendants relating to the following individuals, events and/or organizations: Brett Kavanaugh; Christine Blasey Ford; Bill Cosby; Brook Turner; Anita Hill; comedian Andy Gross; Dept. of Ed.'s previous Asst. Sec. of Ed. Catherine E. Lhamon; Dept. of Ed. Sec. Betsy Devos; OCR's 2018 proposed regulations regarding how universities address allegations of Sexual Misconduct pursuant to Title IX; The Clothesline Project; and Take Back the Night.

15.   All Documents and/or Communications Concerning John Doe's 3rd Amended Complaint John Doe's 3rd Amended Complaint or Relevant Title IX Lawsuits that were sent or received by Iowa employees including, but not limited to Individual Defendants.

EXHIBIT 1, Page 9

16.    All Documents and/or Communications Concerning Iowa's handling of any request by another university inquiring about an applicant to said university that discloses discipline imposed on said applicant by Iowa for alleged Sexual Misconduct.

17.    All Documents and/or Communications Concerning Iowa's handling of any application for enrollment that involved a student seeking to enroll in Iowa who disclosed he/she was previously subjected to discipline at another university for alleged Sexual Misconduct.

18.    All Documents and/or Communications Concerning Iowa's handling of any student who failed to disclose on his/her application to Iowa that he/she had been previously subjected to discipline at another university for alleged Sexual Misconduct.

19.    Copies of all Iowa's policies, procedures, rules, and regulations concerning Sexual Misconduct in effect from 2012-present;

20.    All Documents and/or Communications Concerning any proposed revisions made or not made to Iowa's policies, procedures, rules, and regulations concerning Sexual Misconduct from 2012-present.

21.    All Documents and/or Communications Concerning Iowa's efforts to comply with the provisions of Title IX concerning Sexual Misconduct from 2012-2019.

22.    All Documents and/or Communications Concerning any belief by Iowa that it complied, or did not comply, with its own applicable policies, procedures, rules, or regulations, in the investigation, evaluation, prosecution, adjudication, or appeal of the charge against John Doe.

23.    All Documents and/or Communications identified in the answers to Your interrogatory responses in this case.

EXHIBIT 1, Page 10

24. All Documents and/or Communications that support any denial or defense in your Answer to John's claims in this lawsuit.

25. All Documents and/or Communications that support any position You have taken or intend to take in this action.

26. A complete copy of the file of any expert witness that may be called by You at trial of this matter. This request includes, but is not limited to, any documents provided to the expert by Iowa or Individual Defendants; any documents reviewed by the expert which were considered by the expert in reaching, explaining, or defending any opinion that may be rendered at the trial of this matter; as well as any notes, billing records, or other documents that were prepared by such expert.

27. To the extent not already covered above, all Documents and/or Communications concerning the allegations set forth in John Doe's 3rd Amended Complaint – or subsequent complaints in this case – and Your defenses thereto.

Respectfully Submitted,

/s/ Rockne Cole
Rockne Cole
209 East Washington, Ste. 304
Iowa City, IA  52240
(319)519-2540
(319)359-4009
rocknecole@gmail.com
**ATTORNEY FOR PLAINTIFF**

11

## **CERTIFICATE OF SERVICE**

This will certify that a copy of the foregoing **Plaintiff's First Request For Production** was served on September 18, 2020 by electronic mail – and regular US mail if requested - on the following: kayla.burkhiser@ag.iowa.gov, christopher.deist@ag.iowa.gov.

/s/ Rockne Cole
Rockne Cole

12

EXHIBIT 1, Page 12

From: **Rockne Cole** <rocknecole@gmail.com>
Date: Fri, Sep 18, 2020 at 5:25 PM
Subject:
To: Deist, Christopher <christopher.deist@ag.iowa.gov>, Burkhiser, Kayla
<kayla.burkhiser@ag.iowa.gov>

Good evening Christopher and Kayla,

Please find my discovery requests.  Discovery must be completed by October 19.

So this will give you the requisite 30 days; however, as far as I am concerned, as long as I get prior to you
filing summary judgment I am fine.

I think an informal conference would be good to see if you can flag some particular concerns or we can
work together to resolve any dispute.

Have a good weekend.

Rockne


--
Rockne Cole
Attorney at Law
Cole Law Firm, PC
209 E. Washington St., Suite 304
Iowa City, IA 52240
(319)519-2540
(319)359-4009 FAX


E-mail is not a secure mode of communication and may be accessed by unauthorized persons.  This
communication originates from the law firm of Rockne Cole, Attorney at Law, and is protected under the
Electronic Communication Privacy Act, 18 U.S.C. §2510-2521. Such communication may be confidential
and/or privileged and is intended only for the party to whom addressed.  It is prohibited for anyone else
to disclose, copy, distribute or use the contents of this communication.  Personal messages express
views solely of the sender and shall not be attributed to the law firm.  If you received this
communication in error, please notify the sender immediately by e-mail or by telephone at (319)519-
2540.




--

1

EXHIBIT 2, Page 1

From: **Rockne Cole** <rocknecole@gmail.com>
Date: Wed, Oct 28, 2020 at 12:13 PM
Subject: Re: Doe - Depo Transcripts
To: Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov>
Cc: Deist, Christopher <christopher.deist@ag.iowa.gov>


No problem either way.    I think we have established that we have been diligent.    We candidly just didn't anticipate that Tracy would be so crushed with depositions.


Also if you need extra time on discovery just let me know.    My only request is that if you have objection that you reach out to me to see if we can resolve.


On Tue, Oct 27, 2020 at 5:14 PM Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov> wrote:

Hi Rockne,

A continuance might be the best route at this point.  Would you be open to a joint motion or can we file our motion as unopposed? We would obviously ask for another extension of the MSJ deadline, as well.

Thanks,

Kayla




**Kayla Burkhiser Reynolds**
**Assistant Attorney General**
Office of the Attorney General of Iowa
Special Litigation Division
1305 E. Walnut St.
Des Moines, IA 50319
Main: (515) 281-5164 | Direct: (515) 725-5390 | Fax: (515) 281-4209
Email: Kayla.Burkhiser@ag.iowa.gov | www.iowaattorneygeneral.gov

**I am working from home until further notice and can be reached on my cell phone at 515-777-6310.**


2

EXHIBIT 2, Page 2

**From:** Rockne Cole [mailto:rocknecole@gmail.com]
**Sent:** Tuesday, October 27, 2020 4:24 PM
**To:** Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov>
**Subject:** Re: Doe - Depo Transcripts

Just asked her if that would be ok and also asked for her update.

I know you guys don't want to continue it, but just wanted to let you know that I have no objection if you do.

Rockne

On Tue, Oct 27, 2020 at 1:00 PM Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov> wrote:

Hi Rockne,

Have you had any contact with Tracy regarding the deposition transcripts lately?  We have emailed her a couple of times but haven't heard back.  Do you have a phone number for her?

Thanks,

Kayla



**Kayla Burkhiser Reynolds**
**Assistant Attorney General**
Office of the Attorney General of Iowa
Special Litigation Division
1305 E. Walnut St.
Des Moines, IA 50319
Main: (515) 281-5164 | Direct: (515) 725-5390 | Fax: (515) 281-4209
Email: Kayla.Burkhiser@ag.iowa.gov | www.iowaattorneygeneral.gov

**I am working from home until further notice and can be reached on my cell phone at 515-777-6310.**

**CONFIDENTIALITY NOTICE**:  This email message (including any attachments) may be confidential or protected by one or more of the following:  the attorney-client privilege, attorney work product doctrine, or applicable laws.  If you are not the intended recipient or have received this message in error, please: (1) do not read, print, copy, distribute or use it in any way; (2) permanently delete or destroy the message (including any attachments); and (3) notify the sender immediately by reply email or telephone.  Any unintended transmission of this email message does not constitute a waiver of any applicable privilege or protection.  Thank you.

3

From: **Rockne Cole** <rocknecole@gmail.com>
Date: Wed, Dec 2, 2020 at 11:33 AM
**Subject: Re: Doe - status update?**
To: Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov>

I think the big thing for me will be where we are on our discovery request.  Approximate time as to when you think that will come?

Again if you have any overbroad or other objections, I can work with you collaboratively to address.

Rockne

On Wed, Dec 2, 2020 at 9:25 AM Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov> wrote:

Hi Rockne,

We have a status conference next week. Do you have anything to address or should we let the Court know we can cancel the call?

Thanks,

Kayla



**Kayla Burkhiser Reynolds**
**Assistant Attorney General**
Office of the Attorney General of Iowa
Special Litigation Division
1305 E. Walnut St.
Des Moines, IA 50319
Main: (515) 281-5164 | Direct: (515) 725-5390 | Fax: (515) 281-4209
Email: Kayla.Burkhiser@ag.iowa.gov | www.iowaattorneygeneral.gov

**I am working from home until further notice and can be reached on my cell phone at 515-777-6310.**

**CONFIDENTIALITY NOTICE:**  This email message (including any attachments) may be confidential or protected by one or more of the following:  the attorney-client privilege, attorney work product doctrine, or applicable laws.  If you are not the intended recipient or have received this message in error, please: (1) do not read, print, copy, distribute or use it in any way; (2) permanently delete or destroy the message (including any attachments); and (3) notify the sender immediately by reply email

4

EXHIBIT 2, Page 4

or telephone.  Any unintended transmission of this email message does not constitute a waiver of any applicable privilege or protection.  Thank you.

--

Rockne Cole
Attorney at Law
Cole Law Firm, PC
209 E. Washington St., Suite 304
Iowa City, IA 52240
(319)519-2540

(319)359-4009 FAX

E-mail is not a secure mode of communication and may be accessed by unauthorized persons.  This communication originates from the law firm of Rockne Cole, Attorney at Law, and is protected under the Electronic Communication Privacy Act, 18 U.S.C. §2510-2521. Such communication may be confidential and/or privileged and is intended only for the party to whom addressed.  It is prohibited for anyone else to disclose, copy, distribute or use the contents of this communication.  Personal messages express views solely of the sender and shall not be attributed to the law firm.  If you received this communication in error, please notify the sender immediately by e-mail or by telephone at (319)519-2540.

From: **Rockne Cole** <rocknecole@gmail.com>
Date: Fri, Dec 4, 2020 at 10:44 AM
**Subject: Re: Doe - status update?**
To: Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov>
Cc: Deist, Christopher <christopher.deist@ag.iowa.gov>

I am totally fine with we have no issues to report.

Again, as long as you think there are no major issues with the discovery requests.  If there are issues, I would be happy to work with felicitous cooperation to try to resolve.

I am not anticipating that though.  So far, I have very much appreciated that you guys have vigorously defended your clients while not wasting time on immaterial issues or unnecessary roadblocks.

I hope you two and your families have a wonderful and restorative weekend!!

Rockne

On Fri, Dec 4, 2020 at 9:59 AM Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov> wrote:

Hi Rockne,

We are still waiting on some additional information for our written responses, but I'm hoping to send you the bulk of the document production yet today.  We do appreciate your patience. Our status conference is set for early Monday morning, so we should get our status report on file today. How do you want to proceed?

Kayla



**Kayla Burkhiser Reynolds**
**Assistant Attorney General**
Office of the Attorney General of Iowa
Special Litigation Division
1305 E. Walnut St.
Des Moines, IA 50319
Main: (515) 281-5164 | Direct: (515) 725-5390 | Fax: (515) 281-4209
Email: Kayla.Burkhiser@ag.iowa.gov | www.iowaattorneygeneral.gov

**I am working from home until further notice and can be reached on my cell phone at 515-777-6310.**

Hello Rockne,


In an attempt to provide you sufficient time to review our production prior to responding to our motion for summary judgment, we're providing the majority of our document production today and will follow up next week with written responses to your discovery requests. The following documents are included in our production (though our responses will also reference documents we've already provided):


DEF 1767-1913: Board of Regents emails

DEF 1914-2857: Connie Schriver Cervantes emails

DEF 2858-3721: Tiffini Stevenson Earl emails

DEF 3930-3931: Redington October 2017 Memo re: FA

DEF 3932: Office of Student Accountability data for sexual misconduct complaints between 2010 and 2020

DEF 3933: EOD data on sex of complainants and respondents in sexual misconduct complaints between 2011 and 2020

DEF 3935-3976: training records


Documents can be accessed at this link through 12/31/2020: ████████
████████████████████████████████████████████████


We will also have hearing notes for Connie Schriver Cervantes and Iris Frost, as well as drafts of Frost's adjudicative decision forthcoming.  Those take a significant amount of time to redact for FERPA as many of the pages are handwritten. We have marked all of these documents "confidential" out of an abundance of caution given the sensitive nature of the claims and the use of student names and identifying information throughout.


I am happy to set up a call next week to go through our responses and objections in an attempt to informally resolve any disagreements.  Let me know what works.

EXHIBIT 2, Page 7

Thanks,

Kayla



**Kayla Burkhiser Reynolds**

**Assistant Attorney General**
Office of the Attorney General of Iowa
Special Litigation Division
1305 E. Walnut St.
Des Moines, IA 50319
Main: (515) 281-5164 | Direct: (515) 725-5390 | Fax: (515) 281-4209
Email: Kayla.Burkhiser@ag.iowa.gov | www.iowaattorneygeneral.gov

**I am working from home until further notice and can be reached on my cell phone at 515-777-6310.**

**CONFIDENTIALITY NOTICE**:  This email message (including any attachments) may be confidential or protected by one or more of the following:  the attorney-client privilege, attorney work product doctrine, or applicable laws.  If you are not the intended recipient or have received this message in error, please: (1) do not read, print, copy, distribute or use it in any way; (2) permanently delete or destroy the message (including any attachments); and (3) notify the sender immediately by reply email or telephone.  Any unintended transmission of this email message does not constitute a waiver of any applicable privilege or protection.  Thank you.

From: **Rockne Cole** <rocknecole@gmail.com>
Date: Thu, Dec 17, 2020 at 3:24 PM
Subject:
To: Deist, Christopher <christopher.deist@ag.iowa.gov>, Burkhiser, Kayla
<kayla.burkhiser@ag.iowa.gov>


Kayla and Christopher,


Just wanted to see where we are on final discovery.  I understand that the previous materials were a
partial response so that we could begin preparing summary judgment.


Rockne


--

Rockne Cole
Attorney at Law
Cole Law Firm, PC
209 E. Washington St., Suite 304
Iowa City, IA 52240
(319)519-2540

(319)359-4009 FAX


E-mail is not a secure mode of communication and may be accessed by unauthorized persons.  This
communication originates from the law firm of Rockne Cole, Attorney at Law, and is protected under the
Electronic Communication Privacy Act, 18 U.S.C. §2510-2521. Such communication may be confidential
and/or privileged and is intended only for the party to whom addressed.  It is prohibited for anyone else
to disclose, copy, distribute or use the contents of this communication.  Personal messages express
views solely of the sender and shall not be attributed to the law firm.  If you received this
communication in error, please notify the sender immediately by e-mail or by telephone at (319)519-
2540.

From: **Drish, Audra [AG]** <Audra.Drish@ag.iowa.gov>
Date: Tue, Dec 29, 2020 at 10:51 AM
Subject: Doe v. UI
To: Rockne Cole <rocknecole@gmail.com>
Cc: Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov>, Deist, Christopher
<christopher.deist@ag.iowa.gov>


Rockne,


Please find Defendants' discovery responses attached. The documents bates numbered DEF
3977-5105 have been uploaded to OneDrive and can be accessed via the link below. Please
note this link will expire on January 26, 2021.

████████████████████████████████████████████████████████████████


Thank you.




**Audra Drish**
**Paralegal**
**Office of the Attorney General of Iowa**
1305 E. Walnut St.

Des Moines, Iowa 50319

Main: (515) 281-5164 | Direct: (515) 725-0107
Email: audra.drish@ag.iowa.gov | www.iowaattorneygeneral.gov


**I am working from home until further notice and can be reached on my cell phone at 515-480-9762**.

EXHIBIT 2, Page 10

From: **Burkhiser, Kayla** <kayla.burkhiser@ag.iowa.gov>
Date: Thu, Jan 14, 2021 at 9:39 AM
Subject: Doe v. UI - call today
To: Rockne Cole <rocknecole@gmail.com>
Cc: Deist, Christopher <christopher.deist@ag.iowa.gov>, Drish, Audra [AG] <Audra.Drish@ag.iowa.gov>

Hi Rockne,

I wanted to follow up on our call yesterday afternoon and to let you know that I don't think we need to have a call this afternoon.  Please let me know if the following does not comport with your memory of our conversation:

1.    You have agreed to substantially narrow your requests for production to the issues outlined in your letter of January 12, 2021 as paragraphs A-C.  At this time, we are to disregard the "Addendum" to that letter.

a.    To resolve the issues you outline in Paragraph A, the University has agreed to research whether there are any Department of Education OCR letters from 2014-present which deal with cases in which students filed a complaint with that agency relating to sexual assault or sexual harassment on campus.  If such relevant complaints exist, the University will produce all letters from OCR having to do with those incidents.  The University will redact the names of any students involved in compliance with FERPA.

b.    To resolve the issues you outline in Paragraph B, the University has agreed to search for training materials and/or "sign-in" sheets, to the extent they exist, relating to specific trainings that may have been attended by the individual Defendants.  You have indicated that you will provide us with the names of the trainings you believe are relevant to your claims.

c.    Defendants will provide a summary document which outlines all sexual harassment and sexual assault complaints against female respondents between 2011 and 2020 which have proceeded to the University's investigation phase, including:

- A neutral identifier for each respondent (Respondent 1, 2, 3 would work)
- A summary of the nature of the allegations
- Who the assigned investigator was, and whether they found for/against the respondent
- Whether the case proceeded to hearing
- Who the assigned adjudicator was, and whether they found for/against the respondent
- Whether the case was appealed
- Whether the case was affirmed at each level of appeal (and who the appeal officers were).

EXHIBIT 2, Page 11

UI thinks it will be able to produce the summary document you requested regarding female respondents by the end of this week or early next week.  They are also inquiring into whether there are any responsive OCR letters, and I expect to have those soon.  If you could send the names of the specific trainings you would like us to inquire about, I'm happy to get that wrapped up, as well. We may be able to avoid any lengthy delay in decision of our MSJ.

Thanks,

Kayla



**Kayla Burkhiser Reynolds**
**Assistant Attorney General**
Office of the Attorney General of Iowa
Special Litigation Division
1305 E. Walnut St.
Des Moines, IA 50319
Main: (515) 281-5164 | Direct: (515) 725-5390 | Fax: (515) 281-4209
Email: Kayla.Burkhiser@ag.iowa.gov | www.iowaattorneygeneral.gov

**I am working from home until further notice and can be reached on my cell phone at 515-777-6310.**

**CONFIDENTIALITY NOTICE**:  This email message (including any attachments) may be confidential or protected by one or more of the following:  the attorney-client privilege, attorney work product doctrine, or applicable laws.  If you are not the intended recipient or have received this message in error, please: (1) do not read, print, copy, distribute or use it in any way; (2) permanently delete or destroy the message (including any attachments); and (3) notify the sender immediately by reply email or telephone.  Any unintended transmission of this email message does not constitute a waiver of any applicable privilege or protection.  Thank you.

**From:** Rockne Cole [mailto:rocknecole@gmail.com]
**Sent:** Friday, January 15, 2021 9:46 AM
**To:** Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov>; Deist, Christopher
<christopher.deist@ag.iowa.gov>
**Subject:** Informal Discovery Resolution - Doe

Kayla and Christopher,

Are you available to chat today at around 1130am?

I have an oral argument this afternoon.

I would like to seek a short two week extension of summary judgment deadline.

As  I indicated in my previous email, your email appeared to address nearly everything that we had
wanted with the exception of the 21 summaries.

I understand those summaries are relatively short.

Additionally, we would be fine with redacting any and all personal information or other identifiers.

Again, if you argue in your sj motion that we failed to show disparate treatment with similarly situated
females, I don't know how else we can show that without access to some level of detail contained in
those files.

On the other hand, if that is not an argument that you guys are going to make at sj or at trial, then that
might moot out our request.  So I would need confirmation that is what your intent is.  If you're not
going to make that argument, that changes the analysis.

With the exception of the case summaries, it appears everything else has been resolved.

I think a short extension would be justified.

Please let me know your position on extension request and on case summaries.

--

Rockne Cole
Attorney at Law
Cole Law Firm, PC
209 E. Washington St., Suite 304
Iowa City, IA 52240
(319)519-2540

(319)359-4009 FAX

EXHIBIT 2, Page 13

E-mail is not a secure mode of communication and may be accessed by unauthorized persons.  This communication originates from the law firm of Rockne Cole, Attorney at Law, and is protected under the Electronic Communication Privacy Act, 18 U.S.C. §2510-2521. Such communication may be confidential and/or privileged and is intended only for the party to whom addressed.  It is prohibited for anyone else to disclose, copy, distribute or use the contents of this communication.  Personal messages express views solely of the sender and shall not be attributed to the law firm.  If you received this communication in error, please notify the sender immediately by e-mail or by telephone at (319)519-2540.

From: **Burkhiser, Kayla** <kayla.burkhiser@ag.iowa.gov>
Date: Fri, Jan 15, 2021 at 10:47 AM
Subject: RE: Informal Discovery Resolution - Doe
To: Rockne Cole <rocknecole@gmail.com>
Cc: Deist, Christopher <christopher.deist@ag.iowa.gov>, Drish, Audra [AG] <Audra.Drish@ag.iowa.gov>

Hi Rockne,

Chris is in depos all day today and I have several large filings that I'm trying to get finalized and submitted. We are doing our best to address your concerns but are very pressed for time today.

We do intend to argue that Plaintiff has not provided any evidence that he was treated differently than female respondents at UI in our MSJ and at trial, if those claims survive.  That argument is relevant to several of Plaintiff's claims.

If you look at Plaintiff's response to Defendants' Interrogatory 13, you'll see that Plaintiff has consistently claimed that the complainants in his student misconduct case are the individuals he considers to be "similarly situated." He makes no mention of female respondents and requested no discovery targeted at that question. If you disagree, please point me to which of your RPDs requests the summary information you describe below.  The closest I can find is RPD 5, which seeks "All Documents and/or Communications Concerning University Level Title IX Proceedings that involved Individual Defendants." Our objections stand to that RPD. Further, I don't think we can assume that all of the cases involving female respondents over the past ten years "involved individual Defendants". It seems likely to me that many of the cases involved none of the individual Defendants in this case. I propose that we look at the chart UI is currently compiling (since that is what we agreed to and what we instructed them to put together by the end of the day today) to see whether there are any female respondents who were accused of a similar type of behavior as Plaintiff, and whether any of the individual Defendants were involved in each case, so that we can then think about potentially doing a more targeted pull of files. Again, if there is some other RPD that applies to this information, please let me know.

The biggest problem we're facing at this time is the need to gather and review the documents you are now requesting, to the extent that they are responsive to some existing request.  It will be virtually impossible for us to even gather these documents during the two week extension you've requested below, let alone to review and redact them, as there are likely to be hundreds of pages. Like you, Chris and I have other obligations over the next couple of weeks that cannot be easily shifted around to make way for emergency discovery projects. And as I mentioned above, I'm not sure you even requested this information in your original requests and I'm not sure the request you've made below is timely, given the fact that discovery is closed.  We provided the bulk of our production to you on December 4th and noted the documents that were still in review at that time (handwritten hearing notes).  Why are we only now receiving notice of alleged deficiencies in our production? I think it is unfair for you to take issue with our responses given the extreme overbreadth of nearly all of the requests we were served.  That said, I am not entirely unsympathetic to the timing, as I think that the various amendments to the Complaint and the length of time needed to decide the MTD have unnecessarily compressed the discovery period in this case, and I do appreciate you being flexible with our discovery deadlines, as it

can be difficult to gather significant documentation from so many different sources and individual Defendants.

I think any extension you request may result in a continuance, since the Court indicated when we last requested an extension that we were putting our trial date at risk at that time. While we will not oppose your request for extension, I think we are in a position in which we must still file our MSJ today. We do not have time to request another extension and have it decided today and we will not chance filing our motion untimely. I hope you will be willing to honor your statement that you will not resist any motion to amend that we might need to file in the future, should any documents we produce over the next couple of weeks change our defenses in this case. If, for some reason, the Court decides to continue this case rather than grant an extension, we would oppose reopening discovery (but would work with you to resolve the remaining issues we've discussed this week).

Finally, I've attached the summary judgment ruling for the ████ case. You will note that the case was dismissed in its entirety and that Keller was not an individual Defendant. The settlement agreement for ████ (in which Keller was also not a defendant) can be found here:



Kayla

**Kayla Burkhiser Reynolds**
**Assistant Attorney General**
Office of the Attorney General of Iowa
Special Litigation Division
1305 E. Walnut St.
Des Moines, IA 50319
Main: (515) 281-5164 | Direct: (515) 725-5390 | Fax: (515) 281-4209
Email: Kayla.Burkhiser@ag.iowa.gov | www.iowaattorneygeneral.gov

**I am working from home until further notice and can be reached on my cell phone at 515-777-6310.**

__CONFIDENTIALITY NOTICE__:  This email message (including any attachments) may be confidential or protected by one or more of the following:  the attorney-client privilege, attorney work product doctrine, or applicable laws.  If you are not the intended recipient or have received this message in error, please: (1) do not read, print, copy, distribute or use it in any way; (2) permanently delete or destroy the message (including any attachments); and (3) notify the sender immediately by reply email or telephone.  Any unintended transmission of this email message does not constitute a waiver of any applicable privilege or protection.  Thank you.

From: **Burkhiser, Kayla** <kayla.burkhiser@ag.iowa.gov>
Date: Fri, Jan 15, 2021 at 3:54 PM
Subject: RE: Informal Discovery Resolution - Doe
To: Rockne Cole <rocknecole@gmail.com>
CC: Deist, Christopher <christopher.deist@ag.iowa.gov>, Drish, Audra [AG] <Audra.Drish@ag.iowa.gov>

Hi Rockne,

I inquired as to whether UI maintains concise summaries of each case and they do not.

My understanding is that Title IX does not have a reporting requirement that requires Universities to provide summaries of the details of each case to DOE for any given year.  Universities maintain documentation relating to Title IX-related complaints as public records and in the event that they are ever requested by OCR, but they aren't required to produce summaries of the facts of each Title IX case that occurs throughout the year to the Department of Education (though they are subject to various other regulations).  I think the size of the files here would depend on the facts of each case.  Some would be significantly smaller than the record in Plaintiff's case, others may be larger.  It's hard to guess.  Like I said, I think the best course of action at this point is to wait for UI's summary so that we can get a better idea of which of these cases might even be relevant to Plaintiff's claims.

Kayla



**Kayla Burkhiser Reynolds**
**Assistant Attorney General**
Office of the Attorney General of Iowa
Special Litigation Division
1305 E. Walnut St.
Des Moines, IA 50319
Main: (515) 281-5164 | Direct: (515) 725-5390 | Fax: (515) 281-4209
Email: Kayla.Burkhiser@ag.iowa.gov | www.iowaattorneygeneral.gov

**I am working from home until further notice and can be reached on my cell phone at 515-777-6310.**

**CONFIDENTIALITY NOTICE**:  This email message (including any attachments) may be confidential or protected by one or more of the following:  the attorney-client privilege, attorney work product doctrine, or applicable laws.  If you are not the intended recipient or have received this message in error, please: (1) do not read, print, copy, distribute or use it in any way; (2) permanently delete or destroy the message (including any attachments); and (3) notify the sender immediately by reply email or telephone.  Any unintended transmission of this email message does not constitute a waiver of any applicable privilege or protection.  Thank you.

EXHIBIT 2, Page 17

**From:** Rockne Cole [mailto:rocknecole@gmail.com]
**Sent:** Friday, January 15, 2021 11:53 AM
**To:** Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov>; Deist, Christopher
<christopher.deist@ag.iowa.gov>
**Subject:** Re: Informal Discovery Resolution - Doe

Thanks.

I think the key point for the summaries is that we believe that these summaries would be less than two pages and not hundreds of pages.

Obviously, the whole file can be thousands of pages.  Get that, but our assumption is based upon investigation and review of case law is that UI would have cliff notes version of each case file for regulatory purposes of Department of Education.

When they audit, I assuming that they would need summaries to review how the UI is implementing Title IX.

We are seeking those summaries.  So I am just asking: (1) whether those summaries exist and (2) how big they would be.

Redacting 50 total pages is different than thousands of pages.

So I am just asking how big those summaries would be of the 21 case files that we are still trying to resolve.

RC


On Fri, Jan 15, 2021 at 11:26 AM Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov> wrote:

I don't think we received your full message below.


**From:** Rockne Cole [mailto:rocknecole@gmail.com]
**Sent:** Friday, January 15, 2021 11:19 AM
**To:** Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov>; Deist, Christopher
<christopher.deist@ag.iowa.gov>
**Subject:** Re: Informal Discovery Resolution - Doe

Kayla and Christopher,

What do you think about three week extension to allow us time to review your discovery response and to file any motion to compel if need be?

I think that would be the only way we would need to bump trial.

Also how about resistance deadline of February 28, 2021?

RC

Also, for record purposes, you are indicating that these

From: **Burkhiser, Kayla** <kayla.burkhiser@ag.iowa.gov>
Date: Mon, Jan 18, 2021 at 9:29 AM
Subject: Doe v. UI - female respondents
To: Rockne Cole <rocknecole@gmail.com>
Cc: Deist, Christopher <christopher.deist@ag.iowa.gov>, Drish, Audra [AG] <Audra.Drish@ag.iowa.gov>

Hi Rockne,

Please see the attached supplemental discovery responses. We are still working on the OCR letters and awaiting your instructions on the training records.

You'll note that this chart includes a different number of female respondents than those produced in discovery. UI has explained that the charts produced in discovery (which indicate that there were 20 or 21 cases in which women were respondents/accused students) included cases which cannot be properly categorized as "sexual harassment" or "sexual assault." I will follow up with them to get more specific information about the discrepancy, but I wanted to provide this to you in the meantime.

Once you have had a chance to review, let's discuss.

Thanks,

Kayla



**Kayla Burkhiser Reynolds**
**Assistant Attorney General**
Office of the Attorney General of Iowa
Special Litigation Division
1305 E. Walnut St.
Des Moines, IA 50319
Main: (515) 281-5164 | Direct: (515) 725-5390 | Fax: (515) 281-4209
Email: Kayla.Burkhiser@ag.iowa.gov | www.iowaattorneygeneral.gov

**I am working from home until further notice and can be reached on my cell phone at 515-777-6310.**

**CONFIDENTIALITY NOTICE**:  This email message (including any attachments) may be confidential or protected by one or more of the following:  the attorney-client privilege, attorney work product doctrine, or applicable laws.  If you are not the intended recipient or have received this message in error, please: (1) do not read, print, copy, distribute or use it in any way; (2) permanently delete or destroy the message (including any attachments); and (3) notify the sender immediately by reply email

EXHIBIT 2, Page 20

From: **Deist, Christopher** <christopher.deist@ag.iowa.gov>
Date: Tue, Jan 19, 2021 at 2:31 PM
Subject: RE: Doe v. UI - female respondents
To: Rockne Cole <rocknecole@gmail.com>, Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov>

Rockne,

Kayla and I aren't available for a call today, but after discussion, we can respond to your requests as follows:

1. Regarding the identified Title IX cases, we will reach out to UI to obtain redacted copies of the investigator reports (and appeal decisions where applicable) for the six cases you singled-out. I will note that the spreadsheet we already sent does provide some of the information you were seeking (gender of the respondent & complainant, ultimate outcome, etc.). In terms of the timing of the production, it will depend upon how difficult it is for UI to pull those reports and how long the redaction process takes. We will update you with estimates as we determine them.

2. Regarding the Title IX training materials, we will inquire with UI if any such materials are available/in their possession. As we noted, from our previous talks with UI, these materials are not generally maintained. Additionally, we will note that organizations such as RAVA are not UI entities, but rather partner organizations separate from the UI infrastructure. As such, we are more limited in our access to their materials. But we will inquire with UI and update you accordingly.

3. Regarding the OCR materials, again, our understanding based on last week's phone call is that this request is limited to the direct letters sent by OCR and UI's responses accordingly. We will work with UI to determine if any such responsive documents exist and update you with production timing estimates (if applicable) as soon as possible.

4. Finally, regarding your request for an extension on your resistance deadline, we are more inclined at this point to say that, if such an extension is necessary, then the parties should simply request a full continuance of the case as a whole. We do not wish to bite into Judge Ebinger's time to fully consider our motion, particularly given the complexity and fact-intensive nature of the case. Additionally, we would continue to request that we be afforded the opportunity to file an amended MSJ if necessary based upon this supplemental production.

Let us know if you have any further questions.

Chris



**Christopher J. Deist**

**Assistant Attorney General**
**Office of the Attorney General of Iowa**

EXHIBIT 2, Page 21

**Special Litigation Division**
1305 E. Walnut St.

Des Moines, Iowa 50319

Main: (515) 281-5164 I Direct: (515) 281-7240
Email: Christopher.Deist@ag.iowa.gov | www.iowaattorneygeneral.gov

**CONFIDENTIALITY NOTICE**: This email message (including any attachments) may be confidential or protected by one or more of the following: the attorney-client privilege, attorney work product doctrine, or applicable laws. If you are not the intended recipient or have received this message in error, please: (1) do not read, print, copy, distribute or use it in any way; (2) permanently delete or destroy the message (including any attachments); and (3) notify the sender immediately by reply email or telephone. Any unintended transmission of this email message does not constitute a waiver of any applicable privilege or protection. Thank you.

**From:** Rockne Cole <rocknecole@gmail.com>
**Sent:** Monday, January 18, 2021 4:55 PM
**To:** Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov>; Deist, Christopher <christopher.deist@ag.iowa.gov>
**Subject:** Re: Doe v. UI - female respondents

Hi Kayla and Christopher,

Thank you, Kayla,

Plaintiff would first like to personally thank UI for working with him together on these document requests.

For those files on the chart, while we are waiting to hear back from UI, Plaintiff would like the files for 2, 3, 5, 7, 9, and 14. For these files only, Plaintiff wants documents, which will be limited to the gender of the accuser and the accused, the investigator's and/or adjudicator's/appeal officers report of the allegations and findings, the sanctions given, and the final outcome of the case. If these documents can be provided, Plaintiff will consider this request resolved.

It is quite difficult for sexual misconduct training to know what goes on with training without more knowledge. First, Plaintiff wants documents of all the Title IX training provided to Stevenson Earl, Frost, and Keller from January 1, 2015, to present. As for your question, he would like the training by RVAP and EVAWI. Plaintiff understands that RVAP was involved in some training, and in particular, he would like any training documents he has not received yet on Start by Believing and What About Me(n). Plaintiff understands that an employee named Shivers had some involvement in What About Me(n) because of an email she sent out regarding it in 2018, the content of which is in his Third Amended Complaint paragraph 309. Plaintiff would want all documents UI has on these. As for EVAWI, he would like Forensic

EXHIBIT 2, Page 22

Experiential Trauma Interview (FETI) and Reading Victims and Judging Credibility: Best Practices in Promoting Victim Centered Investigations and Prosecutions. If these documents can be provided, Plaintiff will consider this request resolved.

As it relates to the OCR documents, Plaintiff has wanted these documents from the beginning, are the documents he is most interested in, and was willing to file a motion to compel on this. He summarized his request number 6-11, and he understands that UI will be providing his request: "Identify U.S. Department of Education's Office of Civil Rights' ("OCR") Title IX complaints, investigations, and/or enforcement actions that involved Iowa, which occurred between January 1, 2015, and December 31, 2019, arising based on Iowa's handling of either Sexual Misconduct or based on gender discrimination, bias, harassment, etc., – and – produce communications exchanged between Iowa and OCR during this time frame, related to the above-referenced matters. These correspondence will be produced with students' names substituted with their initials and gender." For this request, in particular, if UI withholds any documents for any reasons, which Plaintiff does not expect because of Court rulings, Plaintiff asks that a privilege record be provided.

Are you available to talk at all Tuesday afternoon?

Rockne

EXHIBIT 2, Page 23

From: **Burkhiser, Kayla** <kayla.burkhiser@ag.iowa.gov>
Date: Tue, Jan 19, 2021 at 7:31 PM
Subject: RE: Doe v. UI - female respondents
To: Rockne Cole <rocknecole@gmail.com>
Cc: Deist, Christopher <christopher.deist@ag.iowa.gov>, Drish, Audra [AG] <Audra.Drish@ag.iowa.gov>

Rockne—

1.    UI says that the previous numbers included all sexual misconduct, including stalking and domestic violence, rather than just sexual assault and sexual harassment. We can get an affidavit to this effect if needed.  Let us know.

2.    Again, we will check.  Generally speaking, the university cannot produce documents for an organization which is not part of UI, whether or not UI provides partial funding.

3.    As we discussed during our phone call, "Title IX" is an umbrella that encompasses everything from housing to athletics.  Since Title IX prohibits "gender discrimination," all of these areas fall under your broad request for documents relating to "gender bias." Also as I noted on our call, some of these irrelevant letters could have tens of thousands of pages of documents attached. If you are continuing to insist that we produce potentially tens of thousands of pages of irrelevant documentation, we decline to do so.  Feel free to file your motion to compel.

We are becoming quite frustrated with the multitude of communications which continually move the target on your requests.  We are going to move forward with producing the documents that we agreed to produce, and may need to let the Court settle any additional disputes.

I apologize that we have not yet been able to provide a timeline for production. I will hopefully be able to do so tomorrow.


Kayla




**Kayla Burkhiser Reynolds**
**Assistant Attorney General**
Office of the Attorney General of Iowa
Special Litigation Division
1305 E. Walnut St.
Des Moines, IA 50319
Main: (515) 281-5164 | Direct: (515) 725-5390 | Fax: (515) 281-4209
Email: Kayla.Burkhiser@ag.iowa.gov | www.iowaattorneygeneral.gov

**I am working from home until further notice and can be reached on my cell phone at 515-777-6310.**

**CONFIDENTIALITY NOTICE**:  This email message (including any attachments) may be confidential or protected by one or more of the following:  the attorney-client privilege, attorney work product doctrine, or applicable laws.  If you are not the intended recipient or have received this message in error, please: (1) do not read, print, copy, distribute or use it in any way; (2) permanently delete or destroy the message (including any attachments); and (3) notify the sender immediately by reply email or telephone.  Any unintended transmission of this email message does not constitute a waiver of any applicable privilege or protection.  Thank you.

**From:** Rockne Cole [mailto:rocknecole@gmail.com]
**Sent:** Tuesday, January 19, 2021 5:32 PM
**To:** Deist, Christopher <christopher.deist@ag.iowa.gov>; Burkhiser, Kayla <kayla.burkhiser@ag.iowa.gov>
**Subject:** Re: Doe v. UI - female respondents

Kayla and Christopher,

It appears that we are making progress.

I have replied in bold to each one of your paragraphs


On Tue, Jan 19, 2021 at 2:31 PM Deist, Christopher <christopher.deist@ag.iowa.gov> wrote:

Rockne,

Kayla and I aren't available for a call today, but after discussion, we can respond to your requests as follows:

1. Regarding the identified Title IX cases, we will reach out to UI to obtain redacted copies of the investigator reports (and appeal decisions where applicable) for the six cases you singled-out. I will note that the spreadsheet we already sent does provide some of the information you were seeking (gender of the respondent & complainant, ultimate outcome, etc.). In terms of the timing of the production, it will depend upon how difficult it is for UI to pull those reports and how long the redaction process takes. We will update you with estimates as we determine them.

Thank you. I understand that the spreadsheet contains some information, but it does not allow Plaintiff to assess these cases' details, which he will need to compare his case to.   I also understand that you will be the more indepth of reports for the particular files that we have requested.  There are 15 cases in that sheet, and Kayla said she would get back to us on the discrepancy between why it says there are 15 there and the report says 21 – wanted to see if she has been able to get that information.

2.    Regarding the Title IX training materials, we will inquire with UI if any such materials are available/in their possession. As we noted, from our previous talks with UI, these materials are not generally maintained. Additionally, we will note that organizations such as RAVA are not UI entities, but rather partner organizations separate from the UI infrastructure. As such, we are more limited in our access to their materials. But we will inquire with UI and update you accordingly.

  Regarding Title IX materials – Plaintiff understands that UI is one of the organizations that funds RVAP, and that the What About Me(n) program was a UI-sponsored training event. In his Complaint, Plaintiff alleged that UI's RVAP and WRAC started "training co-facilitators" for a new program regarding "masculinity." He believed that UI would produce these documents considering he also alleged that the Sexual Misconduct Response Coordinator was involved in this - allegations he made based on the Iowa Public Radio interview he listened to and provided link of in his Complaint. Plaintiff's email has been shut down sometime after expulsion, but he has been able to locate the mass-email that UI sent out that he is referring to. It is attached to this email. In either case, Plaintiff appreciates any effort made to locate these documents.  We would like confirmation as to whether any of the Defendants attended that session in addition to the training sessions attended by Frost, Stevenson Earl and Keller.

3.   Regarding the OCR materials, again, our understanding based on last week's phone call is that this request is limited to the direct letters sent by OCR and UI's responses accordingly. We will work with UI to determine if any such responsive documents exist and update you with production timing estimates (if applicable) as soon as possible.

There seems to be some misunderstanding regarding the OCR materials. Plaintiff does not know if this is because he was not clear enough about what he wants, or if summarizing points 6-11 into one request made things more confusing for UI. As clarified in writing right after last week's phone call and yesterday's email, Plaintiff wants the following: "Identify U.S. Department of Education's Office of Civil Rights' ("OCR") Title IX complaints, investigations, and/or enforcement actions that involved Iowa, which occurred between January 1, 2015, and December 31, 2019, arising based on Iowa's handling of either Sexual Misconduct or based on gender discrimination, bias, harassment, etc., – and – produce communications exchanged between Iowa and OCR during this time frame, related to the above-referenced matters.  We use the "and" here, but would anticipate most of these investigations would be satisified wtih those communications between Dept of Education and University of Iowa.   These documents will be produced with students' names substituted with their initials and gender." For this request, in particular, if UI withholds any documents for any reasons, which Plaintiff does not expect because of Court rulings, Plaintiff asks that a privilege record be provided.  I believe

EXHIBIT 2, Page 26                                          Appx Page No. 40

**most of those should be all communications between University of Iowa and Department of Education.**

Also, we do feel like we have made significant progress and we appreciate that it will take some time, but please try to give a firmer deadline. Do you think by end of next week would be enough time?

I just want to be able to daylight for that for the Court in deciding whether she needs to grant a continuance of trial.

Thanks.

Rockne Cole



**Christopher J. Deist**

**Assistant Attorney General**
**Office of the Attorney General of Iowa**

**Special Litigation Division**
1305 E. Walnut St.

Des Moines, Iowa 50319

Main: (515) 281-5164 I Direct: (515) 281-7240
Email: Christopher.Deist@ag.iowa.gov | www.iowaattorneygeneral.gov

**CONFIDENTIALITY NOTICE**: This email message (including any attachments) may be confidential or protected by one or more of the following: the attorney-client privilege, attorney work product doctrine, or applicable laws. If you are not the intended recipient or have received this message in error, please: (1) do not read, print, copy, distribute or use it in any way; (2) permanently delete or destroy the message (including any attachments); and (3) notify the sender immediately by reply email or telephone. Any unintended transmission of this email message does not constitute a waiver of any applicable privilege or protection. Thank you.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSITY OF IOWA; BOARD OF REGENTS, STATE OF IOWA; TIFFINI STEVENSON EARL, individually and in official capacity, IRIS FROST, individually and in official capacity, LYN REDINGTON, individually and in official capacity, ANGIE REAMS in official capacity, CONSTANCE SCHRIVER CERVANTES, individually and in official capacity, JOHN KELLER, individually and in official capacity, MONIQUE DICARLO, individually and in individual capacity, MARK BRAUN, individually and in official capacity,<br><br>    Defendants. | CASE NO. 3-19-CV-00047<br><br><br><br>**DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

**COME NOW** Defendants the University of Iowa, Board of Regents, State of Iowa, Tiffini Stevenson Earl, Iris Frost, Lyn Redington, Angie Reams, Constance Schriver Cervantes, John Keller, Monique DiCarlo, and Mark Braun, and submit their Responses to Plaintiff's First Set of Requests for Production of Documents. Defendants reserve the right to continue to modify and supplement these answers as necessary. Nothing contained in these answers shall be construed to waive the attorney-client privilege or work product protection.

Respectfully Submitted,

**THOMAS J. MILLER**
Attorney General of Iowa

 /s/ *Kayla Burkhiser Reynolds*
KAYLA BURKHISER REYNOLDS
/s/ Christopher Deist
CHRISTOPHER J. DEIST
Assistant Attorneys General
Department of Justice
Hoover State Office Building, 2nd Floor
1305 E. Walnut Street
Des Moines, IA 50319
Ph: (515) 725-5390
Fax: (515) 281-4902
kayla.burkhiser@ag.iowa.gov
christopher.deist@ag.iowa.gov

| **PROOF OF SERVICE** | |
|---|---|
| The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on December 29, 2020: | |
| ☐ U.S. Mail | ☐ FAX |
| ☐ Hand Delivery | ☐ Overnight Courier |
| ☐ Federal Express | ☒ Email |
| ☐ CM/ECF | |
| Signature: /s/Audra Drish | |

2

EXHIBIT 3, Page 2

1.       All Documents and/or Communications that Individual Defendants relied on in determining Lisa Roe's and Sally Roe's and/or her witnesses were more credible than John Doe and his witnesses with regard to Lisa and Sally Roe's allegations of Sexual Misconduct against John Doe.

**RESPONSE: Defendants object to this request as vague and ambiguous with regard to the terms "more credible." Defendants further object insofar as the request presumes that each Individual Defendant or all Individual Defendants were responsible for making credibility determinations or observing the witnesses give testimony in person. As discussed extensively in their deposition testimony, the Individual Defendants who were responsible for making credibility determinations utilized all of the documentation available to them as well as their training and observations of the witnesses in completing their required duties. Furthermore, some of the Individual Defendants had access to additional parts of the record (for example, Ms. Stevenson Earl did not have access to the hearing transcripts). Without waiving the foregoing objections, the Individual Defendants relied on various responsive documents which have already been produced in this matter at DEF 001-1736; 3977-5101.**

2.       All Documents and/or Communications Concerning Lisa Roe's and Sally Roe's  allegations of Sexual Misconduct against John Doe.

**RESPONSE: Defendants object to this request as vague, ambiguous, and overbroad, and as seeking to violate the attorney client privilege or the attorney work product privilege. Defendants further object to this request as**

3

**not properly limited in time. Defendants do not have knowledge of all communications and/or documents ever sent to or by any person about the allegations against Doe. Without waiving the foregoing objections, see DEF 0001-3931; 3977-5101.**

3.    All Documents and/or Communications Concerning Iowa's handling of Lisa Roe's and Sally Roe's allegations of Sexual Misconduct against John Doe.

**RESPONSE: Defendants object to this request as vague, overbroad, and unduly burdensome. Defendants are unable to ascertain what Plaintiff means by "all documents and/or communications *concerning* Iowa's handling of" the two complaints raised against Plaintiff. Additionally, Defendants object to this request to the extent it requests documents or communications protected by attorney-client privilege, attorney work product protection, or FERPA. Without waiving the foregoing objections, Defendants refer Plaintiff generally to the University's record of his case, produced at DEF 001-3931; 3977-5101.**

4.    All Documents and/or Communications Concerning Iowa's investigations and/or decisions Related to John Doe's name appearing on Iowa's Persona Non Grata list.

**RESPONSE: Defendants are unaware of the existence of any such list and do not possess responsive documents.**

5.    All Documents and/or Communications Concerning University Level Title IX Proceedings that involved Individual Defendants.

**RESPONSE: Defendants object to this request as vague, overbroad, unduly burdensome, and not properly limited in time. Defendants are unable to ascertain what Plaintiff means by "all documents and/or communications *concerning* University Level *Title IX proceedings* that *involved* Individual Defendants." Plaintiff appears to be requesting all documentation of every Title IX complaint filed by any person, assigned to any individual Defendant, throughout the entire employment of each of the individual Defendants. Such a request is unduly burdensome, unlikely to lead to the discovery of admissible evidence, and not proportional to the needs of this case. Additionally, Defendants object to this request to the extent that it requests documents or information protected by attorney-client privilege, attorney work product protection, and/or the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.**

6.   All Documents and/or Communications exchanged between Iowa and the Dept. of Ed. and/or OCR that relate to OCR Investigations.

**RESPONSE: Defendants object to this request as overbroad, unduly burdensome, and not properly limited in time. Defendants further object to providing "all documents" relating to any OCR investigations which are unrelated to any of Plaintiff's claims and therefore irrelevant and unlikely to lead to the discovery of admissible evidence. Defendants further decline to provide "all documents" on the basis of the attorney-client privilege, attorney work product protection, and/or FERPA.**

7.     All Documents and/or Communications Concerning the OCR Investigations.

**RESPONSE: Defendants object to this request as overbroad, unduly burdensome, and not properly limited in time. Defendants further object to providing "all documents" relating to any OCR investigations which are unrelated to any of Plaintiff's claims and therefore irrelevant and unlikely to lead to the discovery of admissible evidence. Defendants further decline to provide "all documents" on the basis of the attorney-client privilege, attorney work product protection, and/or FERPA.**

8.     All Documents and/or Communications Concerning University Level Title IX Proceedings addressed in the OCR Investigations.

**RESPONSE: Defendants object to this request as overbroad, unduly burdensome, and not properly limited in time. Defendants further object to providing "all documents" relating to any OCR investigations, if any, which are unrelated to any of Plaintiff's claims and therefore irrelevant and unlikely to lead to the discovery of admissible evidence. Defendants further decline to provide "all documents" on the basis of the attorney-client privilege, attorney work product protection, and/or FERPA.**

9.     All Documents and/or Communications Concerning Iowa's evaluation and/or implementation of guidelines and/or Dear Colleague letter(s) issued by OCR from 2011- present.

**RESPONSE: Defendants object to this request as overbroad, unduly burdensome, vague, ambiguous, and not properly limited in time.**

6

**Defendants further object on the basis of the attorney client and attorney work product privileges. A multitude of "Dear Colleague Letters" have been issued by the U.S. Department of Education since 2011. Each letter covers a variety of topics or subject areas. Each subject area may involve entirely different University staff or committees. Without more specific information regarding which Dear Colleague letters and which specific "guidelines" Plaintiff is referencing, Defendant is unable to provide responsive documents, if any. See Defendants' response to Interrogatory No. 9.**

10.     All Documents and/or Communications Concerning the University Level Title IX Proceedings addressed in the Relevant Lawsuits.

**RESPONSE: Defendants object to this request as vague, overbroad, and unduly burdensome. Defendants are unable to ascertain what Plaintiff means by "all documents and/or communications *concerning* the University Level *Title IX proceedings*." Furthermore, Defendants object to this request as seeking documents or information irrelevant to the present case. The "Relevant Lawsuits" are not substantially similar, and as such documentation/information is irrelevant and unlikely to lead to the discovery of admissible evidence. Additionally, Defendants object to this request to the extent it seeks documents or communications covered by attorney-client privilege, attorney work product protection, and/or FERPA.**

11.     All Documents and/or Communications Concerning the Relevant Lawsuits that were received or sent by Individual Defendants.

7

**RESPONSE: Defendants object to this request as vague, overbroad, and unduly burdensome. Defendants are unable to ascertain what Plaintiff means by "all documents and/or communications *concerning* the Relevant Lawsuits." Additionally, Defendants object to this request as seeking documents or information irrelevant to the present case. The "Relevant Lawsuits" are not substantially similar, and as such documentation/information is irrelevant and unlikely to lead to the discovery of admissible evidence. Additionally, Defendants object to this request to the extent it requests documents or communications covered by attorney-client privilege, attorney work product protection, and/or FERPA.**

12.   All Documents and/or Communications Concerning Title IX Trainings received by Individual Defendants from 2011-present.

**RESPONSE:  Defendants object to this request as not properly limited in time.  Plaintiff did not become a student at the University of Iowa until 2008, and the events at issue in Plaintiff's Third Amended Complaint did not occur until the fall of 2016. Defendants further object to this request as vague, ambiguous, overbroad, and unduly burdensome.  Without waiving the foregoing objections, Defendants direct Plaintiff to the training records produced at DEF 3935-3976; 5102-5105.**

13.   All social media posts, Documents, and/or other Communications sent or received by Individual Defendants Relating to Sexual Misconduct from 2012-present.

**RESPONSE: Defendants object to this request as vague, overbroad, and unduly burdensome. Defendants are unable to ascertain what Plaintiff**

8

**means by "all social media posts, documents, and/or communications…*relating to* sexual misconduct." Defendants further object to this request as an attempt by Plaintiff to invade the individual Defendants' right to privacy.  The individual Defendants have not willingly entered into this lawsuit and do not abandon their First Amendment rights to utilize their personal social media accounts or other means of electronic communication by virtue of their employment with the University. *See* Defendants' response to Interrogatory No. 13.**

14.     All social media posts, Documents, and/or other Communications sent or received by Individual Defendants relating to the following individuals, events and/or organizations: Brett Kavanaugh; Christine Blasey Ford; Bill Cosby; Brook Turner; Anita Hill; comedian Andy Gross; Dept. of Ed.'s previous Asst. Sec. of Ed. Catherine E. Lhamon; Dept. of Ed. Sec. Betsy Devos; OCR's 2018 proposed regulations regarding how universities address allegations of Sexual Misconduct pursuant to Title IX; The Clothesline Project; and Take Back the Night.

**RESPONSE: Defendants object to this response as overbroad, unduly burdensome, unlikely to lead to the discovery of admissible evidence, and not properly limited in time. Defendants further object to providing any documentation from any post or communication on their personal social media accounts or other personal electronic communications platform which are not directly related to Plaintiff or his student misconduct case. Despite their employment with the University of Iowa, the Individual Defendants retain their rights to privacy and Free Speech and will not be**

EXHIBIT 3, Page 9

**harassed in their personal lives by unnecessarily invasive discovery which has no relevance to Plaintiff's lawsuit. Furthermore, the Individual Defendants' personal views on the topics and people outlined in Request No. 14 are irrelevant and not probative of their abilities to provide Plaintiff with a fair student misconduct proceeding pursuant to the University's policies. *See also* Defendants' Response to Interrogatory No. 13.**

15.    All Documents and/or Communications Concerning John Doe's 3rd Amended Complaint or Relevant Title IX Lawsuits that were sent or received by Iowa employees including, but not limited to Individual Defendants.

**RESPONSE: Defendants object to this request as vague, overbroad, and unduly burdensome. Defendants are unable to ascertain what Plaintiff means by "all documents and/or communications *concerning* [his] 3rd Amended Complaint or Relevant Title IX Lawsuits..." Plaintiff's request requires Defendants to interpret his legal claims in order to divine which portions of his lengthy filings are relevant to his request and should be produced as responsive. Additionally, Defendants object to this request as it relates to the "Relevant Title IX Lawsuits," as the "Relevant Title IX Lawsuits" are not substantially similar, and as such documentation/information is irrelevant and unlikely to lead to the discovery of admissible evidence. Furthermore, Defendants object to this request to the extent that it requests documents or communications protected by attorney-client privilege, attorney work product protection, or**

10

**state and federal privacy laws, including FERPA. Without waiving the foregoing objections, see Defendants' entire production.**

16.     All Documents and/or Communications Concerning Iowa's handling of any request by another university inquiring about an applicant to said university that discloses discipline imposed on said applicant by Iowa for alleged Sexual Misconduct.

**RESPONSE: Defendants object to this request as vague, overbroad, unduly burdensome, not properly limited in time, and not proportional to the needs of this case. Notwithstanding these objections, Defendants are uncertain whether Plaintiff is referring to applications to the undergraduate college or to one of the many graduate colleges at UI. As explained in response to Interrogatory No. 14, each graduate college has its own admissions criteria and processes. This information is not maintained in a single database for all UI applicants, and collecting this information would require requests to each graduate college, gathering and reviewing their individual policies, reviewing many years' worth of admission applications and potential committee or administrators' notes, and then determining which students were not admitted and the scope of their past sexual misconduct.  Aside from the concerns arising from producing sensitive information about individuals who are not parties to this case, which may be FERPA protected, Defendants aver that the information requested by this interrogatory is not relevant or proportional to the needs of this case.**

17.     All Documents and/or Communications Concerning Iowa's handling of any application for enrollment that involved a student seeking to enroll in Iowa who disclosed

11

he/she was previously subjected to discipline at another university for alleged Sexual Misconduct.

**RESPONSE: Defendants object to this request as vague, overbroad, unduly burdensome, not properly limited in time, and not proportional to the needs of this case. Notwithstanding these objections, Defendants are uncertain whether Plaintiff is referring to applications to the undergraduate college or to one of the many graduate colleges at UI. As explained in response to Interrogatory No. 14, each graduate college has its own admissions criteria and processes. This information is not maintained in a single database for all UI applicants, and collecting this information would require requests to each graduate college, gathering and reviewing their individual policies, reviewing many years' worth of admission applications and potential committee or administrators' notes, and then determining which students were not admitted and the scope of their past sexual misconduct.  Aside from the concerns arising from producing sensitive information about individuals who are not parties to this case, which may be FERPA protected, Defendants aver that the information requested by this interrogatory is not relevant or proportional to the needs of this case.**

18.    All Documents and/or Communications Concerning Iowa's handling of any student who failed to disclose on his/her application to Iowa that he/she had been previously subjected to discipline at another university for alleged Sexual Misconduct.

**RESPONSE: Defendants object to this request as vague, overbroad, unduly burdensome, and not properly limited in time.  Defendants further object to providing the education records requested on the basis of FERPA.**

19.     Copies of all Iowa's policies, procedures, rules, and regulations concerning Sexual Misconduct in effect from 2012-present.

**RESPONSE: See documents produced in conjunction with Defendants' Initial Disclosures at DEF 630-704.**

20.     All Documents and/or Communications Concerning any proposed revisions made or not made to Iowa's policies, procedures, rules, and regulations concerning Sexual Misconduct from 2012-present.

**RESPONSE: Defendants object to this request as overbroad, unduly burdensome, and not properly limited in time. Defendants further object to providing any documentation which may be protected by the attorney client privilege or the work product doctrine.  Without waiving the foregoing objections, this answer may be supplemented.**

21.     All Documents and/or Communications Concerning Iowa's efforts to comply with the provisions of Title IX concerning Sexual Misconduct from 2012-2019.

**RESPONSE: Defendants object to this request as vague, overbroad, unduly burdensome, and not properly limited in time. Plaintiff's request is ambiguous with regard to the term "efforts."  The University of Iowa employs thousands of individuals, many of whom have undoubtedly engaged in some "effort" to ensure that the University complies with Title IX. Without further clarification, Defendants cannot provide responsive documentation.**

13

22.    All Documents and/or Communications Concerning any belief by Iowa that it complied, or did not comply, with its own applicable policies, procedures, rules, or regulations, in the investigation, evaluation, prosecution, adjudication, or appeal of the charge against John Doe.

**RESPONSE: Defendants object to this request as vague, overbroad, and unduly burdensome. Additionally, Defendants object to this request to the extent is requests documents or communications protected by attorney-client privilege, attorney work product, or state and federal privacy laws, including FERPA. Without waiving the foregoing objections, Defendants aver that the entirety of their production demonstrates that UI employees did, in fact, comply with UI's policies, procedures, rules, and regulations in processing the complaints against Doe.**

23.    All Documents and/or Communications identified in the answers to Your interrogatory responses in this case.

**RESPONSE: See all the documents provided in this case.**

24.    All Documents and/or Communications that support any denial or defense in your Answer to John's claims in this lawsuit.

**RESPONSE: See all the documents provided in this case.**

25.    All Documents and/or Communications that support any position You have taken or intend to take in this action.

**RESPONSE: See all the documents provided in this case.**

26.    A complete copy of the file of any expert witness that may be called by You at trial of this matter. This request includes, but is not limited to, any documents provided

14

to the expert by Iowa or Individual Defendants; any documents reviewed by the expert which were considered by the expert in reaching, explaining, or defending any opinion that may be rendered at the trial of this matter; as well as any notes, billing records, or other documents that were prepared by such expert.

**RESPONSE: Defendants object to this request to the extent it seeks information outside the scope of what is required by the Federal Rules of Civil Procedure. Defendants further object to the extent this request calls for information protected by the attorney client privilege or work product privileges. Without waiving the foregoing objections, see the expert report of Dr. John Peter Matilla, produced on August 21, 2020.**

27.    To the extent not already covered above, all Documents and/or Communications concerning the allegations set forth in John Doe's 3rd Amended Complaint – or subsequent complaints in this case – and Your defenses thereto.

**RESPONSE: Defendants object to this request as vague, overbroad, and unduly burdensome. Without waiving the foregoing objections, see all the documents produced in this matter.**

15

# Cole Law Firm, PC

**Rockne Cole**

209 East Washington
Suite 304
Iowa City, Iowa
52240
(319)519-2540
(319)359-4009
rocknecole@gmail.com

January 12, 2021

**Sent by email only to:**
kayla.burkhiser@ag.iowa.gov
christopher.deist@ag.iowa.gov

Kayla and Christopher:

I am writing regarding our concerns about your discovery responses received on December 29, 2020. At the outset, timing is an issue. We were flexible with receiving the discovery over 30 days after serving. You have generally been flexible with extensions in the past on requests; however, my concern is that your responses included several objections, including objections of requests being overbroad and vague. I have indicated several times in emails that I would be happy to resolve any concerns prior to receiving formal objections informally. Because no concerns were raised, Plaintiff and I believed, in good faith, that these documents will be produced, especially considering that most of the requests are supported by case law. Informal resolutions are not required, but that leaves only formal mechanisms to resolve, which is more time-intensive and costly.

Consequently, I would still like to resolve informally to the extent that we can. Tomorrow, January 13, at 1:00 pm, we will be discussing this letter.

I want to discuss two things:

    A.  To find out if, based upon this letter, there parts that we can resolve informally without court intervention; and
    B.  The summary judgment deadline, and how we could approach it with these current concerns.

I would imagine that the Court will not be excited about an extension request. However, I believe that a joint extension of two weeks could be sufficient to see if we can resolve our discovery request and file any necessary motion to compel if we cannot resolve our dispute. This is what Plaintiff and I prefer.

Alternatively, we may wish to have you file on January 15, 2021, and then allow us two weeks to resolve the discovery issue while providing us an additional three weeks to file our resistance after receiving discovery.

Plaintiff and I have collaborated closely on this letter and throughout the litigation. The letter highlights what we may be filing if we have to move to compel.

EXHIBIT 4, Page 1

**Three Key Demands of This Letter**

As highlighted in the letter below, almost everything we requested is supported by case law, and as such, we want everything we requested. We are willing to be flexible, however, and I am hopeful that, at the very least, we could informally resolve the issues with a firm commitment to obtaining these documents within two weeks. Documents requested in numbers 5-12, 16-18, 20, and 21 in Plaintiff's First Set of Requests for Production are important. They would fall under these three sections highlighted below:

A.  Department of Education Letters to University of Iowa from January 1, 2014-present, including, but not limited to, Title IX Compliance, enforcement, or revocation of federal funding due to inadequate compliance to Title IX.

B.  Actual Training Materials for Stevenson Earl, Frost, and Keller. As you pointed out in your resistance to our TRO, we did not connect deficient training or bias to the actual participants. We have not received all documents related to the training as we requested. While you provided some training materials, it is not linked to individual Defendants.

C.  Documents, such as Complaints and Outcomes from investigation and adjudication by Stevenson Earl, Frost, and appeal decisions by Keller. Additionally, as discussed in the letter below, we understand that, from 2012 to-present, there were 22 cases in which females were accused of sexual misconduct. As noted below, we do not believe FERPA is a reason to deny access to those files. First, we are under a protective order. Second, we have no problem if the names and personal identifiers of the students involved are redacted. It can be Jane Doe 1 - Jane 22.

If you are amenable to working with us on our demands, I believe a motion to compel will not be necessary. I look forward to a candid and amicable conversation tomorrow.

We are incorporating the attached Addendum below to adopt the demands therein, but this letter outlines only our primary concerns relating to discovery. The Addendum provides the legal basis for our demands and highlights arguments that we could make in a Motion to Compel.

Sincerely,


Rockne Cole



# Addendum To Discovery Letter

EXHIBIT 4, Page 2

I.      **RFP Response and Deficiencies**[1]

   A.  **General, or Repeated, Objections and Plaintiff's Response**

      i.    **Relevance**

UI's objections based on relevance are based on what is seemingly a purposefully myopic reading of Plaintiff's requests for production of documents, their relation to demonstrating gender-bias evidence, and the relevance of the presence of gender-bias at either an individual or institutional level as it would relate to Plaintiff's claims—essentially the presence of bias would prove highly damning, *see, e.g.*, See, e.g., *Doe v. Ohio State University*, No. 2:15-cv-2830, 2015 WL 6082606 (S.D.O.H. Oct. 16, 2015) ("Stated simply, if The Ohio State University has a pattern and practice that treats males unfairly in sexual misconduct investigations, then the school has a significant problem in this litigation. Determining whether such a problem exists necessitates looking at the data and the context surrounding that data."); *Doe v. Trustees of the Univ. of Pa.*, 270 F. Supp. 3d 799 (E.D. Fa. 2017).[2]

Virtually all Documents and Communications sought by Plaintiff speak to such institutional, or individual bias will speak directly or indirectly to the presence of bias, and therefore is highly relevant to his claim. *See, e.g.*, *supra*, fn. 3 (collecting cases explicating the relevance of discovery, which tends to demonstrate sex-bias).

Plaintiff pleaded in his Third Amended Complaint that both individuals and UI took actions against him based on gender-bias; any discovery which bolsters the presence of such bias is critical to his claim—and such may be demonstrated indirectly. *See Doe v. Purdue Univ.*, 928 F.3d at 669 (holding 2011 Dear Colleague letter and outside pressures relevant to the possible motivation of bias); *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018) (training policies implemented in response to Dear Colleague letter relevant in establishing bias); *Doe v. Columbia Univ.*, 831 F.3d 46, 58 (2d Cir. 2016) (same); *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018) (Dear Colleague letter coupled with external pressures relevant to determining bias); *Doe v. Loyola Univ.of Chicago*, 2020 WL 406771 (Jan. 24, 2020) (relevance of above in **motion to compel**).

Here Plaintiff seeks social-media posts tailored to demonstrate gender-bias, or views on Sexual Misconduct; outcomes of cases involving genders; communications with government agencies which may affect funding; documents relating to costly litigation arising from Title IX based on past-disfavoring of women; documents dealing with internal policy shifts; and documents relating to the implementation of certain policies and their

---

[1] Where possible, for ease of reading and clarity, issues that may be dealt with collectively are handled in such manner; where specific requests for documents require a particularized response, such is given.

[2] *See e.g., Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir.2018) (identifying "[d]iscovery" as the tool for obtaining "information" related to gender bias found in materials not "controlled" by plaintiff) (citing *Brown Univ.*, 166 F. Supp. at 189; *Marshall v. Ind. Univ.*, 170 F.Supp.3d 1201, 1210 (S.D. Ind. 2016)); *Doe v. Univ. of Oregon*, No. 6:17-cv-01103, 2018 WL 1474531, *15 (D.OR. Mar. 26, 2018) (rejecting motion to dismiss Title IX claim in part because discovery is necessary to resolve disputes over gender-bias evidence in the possession and control of defendant university); *Doe v. Brown Univ.*, 166 F. Supp.3d 177, 188 (D.RI., 2016) (same); *Doe v. Univ. of Mississippi*, No.3:18-cv-138-DPJFKB, Docket 60, p.11, and 20 (S.D.N.D. Miss., Jan. 16, 2019) (unreported) (rejecting motion to dismiss Title IX and procedural due process claims because "discovery" might substantiate allegations of defendant university's gender bias).

EXHIBIT 4, Page 3

efficacy—these will speak to either outside motivations which will support the inference of individual or institutional biases, actual individual biases, *de facto* statistically significant disparities in punishment, and personal beliefs which abrogate an appearance of impartiality.

Wherefore, Plaintiff would request that all objections based on relevancy be withdrawn or significantly narrowed, and all pertinent discovery be produced under the foregoing.

## ii.    FERPA

To the extent 20 U.S.C. § 1232g does apply to the Documents and Communications requested, Plaintiff is open to limiting identifying information in any such records to limit privacy and statutory concerns; the most obvious solution would be the redaction of personal identifying information and its substitution with initials and genders. If such is not acceptable, a proposed protection order could be drafted, or another mutually acceptable solution could be proposed.

With the above being said, UI's objections based on the Family Educational Rights and Privacy Act ("FERPA") fare little better than objections based on relevancy. To wit, case law does not support the contention that the materials which UI seeks to shield from discovery are "educational records," that they contain "identifying information," or that privacy interests—in the absolute worst case—would outweigh the legitimate need for discovery.

*Gischel v. Univ. of Cincinnati*, is telling. *See* No. 17-cv-475-SJD, Docket 41 (S.D.OH. May 15, 2019). The defendant University in *Gischel* essentially put forth what Plaintiff assumes was a similar FERPA argument,[3] which was rejected by the Southern District of Ohio. *Id.*

The Plaintiff sought:

> (a) " . . . *all* communications (including electronic communications and cover letters) between the University of Cincinnati and [OCR], except for the Title IX forms which shall be produced in an agreed            upon            redacted            form            .            .            ."; and
> (b) ". . . *all* files relating to the complaints alleging student to student physical contact allegations brought to the attention of the Title IX office that were 'touched by' [university investigators] and/or the adjudicators from the first OCR complaint received forward . . ." *Gischel v. Univ. of Cincinnati*, No. 17-cv-475-SJD, Docket 41 (S.D.OH. May 15, 2019).

*Id.*

The *Gischel* Court rejected the FERPA arguments proffered by the university, holding that the above would clearly be relevant to a claim of gender discrimination in a similar Title IX case. *See id.*; *accord Doe v. The Ohio State Univ.*, No. 2:16- cv-171, 2018 WL 4958958 (S.D.OH. Oct. 15, 2018 (hereinafter "*OSU*").

---

[3] It is somewhat difficult to understand the exact contours of the Defendants' FERPA argument as it is rather terse.

EXHIBIT 4, Page 4

Like *Gischel*, *OSU* required the Ohio State University produce all: "internal [communications] to [defendant university] and between [defendant university] and the Department of Education . . . and [OCR] **relating to** Title IX compliance," and all "materials related to 35 Title IX disciplinary proceedings identified by plaintiff." *Id.* at *5.

Where educational records are concerned, if such records are key to presenting a claim, protective orders or FERPA notices are the appropriate manners to address privacy concerns, not *carte blanche* refusal *See generally, Id. See also Gischel*, No. 17-cv-475-SJD.

Plaintiff here has agreed that Documents exchanged, in this case, are under a protective order; further, Plaintiff is willing to negotiate another solution that would accommodate privacy concerns of students who may be affected.

In the most basic form, FERPA will not apply to institutional records which involve faculty or employee involvement with Sexual Misconduct, the administration of such, communications related to such, conversations between the institutions and a government body, *etc.*; unless there is *student* identifying information all institutional Documents or Communications will fall outside of the purview of FERPA. *See generally, Dahmer v. Western Kentucky University*, 2019 WL 1781770, 1:18-CV-00124-JHM-LLK (W.D.K.Y. Apr. 23, 2019) (discussing that the privacy of the *individual student* is to be protected, not the institution, nor its employees).

Furthermore, it is not that UI does not know how to handle issues with FERPA. During the motion to dismiss stage, UI Counsel, Ann Byrd, sent a document to Plaintiff's friend, S.B., notifying him of FERPA disclosures in this lawsuit, and Plaintiff has this evidence. Considering that all documents exchanged in this lawsuit are also under a protective order, Plaintiff questions the manner in which these objections have been raised.

In short, FERPA cannot be used to block discovery; Plaintiff requests that objections either be withdrawn or delimited in light of the forgoing reasons.

### iii.      Attorney-Client Privilege and Work Product

Plaintiff requests no documents created by an attorney, or her agent, either to prepare for litigation, in legal consultation, or in a litigation—unless the privilege has been waived. All intra-university communications sought should be read to exclude both attorney work product and to the degree such might attach, attorney client privilege.

The above being stated, throughout the RFP Response, the attorney-client privilege is used absent virtually any context, absent justification, and absent anything but the blunt invocation it attaches. Such is improper: one may not simply *pro forma* put forth bald boilerplate objections and refuse to provide *any* additional discovery. *Doe v. Ohio State Univ.*, No. 2:16-cv-171, 2018 WL 4958958, at *2 (citing *Bros. Trading Co. v. Goodman Factors*, No. 1:14-CV-975, 2016 WL 9781140, at *2 (S.D. Ohio Mar. 2, 2016) (Rule 26(b)(1) does not place the burden of addressing proportionality considerations on the requesting party; nor does it permit the opposing

party to avoid responding simply by making a boilerplate objection on grounds of proportionality) (quoting Fed. R. Civ. P 26, Advisory Committee Notes (2015))).

To be sure, attorney-client privilege in such cases attaches only:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."

*Anderson v. Trs. of Dartmouth Coll.*, 2020 DNH 149, 2-3 (D.N.H. 2020) (citations omitted).

Additionally, documents could be produced "with the privileged material redacted." *Id* at 4. Even so, Plaintiff requests non-privileged documents exchanged, such as ones with UI's general counsel, including but not limited to ones with Nathan Levin. In-house counsel "may have performed certain legal functions as part of that team does not render privileged each communication made by or copied to him, particularly if the communication could equally well have been made to or by an individual without a law degree." *Id.* at 10 (citation omitted). In such communications, "[defendant] must demonstrate that [in-house counsel] was acting as an attorney in relation to *each* of the documents at issue. 'Merely saying that he was so acting in a memorandum of law is patently insufficient to meet the burden. Neither can it be assumed.'" *Id.* at 9. As such, Plaintiff requests "privilege log describing the communications withheld." *Id.* at 13.

### iv.    Proportionality and Burden

To give one an idea of what i*nadequate* evidence of disproportionality is in a case of this sort *Ohio State Univ.* proves exceedingly elucidating—it is also worth noting that the scope of discovery sought in *Ohio State Univ.* is congruent to that sought here and the evidence proffered failed to establish disproportionality. *Cf. Ohio State Univ.*, No. 2:16-cv-171, 2018 WL 4958958 (where Plaintiff sought thousands of pages of documents which would likely cost roughly $100,000 based on the university's stated amounts). Defendant in *Ohio State Univ.* not only, at first complied, in good faith, but upon further request presented the court with calculations of page counts, document estimates, estimated billable hours, and generally demonstrated that discovery would in concrete terms present a burden; however, such was insufficient to meet the burden of proof because of the importance of information that such documents might contain: essentially because the discovery was close to dispositive, there was none too much that could be demonstrated which would tip the scales in the favor of the defendant university. *See Id.*

Here, in contrast, there is nothing akin to *any showing of actual burden*, or a detailed balancing, or an assertion of fact. There was simply a summary, conclusory statement that legally is at best feckless. *Id.*

For the foregoing reasons, all objections that baldly assert disproportionality and over-burden should be withdrawn.

### v.    Temporal Scope and Scope.

As to the temporal scope, Plaintiff is willing to limit time to smaller windows as outlined and proposed below and remains open to alternative time-limit suggestions. This being said, on virtually every claim, Plaintiff does

EXHIBIT 4, Page 6

strongly believe that he retains the right to seek discovery until, at a minimum, 2011. *See Doe v. Purdue University*, 928 F.3d 652 (7th Cir. 2019) (noting that discovery going back years was appropriate where 2011 Dear Colleague letter created the "backdrop" of Plaintiff's claim and "ushered in a more rigorous approach to campus sexual misconduct allegations.").

With the above being kept in mind, Plaintiff thinks the limitations outlined below are exceedingly reasonable.

As to scope, the assertions that discovery requests are beyond the scope of FRCP 26 relies upon two principles inherently flawed: essentially, the tower no longer is leaning but has crumbled. Because the discovery requested *is* relevant and has not been shown to be *disproportionate*, it is clearly discoverable and falls well within Rule 26.

For the foregoing reasons, Plaintiff requests that the above objections be withdrawn.

### vi.     General
Structurally, legally, and generally, the objections proffered cannot stand. Even had they "legal legs" to stand on, bald and conclusory assertions of boilerplate objections absent more will never be valid for the purposes of refusing to answer a discovery request.

Finally, the way UI put forth what was essentially illusory objection, is slightly redolent of stonewalling and likely runs contrary to obligations laid out in the Federal Rules of Civil Procedure.

## B.  Response to Particular Objections and Plaintiff's Response

### i.     Request 1 and Objections.
Plaintiff requests that Defendants withdrawal their objection based on the vagueness of the term "more credible" or to specify how the use of such term, is in any way, vague or ambiguous. Plaintiff contends that the term is used under common usage and in so far as it may be considered "ambiguous," Plaintiff would define "credible" as: an adjective meaning "offering reasonable grounds for being believed[.]"

As to the second objection, based on "presum[ptions] that each Individual Defendant or all[4] Individual Defendants were responsible for making credibility determinations . . ." no such assumption was made, and Plaintiff seeks production of the Documents *and Communications* relied upon—the identity of the defendant, or the number of defendants, who relied upon any such document or communication is of little importance: put simply Plaintiff fails to understand how the presumption that a certain number in any way prevents Defendants from responding to the request.

---

[4] All capitalized terms used in the instant document shall carry with them their definition as defined in Plaintiff's First Set of Requests for Production of Documents (hereinafter "Plaintiff's RFP") or Plaintiff's First Set of Interrogatories (hereinafter "Plaintiff's Interrogatories"), unless otherwise defined herein specifically.

EXHIBIT 4, Page 7

Plaintiff is happy to alter such request to narrow the "Communications and/or Documents that Individual Defendants relied on in determining Lisa Roe's and Sally Roe's and/or her witnesses were more credible than . . ." to ""Communications and/or Documents that [any] Individual Defendant [may have] relied on in determining Lisa Roe's and Sally Roe's and/or her witnesses were more credible than . . ." if such modification will abrogate the "presumption" objection.

### ii.    Request 2 and Objections

Plaintiff recognizes that the instant request may have been misconstrued, to clarify: Plaintiff requests all Documents and Communications of which Iowa has knowledge and control, which Concern Lisa Roe's and Sally Roe's allegations of Sexual Misconduct against Plaintiff. These would include, but not limited to, any accommodations, including communications regarding educational accommodations, arising from these allegations. While the use of such accommodations may be protected under FERPA, these documents, as mentioned above, would be under a protective order, and Plaintiff's knowledge of such possible motivations outweighs other risks here. *See*, supra, Section (I)(A)(ii) (Plaintiff's Response to FERPA Objections).

Plaintiff specifically would narrow the instant response to refer only to documents that fall outside attorney-client privilege and to the extent that it applies attorney work product privilege—Documents prepared by Counsel relating to the instant litigation, or in preparation for such, as well as Communications to and from Counsel to Defendants are nor demanded.

Further, Plaintiff would happily limit such to the requests temporal scope such to January 1, 2016 until the present.

Given the foregoing, Plaintiff requests UI withdraw its objection and produce the requested documents.

### iii.    Request 3 and Objections

The statements made above, relating to request to, apply equally to Request 3, *see*, *supra*. As to FERPA, *see*, *supra*, Section (I)(A)(ii) (Plaintiff's Response to FERPA Objections).

### iv.    Request 4 and Objections

Plaintiff withdraws Request 4.

### v.    Request 5 and Objections

Plaintiff does not seek "every Title IX complaint" but instead, as the term was defined only "Documents and/or Communications Concerning University Level Title IX Proceedings" all of the terms in the quotation were defined by Plaintiff: as such, the quotation contained in Defendants' Response—and specifically the altered and un-bracketed terms emphasized—are likely neither vague, nor ambiguous.

To the extent that such request may be burdensome, Plaintiff would request case law supporting the conclusion and notes that the responding/producing party has the burden of demonstrating undue burden; further, that burden may not be carried by bald conclusory objections. Whether or not the students are

similarly situated is not for UI to decide at this moment. Seeing how reports of sexual misconduct are investigated when a female is the respondent, is relevant to Plaintiff's case. See *Doe v. The Ohio State Univ.,* Case No. 2:16-cv-171, 2018 WL 4958958 (S.D.OH. Oct. 15, 2018) (granting Title IX Plaintiff's motion to compel defendant university's 1) Production of all documentation related to 35 Title IX disciplinary proceedings identified on previously produced spreadsheet prepared by university, and 2) Requiring university respond to request for admission regarding whether defendant "charge[d]" *any* female students who "were alleged to have violated" *any* of the Title IX policies defendant alleged plaintiff violated."). As such, Plaintiff requests the 21 internal complaints where the respondent were females, as identified in DEF 3934.

As to relevancy, such is highly relevant to both demonstrating the presence of an institutional bias, Individual Defendants' biases, and disparate outcomes; further such would prove invaluable in demonstrating either a pattern of institutional or individual bias. Additionally, "selective inaction can be strong evidence of discriminatory intent." *Doe v. Purdue Univ.,* CAUSE NO.: 4:19-CV-56-TLS-JPK, at *22-23 (N.D. Ind. June 1, 2020) (citations omitted).

In response to what appears to be an objection to temporal breadth, although Plaintiff denies any such over-breadth and maintains that all such Documents and Communications are highly relevant, Plaintiff is willing to narrow his response to "All Documents and/or Communications Concerning University Level Title IX Proceedings of student-on-student sexual misconduct . . ." arising from the academic year beginning January 1, 2014 until the present.

As to "attorney client privilege [and] attorney work product protection[,]" Plaintiff is willing to narrow his response to exclude such documents as may be appropriate given the provision of a privilege log from UI. *see, generally,* Section (I)(A)(iii)

Regarding FERPA, *see, generally,* Section (I)(A)(ii) (Plaintiff's Response to FERPA Objections).

Given the foregoing, Plaintiff requests UI withdraw its objection and produce the requested documents.

      **vi.**    **Request 6 and Objections**

As to the limitation in time Plaintiff is willing to limit such Documents and Communications to those Communications and Documents exchanged between January 1, 2014 to December 31, 2019 for Request 6-9.

As to Burden, Plaintiff refers to Section (I)(A)(iv), *supra.*

Regarding both attorney-client privilege, attorney work product protection and/or FERPA, Plaintiff refers to Section(I)(A)(iii), *supra.*

As has been noted in several cases, pressures relating to OCR Investigations in Title IX "Erroneous Outcome" cases may prove highly relevant. If UI can provide case law to support that this case is distinguishable, Plaintiff asks that Defendants cite to such in response so that any interpretive or legal arguments may be addressed.

Given the foregoing, Plaintiff requests UI withdraw its objection and produce the requested documents.

### vii.    Request 7 and Objections

The arguments adumbrated, *supra*, Section(I)(B)(vi), apply equally to the objections proffered in response to Request 6.

Given the foregoing, Plaintiff requests UI withdraw its objection and produce the requested documents.

### viii.    Request 8 and Objections

*See, generally*, *supra*, Section(I)(B)(vi).

### ix.    Request 9 and Objections

Plaintiff recognizes that Request 9 may have been misconstrued by Defendant's. As such, proposes clarifies that Plaintiff sought and requests only the evaluation and/or implementation of guidelines and/or Dear Colleague Letter(s) issued by OCR 2011-present as they relate to or Concern Sexual Misconduct.[5]

Plaintiff requests Defendant's withdrawal of their objection related to the improper temporal limitation, given the holding in *Doe v. Purdue University*, 928 F.3d 652 (7th Cir. 2019) (noting that discovery going back years was appropriate where 2011 Dear Colleague Letter created the "backdrop" of Plaintiff's claim and "ushered in a more rigorous approach to campus sexual misconduct allegations."). However, as mentioned above, Plaintiff is willing to narrow the timeframe from January 1, 2014 to December 31, 2019.

Given the foregoing, Plaintiff requests UI withdraw its objection and produce the requested documents.

### x.    Request 10 and Objections

In response to Defendants' misunderstanding, Plaintiff clarifies that he requests all Documents and Communications Concerning University Level Title IX Proceedings addressed in the two lawsuits mentioned in Plaintiff's Third Amended Complaint, but specifically:

The second lawsuit alleged that a female student struggled because UI's response to her report of sexual assault was unreasonable. According to the media, the Dean of the Graduate College at UI, Keller, initially suspended the male until she graduated, but later reduced it to a one-year suspension

---

[5] It is untrue that "multiple" Dear Colleague Letters have been issued since 2011. There has been other "Dear Colleague Letter[s]" issued *before* 2011. However, since 2011 there is only one Dear Colleague Letter issued in 2011, followed by guidance called Not Alone in 2014, followed by the interim measures in 2017. In 2020, new guidelines, which are currently in effect, was not named "Dear Colleague Letter." The relevancy of the 2011 Dear Colleague Letter is addressed in this letter.

EXHIBIT 4, Page 10

so he could graduate. This motivated the lawsuit. It also alleged that an employee made lewd gestures through hands in his pocket. The Iowa City Press-Citizen reported that sex/gender was clearly a motivating factor as the lawsuit argued that UI's response did not address "biases that can lead to institutional hostility against female accusers and support for perpetrators."

If Defendants remain unable to ascertain the meaning of the request Plaintiff would refer Defendants to the definitions of all capitalized terms used in the request. If ascertainment of the meaning of the request remains difficult, any confusion related to the terminology will happily be clarified if Defendants pinpoint the particular term which causes such.

Relating to attorney-client privilege and attorney work-product protection, *see*, *supra*, Section(I)(A)(iii).

Relating to FERPA, *see*, *supra*, Section(I)(A)(ii).

As to the relevancy argument, Plaintiff contends the proceedings are highly relevant: to wit, the "second lawsuit['s]" Title IX Proceedings may have had a significantly procedures, protections, tenor, and overall stance vastly altered in response to the suit. Such alteration speaks to numerous factors which tend to demonstrate not only an institutional bias against male Accused and a gender bias in general, but also speak to the likelihood of an institutional, or individual, bias against males to avoid further litigation, damage to goodwill, reputation, etc.

Given the foregoing, Plaintiff requests UI withdraw its objection and produce the requested documents.

### xi.    Request 11 and Objections
*See, generally*, *supra*, Section(I)(B)(x).

### xii.    Request 12 and Objections
Plaintiff requests Defendant's withdrawal of their objection related to the improper temporal limitation, given the holding in *Doe v. Purdue University*, 928 F.3d 652 (7th Cir. 2019).

As to over-breadth and ambiguity, Plaintiff would note that he defined virtually every term used in the request; if such definitions cause confusion, if such confusion can be described with clarity, Plaintiff would be happy to provide further explanation.

Lastly, Plaintiff requests that the Response be supplemented with *All* Documents and/or Communications received by *Individual* Defendants if such exits, or to clarify that the only extant Communications or Documents have been produced through DEF 3935-3976; 5102-5105. *See Montague v. Yale Univ.*, Case No.16-cv-885(AVC), Document 161, PageId.11 and 12 of 23 (D. Conn. Aug. 1, 2018)(granting plaintiff's motion to compel defendant university's Title IX/UWC training, including, "documents reflecting *attendance records* for the training; *any* materials presented or distributed in *connection* with the training; and *any* recording of the training." The provided documents provide evidence that Defendant Mark Braun received some certificates

EXHIBIT 4, Page 11

in sexual harassment training (as per Doe's knowledge every faculty member is supposed to have received this training), that Defendants Frost took some Sexual Misconduct Issues training in August and September 2017 (DEF 3943); that UI had some general training requirements, but these were not linked to *individual* Defendants.[6]

Given the foregoing Plaintiff requests UI withdraw its objection and produce the requested documents.

### xiii.    Request 13 and Objections

As to vagueness, all terms not otherwise defined in the response are used under common usage. At the risk of being overly fastidious: "social media" is defined as: "forms of electronic communication (such as websites for social networking and microblogging) through which users create online communities to share information, ideas, personal messages, and other content (such as videos)[.]" "Post" is defined as: "to publish (something, such as a message) in an online forum (such as an electronic message board)[.]"

As to the reference to Defendant's Response No. 13, and its reference to FRCP 26(b), and the scope of such, absent any interpretation or case law to the contrary Defendant has provided a meaningless, "boilerplate" objection. *Doe v. Ohio State Univ.*, No. 2:16-cv-171, 2018 WL 4958958, at *2 (citing *Bros. Trading Co. v. Goodman Factors*, No. 1:14-CV-975, 2016 WL 9781140, at *2 (S.D. Ohio Mar. 2, 2016); *see*, *supra*, Section(I)(A)(vi).
If a more meaningful argument might be put forward as to whether the individual Defendant's privacy interests outweigh the Plaintiff's interests in discovery and litigating his claims, he would be happy to respond to such.

As to relevance, such accounts may well contain any number of posts that advert beliefs, opinions, and comments, which speak to individual bias. Further, the above may bolster a claim that the outcome of Plaintiff's Title IX University Level Proceedings may have been erroneous[7] and that such may have been tainted by participants who harbor gender-based bias.

Given the foregoing, Plaintiff requests UI withdraw its objection and produce the requested documents.

### xiv.    Request 14 and Objections
*See, generally*, *supra*, Section(I)(B)(xiii).

With that said, Plaintiff is willing to narrow down to the five social media accounts and emails, that (a) DiCarlo, Stevenson Earl, Frost, and Keller most utilized between January 1, 2016 and present; and (b) presently contain materials sent and received by individual Defendants between January 1, 2016 and present.

---

[6] There is a document that says Defendant Angie Reams took a course in October 2020, that she "Earned a Certification Badge!" (DEF 3948). As per Plaintiff's knowledge, Angie Reams was not involved in UI's expulsion of Plaintiff in her individual capacity, and she is only named in her official capacity for injunction purposes. To reduce cost, Defendants can exclude any training that Angie Reams has received.
[7] A post, or a link to an article stating "regret is rape" may speak highly to the probability of either bias or an erroneous outcome.

Category A's terms are: (a) Doe's name; (b) Doe's accuser's names; and/or (c) any of the following nine terms (1) men; (2) women, (3) males; (4) females; (5) masculinity; (6) rape culture; (7) discrimination, (8) Title IX, and/or (9) sexual misconduct.

Category B's terms are Kavanaugh; Blasey; Ford; Hill; Lhamon; OCR; Office of Civil Rights; It's On Us, Clothesline Project; and/or Take Back the Night.

Individual Defendants need not produce social media posts and emails, related solely to Defendants personal sexual orientation, sexual experience, or sexual conduct with other individuals.

### xv.    Request 15 and Objections

As to FERPA, attorney-client privilege, and privacy law objections *see* Section(I)(A)(ii).

As to over-breadth, vagueness and ambiguity, *see* Section (II)(B)(i, v, and xiii).

Lastly, as to relevance, communications and documents sent by or between the Individual Defendants and other employees of UI may speak to institutional bias, individual bias, and general views on the disciplinary processes relating to Sexual Misconduct. The presence of any such biases is highly relevant to the instant complaint; further, any such communication or Document may contain information pertaining to the efficacy and appropriateness of policies, guidelines, and fairness of Title IX University Level Proceedings.

Given the foregoing, Plaintiff requests UI withdraw its objection and produce the requested documents.

### xvi.    Request 16 and Objections

To clarify, Plaintiff is referring to *all* applicants, to *other* universities making inquiries of UI about alleged Sexual Misconduct discipline imposed by UI.

The misinterpretation of the question results in the objections either being impertinent or mooted.

As far as FERPA-based objections are still relevant, *see* Section(I)(A)(ii).

Given the foregoing, Plaintiff requests UI withdraw its objection and produce the requested documents.

### xvii.    Request 17 and Objections

As to limitation of time, Plaintiff would be willing to limit his request to those applications received by UI from 2014 to the present.

As to proportionality, relevance, and burden, Plaintiff proposes that the information which may be contained in the requested Documents or Communications is highly relevant to determining if the institution itself displays gender-bias. If there exists a statistical bias, which can be statistically demonstrated in admissions decisions, one could infer that such institutional bias also taints Title IX University Level Proceedings—thereby supporting Plaintiff's claim.

EXHIBIT 4, Page 13

Additionally, Defendants have refused to acknowledge that Plaintiff has a liberty interest. This is even though Plaintiff said in his complaint (and deposition) that his academic advisor said that the expulsion ended his career in counseling. Whether he is an undergraduate student, or a graduate student is not relevant to this interest, and if anything, that interest is higher for a graduate student. As such, the requests documents are relevant for the knowledge of how universities, such as UI, consider applications from students found responsible of sexual misconduct in other universities. *See, e.g., Doe v. Purdue Univ.*, 928 F.3d 652, 666-67 (7th Cir. 2019) (remanding case to the district court for a determination if the plaintiff had a "liberty interest" based on his demand for an "expungement."); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (pursuing expungement of university records 'serve[s] the purpose of preventing present and future harm').

In light of the relevance of the requested Documents and Communications, one must determine whether the request is overly burdensome or proportional to the needs of the instant case. Absent more specific objections, it is virtually impossible for Plaintiff to respond to the objections contained in the Response; however, the objection as it stands appears on its face inadequate. *See* Section(I)(A)(i).

Given the foregoing, Plaintiff requests UI withdraw its objection and produce the requested documents.

### xviii.    Request 18 and Objections
*See, generally*, Section(I)(B)(xvii); *see also* Section(I)(A)(ii)

Given the foregoing Plaintiff requests UI withdraw its objection and produce the requested documents.

### xix.    Request 19 and Objections
Plaintiff would ask to clarify that the Defendant's Disclosures at DEF 630-794 contain *all* procedures, rules, and regulations concerning Sexual Misconduct from 2012-present—including any internally circulated, or otherwise non-public, Documents concerning the same.

If the initial contained *all* such Documents and no other Documents exist, Plaintiff would ask that such be stated.

### xx.    Request 20 and Objections
*See, generally, supra*, Section(I)(A)(iv).

Additionally, the answer has not been supplemented.

### xxi.    Request 21 and Objections
The term "efforts," is the plural form of the noun "effort," a conscious exertion of power; an exertion; or an attempt. It is like all other non-defined language used in Plaintiff's RFP used under common usage.

EXHIBIT 4, Page 14

As to the term "effort" accompanied with "Iowa," as defined in the RFP, "Iowa's efforts to comply with provisions of Title IX concerning Sexual Misconduct" refers to those attempts, exertions, etc., made at an institutional level to comply, or act in accordance with, provisions of Title IX Concerning Sexual Misconduct[.]" Further, "Iowa's efforts to comply with provisions of Title IX concerning Sexual Misconduct" should be read to exclude those employees, agents, contractors, *etc.*, of Iowa who exert power to, or attempt to, comply with Title IX, but whose efforts fall outside of the traditional managerial authority of their employment or remit.

In the light of the foregoing clarification, Plaintiff requests that Defendants produce all relevant Communications and Documents.

### xxii.    Request 22 and Objections
Plaintiff would generally refer to the above subsection, (xxi), and request that in the light of the clarification of "Iowa's efforts" that Documents and Communications be produced accordingly.

As to attorney-client privilege, attorney work product, privacy laws, and FERPA, *see*, *supra*, Section(I)(A)(ii) and Section(I)(A)(iii).

As to the substantive response provided, Plaintiff notes that the existence of policies, and their enforcement or non-enforcement, in no way demonstrates compliance with a larger statutory scheme, were that the case no successful Title IX litigation—nor would internal review, oversight, audit, *etc.*, exist.

Additionally, Plaintiff disagrees that Defendants complied with all policies. For example, Defendant Redington, in her decision, did not write a rationale for why she chose expulsion, and not other sanctions, which was required as part of UI policies.

In the light of the foregoing, Plaintiff requests that Defendants withdraw objections and provide the Documents and Communications requested.

### xxiii.   Requests 24-25, 27
The responses are non-responsive and, for the myriad reasons explicated above, woefully inadequate. At a minimum, Plaintiff requests a serious effort be expended to respond to the above requests or put forth specific, meaningful objections for non-production.

As mentioned numerous times, I do hope this can all be amicably worked out.

Respectfully submitted,
/s/ Rockne Cole
ROCKNE COLE
Cole Law Firm, PC
209 E. Washington, Ste. 304
Iowa City, IA 52240
(319) 519-2540   phone
(319) 359-4009   fax
rocknecole@gmail.com
Iowa Pin AT1675

Attorney for Plaintiff.

# Cole Law Firm, PC

**Rockne Cole**

209 East Washington
Suite 304
Iowa City, Iowa
52240
(319)519-2540
(319)359-4009 Fax
rocknecole@gmail.com

January 14, 2021

**By Email Only To:**
kayla.burkhiser@ag.iowa.gov and
christopher.deist@ag.iowa.gov

Kayla and Christopher:

Thank you for our candid discussion this afternoon. Based on that conversation, I am memorializing where things stand from our viewpoint. One hopes we can resolve this.

Kayla, I will follow up with you today at 4:00 pm. If all discovery issues are satisfactorily resolved by then, you may file the summary judgment.

However, we must first resolve these issues; a short two-week extension would likely provide ample time to accomplish this.

I have spoken to Plaintiff regarding the matters we discussed. We believe that we have been exceedingly reasonable in our requests by cutting them down significantly. Our requests, are attached as an addendum. Please do keep in mind that the instant letter and addendum should under no circumstances be considered a waiver of Plaintiff's earlier discovery requests, and his right to compel production, in the event that we cannot come to a sastisfactory resolution of production of the documents requested herein.

Those documents requests, and my understanding of our respective positions relating to such, are as follows:

## Our Position:

**Request A**

"Identify U.S. Department of Education's Office of Civil Rights' ("OCR") Title IX complaints, investigations, and/or enforcement actions that involved Iowa, which occurred between January 1, 2014 and December 31, 2019, arising based on Iowa's handling of either Sexual Misconduct or based on gender discrimination, bias, harassment, etc., – and – produce documents exchanged between Iowa and OCR during this time frame, related to the above-referenced matters. These documents will be produced with students' names substituted with their initials and gender."

You will notice that Plaintiff has cut down the timeframe requested by another year, but it is imperative, in order to argue bias by inference, that the documents be produced in full.

**Request B**

"Documents of Complaints Alleging Sexual Harassment and/or Sexual Assault against 21 female respondents from 2012 to 2019, as outlined in DEF 3934. Documents for this request will be limited to the gender of the accuser and the accused, the investigator's and/or adjudicator's/appeal officers report of the allegations and findings, the sanctions given, and the final outcome of the case."

First, the documents are highly relevant--critical to establishing a *de facto* existence of bias. Further, the documents available should be readily accessible to Defendants, considering UI already produces redacted versions of such reports. Lastly, we do not consider the production of documents related to 21 cases already identified, separated, and known to be burdensome, and the caselaw here supports our belief.

**Request C**

"All Documents and/or Communications Concerning Title IX Trainings received by *Individual* Defendants from January 1, 2014 to present, including, but not limited to, attendance records for Title IX Trainings; any materials presented or distributed in connection with the training; and any recording of the trainings if available."

The information is highly relevant to the Plaintiff's case, and caselaw supports that the above is discoverable, relevant, and must be produced.

**Request D**

After discussing our conversation with Plaintiff, he stressed the need for production of the following.  I apologize for not bringing this up during our conversation:

"Non-attorney/client privileged Documents and Communications Concerning the Title IX lawsuit mentioned in paragraph 282 of Plaintiff's Third Amended Complaint. Documents and Communications for this request will be limited to the gender of the accuser and the accused, the investigator's and adjudicator's report of the allegations and findings, the sanctions given, all documents in the university-level appeal stage, the final outcome of the university-level case, and internal, university communications relating to the federal complaint."

EXHIBIT 5, Page 2

## What I Understand Your Position to Be:

**Request A**

I understand you would object if we are talking about every single communication and attachment from US Dept. of Educ. However, formal enforcement letters from U.S. Dept. of Education OCR would be more manageable.

Plaintiff has cut down by another year to make things more manageable, but he does want what the modified request says.

**Request B**

I understand this to be the most manageable. You would work with us to show us the training materials that we have received or located, and you identify whether Frost, Stevenson Earl, or Keller obtained the training.

However, Plaintiff went through all the documents provided, and he did not find Frost's training materials that she mentions in her resume.

**Request C**

I understand you would oppose this request if we were asking for the entire file. However, you were more amenable if it is was in a summary or chart, but that you would need to confer with UI on the feasibility of that request.

We are not asking for the entire file – such as handwritten interview notes for each witness etc. However, we request that you provide us with the investigator and/or adjudicator/appeal officer's reports. Plaintiff has an equal protection count, and he needs details of how his allegations stack up against how UI has previously investigated or adjudicated investigations for females, especially given the investigations from the OCR. This is especially relevant considering that this Court in *Doe v. Grinnell* relied on previous investigation reports.

**Request D**

Please let us know your position on this.

For clarity, we are attaching the Revised Request for Production below:

Sincerely,

Rockne Cole

EXHIBIT 5, Page 4

**ADDENDUM TO REQUEST FOR PRODUCTION**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:19-CV-00047-RGE-HCA |
| | ) | |
| UNIVERSITY OF IOWA, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Plaintiff's (Revised) Set of Requests for Production to Defendant
University of Iowa**

Plaintiff John Doe ("Plaintiff") in the above-captioned matter, by and through his attorney, and pursuant to Federal Rules of Civil Procedure 26 and 34, does hereby serve written requests upon Defendant UNIVERSITY OF IOWA  ("Defendant" or "Iowa") to produce for inspection and reproduction the following documents and things specified below at the offices of Cole Law Firm, PC, 209 East Washington, Ste. 304, Iowa City, Iowa 52240 in accordance with the following definitions and instructions:

**Definitions**

1.      The term "ACCUSED" means and refers to any Iowa student who was the subject of an allegation of Sexual Misconduct that was brought to the attention of Iowa.

2.      The term "ACCUSER" means and refers to any Iowa student who made an allegation of Sexual Misconduct that was brought to the attention of  Iowa.

3.      The term "ADJUDICATOR" refers to Defendants Iris Frost

4.      The term "ALL" means "any and all" and the word "any" means "any and all."

EXHIBIT 5, Page 5

5.      The words "AND" and "OR" shall, where the circumstances so permit, be construed either conjunctively or disjunctively to bring within the scope of these document requests any information which might otherwise be construed to be outside their scope.

6.      The term "COMMUNICATION(S)" means and refers to every method and manner of transmitting or receiving data, opinions, thoughts, inquiries, representations and other information, whether orally, in writing, electronically, or otherwise, between two or more persons or entities. Communications include drafts and other written information intended for communicating to another person, even if not ultimately transmitted to or received by another person.

7.      The terms "CONCERNING," "RELATED," and/or "REGARDING" mean containing, alluding to, responding to, commenting upon, discussing, explaining, mentioning, analyzing, constituting, memorializing, comprising, repeating, incorporating, confirming, listing, evidencing, setting forth, summarizing, or characterizing, either directly or indirectly, in whole or in part.[1]

8.      If not expressly stated, "CONTROL" means in your possession, custody, or control and under your direction, and includes in the possession, custody or control of those under the direction of your employee(s), subordinate(s), counsel, accountant(s), consultant(s), expert(s), parent(s) or affiliated corporation(s), and any person(s) purporting to act on your behalf.

9.      The term "TITLE IX LAWSUITS" means and refers to lawsuits referenced in Paragraphs 281-282 of John Doe's 3rd Amended Complaint.

10.     The term "DEPT. OF ED." refers to the United States Department of Education.

11.     The term "DOCUMENT" shall have the broadest meaning possible under Rule 34 of the Federal Rules of Civil Procedure and includes all originals and drafts, in any and all languages, of any nature whatsoever, in your possession, custody or control, regardless of where located, and include, but are not limited to, letters, correspondence, logs, drafts, contracts, prospective contracts, agreements, reports, records, studies, surveys, resolutions, tabulations, notes, summaries, memoranda, Electronically Stored Information ("ESI"), electronic mail ("email"

---

[1] Plaintiff's points to the fact that the terms "concerning," "related," and "regarding," which seem to be concerns raised by Defendants were already defined.

EXHIBIT 5, Page 6

whether in draft, inbox, outbox or sent folders), calendar or diary entries, handwritten notes, working papers, work sheets, spread sheets, diagrams, minutes of meetings, agendas, bulletins, periodicals, circulars, advertisements, notices, announcements, invoices, statements, checks (front and back), bank statements, ledgers, orders, vouchers, instructions, drawings, charts, graphs, manuals, brochures, pamphlets, schedules, telegrams, teletypes, photographs, audio tapes, voice-mail messages, videotapes, electronic recordings, facsimile transmissions, and information of whatever kind either stored on computers, including computer disks, hard drives and other media, or contained in any computer or information retrieval devices.

12. The term "IDENTIFY" or "IDENTIFYING" refers to (1) full name, (2) phone number on file, and (3) address on file.

13. The term "INCLUDING" means "including, but not limited to"

14. The term "INDIVIDUAL DEFENDANTS" refers to Tiffini Stevenson Earl, Iris Frost; Lyn Redington; Constance Schriver Cervantes; John Keller; Monique DiCarlo; Mark Braun.

15. The term "Sally Roe" refers to the female Iowa Student who alleged John Doe engaged in the Sexual Misconduct detailed in Doe's 3rd Amended Complaint (her initials are SM).

16. The term "Lisa Roe" refers to the second female student who alleged John Doe engaged in Sexual Misconduct detailed in Doe's 3rd Amended Complaint (here initials are LK).

17. The term "ADJUDICATOR" refers to Iris Frost.

19. The term "OCR" refers to the Dept. of Ed's Office of Civil Rights.

20. The term "OCR INVESTIGATION(S)" refers to any investigation by the Dept. of Ed. and/or OCR concerning Iowa's handling of Sexual Misconduct cases or gender discrimination, including, but not limited to OCR investigations addressed in ¶¶56-59 of John Doe's 3rd Amended Complaint.

21. The term "PLAINTIFF" refers to Plaintiff John Doe.

22. The term "PRESENT" should be deemed the date of producing the requested Documents and/or Communications.

23. The term "IOWA" refers to Defendant UNIVERSITY OF IOWA.

24. The term "RELEVANT TITLE IX LAWSUITS" refers to lawsuits reference in Paragraphs 281 and 282 of John Doe's 3rd Amended Complaint.

25. The term "SEXUAL MISCONDUCT" refers to sexual misconduct, sexual violence, sexual assault, sexual harassment, relationship violence, and/or stalking.

26. The term "TITLE IX TRAINING" refers to all training or advice on how to process, investigate, and/or adjudicate allegations of sexual misconduct.

27. The term "UNIVERSITY INITIATED COMPLAINT(S)" refers to any University Level Title IX Proceedings in which Iowa was the "complainant" against an Accused.

28. The term "UNIVERSITY LEVEL TITLE IX PROCEEDING(S)" refers to Sexual Misconduct allegations addressed by Iowa's employees or agents.

29. The terms "YOU," "YOUR," "DEFENDANT," or "IOWA" refers to Iowa; University, and/or its assignees, trustees, partners, joint ventures, co-ventures, subsidiaries, affiliates, agents, attorneys, accountants, employees, representatives, and/or any other person or entity acting or purporting to act on its behalf or under its control, including but not limited to, Individual Defendants.

**Instructions**

(a) ~~You must serve your responses and any objections within 30 days after being served the requests.~~ Timeframes will be dependent upon any agreements made.

(b) Each paragraph and subparagraph of each request should be construed independently, and not be referenced to any other paragraph or subparagraph of this request for purposes of limitation.

(c) Pursuant to the Fed. R. Civ. P. 26(e), these requests are continuing in nature, so as to require a supplemental response to correct any incomplete or incorrect answer based on information you may become aware of between the time of your initial response and the time of trial.

(d) In responding to these requests, you shall respond based on information in your possession, custody, or control, including (by way of illustration only and not limited to) information in the possession, custody, or control of your affiliates, subsidiaries, or subcontractors, your

EXHIBIT 5, Page 8

present or former attorneys, accountants, directors, officers, partners, employees, other representatives and agents, independent contractors over which or whom you have or have had control, and any other persons acting on your behalf.

(e)     Notwithstanding the assertion of any objection to production, any Documents as to which an objection is raised that also contain non-objectionable matter that is relevant and material to a request herein must be produced, but that portion of the Documents for which the objection is asserted may be redacted, provided that the material redacted is listed in a **privilege log**.[2]

(f)     If you claim that the **attorney-client privilege**, or **any other privilege**, doctrine or reason for withholding a document is applicable, please set forth in writing and with your response to this Request: (1) the date of the document; (2) the type of document; (3) the subject matter of the document; (4) the name, employment and title of each person who prepared or received the document or any copy thereof; and (5) the basis for the claim of privilege or other ground for withholding the document. If you claim only part of the document is privileged or otherwise need not be produced, please produce the remaining part of the document. In the case of attorney work-product privilege, you must also identify the litigation for which the work-product was prepared.

(g)     If any document to be produced has been lost, discarded, transferred to another person or entity, destroyed, or otherwise disposed of, please set forth in writing: (1) the date, name and subject matter of the document; (2) the name, employment and title of each person who prepared, received, reviewed, or had custody, possession, or control of the document; (3) all persons with knowledge of the contents or any portion of the contents of the document; (4) the previous location of the document; (5) the date of disposal or transfer of the document; (6) the reason for disposal or transfer of the document; and, if applicable, (7) the manner of disposal of the document; or, if applicable, (8) the names and addresses of the transferees of the document.

(h)     For the convenience of the Court and the parties, Plaintiff requests that each request be quoted in full immediately preceding the answer.

---

[2] Defendants seemed to have overlooked instruction (e) and (f) when they responded to Plaintiff's First Set of Requests for Production.

EXHIBIT 5, Page 9

(i)     Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated entities, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients, or other representatives of affiliated third parties.

(j)     Unless specified by the request, there is no time limitation to any of these requests.

(k)     "Electronically stored information" includes the full scope of that term as contemplated by Federal Rule of Civil Procedure Rule 34, and refers to all computer or electronically stored or generated data and information, and shall include all attachments to the enclosures with any requested item, to which they are attached or with which they are enclosed, and all drafts thereof. "Electronically stored information" includes, but is not limited to, all information stored in any format on any storage media, including for example, but not limited to: hard disks, floppy disks, optical disks, flash memory devices, and magnetic tape, whether fixed, portable, or removable. The format of "electronically stored information" includes, for example, but is not limited to: word processing documents, electronic spreadsheets, electronic presentation documents, email messages, image files, sound files, material or information stored in a database, or accessible from a database, of whatever description. "Electronically stored information" also includes all associated metadata that is routinely maintained or saved, which includes for example, but is not limited to document title or name, file name, date and time of creation, date and time of last edit, identity of author, identity of owner, identities of editors, identities of recipients, changes, history of changes, email header information, and email routing information.) If a document contains a single redaction, please provide the appropriate metadata for the remainder of the document, notwithstanding the redactions and the information provided separately as part of a privilege log.

(l)     For the convenience of the parties and to reduce production costs, please produce all Documents and/or Communications which exist only in hardcopy, i.e., cannot be produced in the electronic format discussed above, form in an electronic format such as a *.PDF format or equivalent.

(m)    In response to each request, please specifically reference which Bates numbered pages are responsive to that request. Generalized reference to categories of Documents is the equivalent of no response at all. If no Documents are responsive, please indicate such. If you are not responding to a request or any portion therein, please indicate such.

EXHIBIT 5, Page 10

(n)     Estimated data should be given when exact data cannot be supplied. Any such estimated data should be designated as such and the basis, source or sources, and/or derivation of each estimate should be separately set forth.


**Documents Requested**

1.      Identify U.S. Department of Education's Office of Civil Rights' ("OCR") Title IX complaints, investigations, and/or enforcement actions that involved Iowa, which occurred between January 1, 2015 and December 31, 2019, arising based on Iowa's handling of either Sexual Misconduct or based on gender discrimination, bias, harassment, etc., – and – produce documents exchanged between Iowa and OCR during this time frame. These documents will be produced with students' names substituted with their initials and gender.

2.      Documents of Complaints Alleging Sexual Harassment and/or Sexual Assault against 21 female respondents from 2012 to 2019 as outlined in DEF 3934. Documents for this request will be limited to gender of the accuser and the accused, the name of the investigator and/or adjudicator/appeal officer, the investigator's and/or adjudicator's summary report of the allegations and findings, the sanctions given, and the final outcome of the case.

3.      All Documents and/or Communications Concerning Title IX Trainings received by *Individual* Defendants from January 1, 2014 to present, including, but not limited to, attendance records for Title IX Trainings; any materials presented or distributed in connection with the training; and any recording of the trainings if available.

4.      "Non-attorney/client privileged Documents and Communications Concerning the Title IX lawsuit mentioned in paragraph 282 of Plaintiff's Third Amended Complaint. Documents and Communications for this request will be limited to the gender of the accuser and the accused, the investigator's and adjudicator's report of the allegations and findings, the sanctions given, all documents in the university-level appeal stage, the final outcome of the university-level case, and internal, university communications relating to the federal complaint."

EXHIBIT 5, Page 11

Respectfully submitted,
/s/ Rockne Cole
ROCKNE COLE
Cole Law Firm, PC
209 E. Washington, Ste. 304
Iowa City, IA 52240
(319) 519-2540   phone
(319) 359-4009   fax
rocknecole@gmail.com
Iowa Pin AT1675

Attorney for Plaintiff.

Exhibit 7

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF IOWA

DAVENPORT DIVISION

| | |
|---|---|
| **John Doe,** | **Case No.:** 3:19-CV-00047-RGE-HC |
| Plaintiff; | |
| | **Declaration of Rockne Cole in** |
| v. | **Support of Plaintiff's Motion to** |
| | **Compel** |
| **University of Iowa, et al.,** | |
| Defendants. | |

Rockne Cole, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.      I am over 18 years of age, of sound mind, and otherwise competent to make this declaration. The evidence set out in the foregoing declaration is based on my personal knowledge.

2.      I am Rockne Cole, an attorney at law of Cole Law Firm, Counsel for Plaintiff, and am familiar with the facts of this case. I submit this declaration in support of Plaintiff's Motion to Compel Defendants to Produce Requested Discovery Materials ("Motion") and also support of my Rule 56 (d) request since that request is predicated upon this Motion to Compel.

3.      On September 18, 2020, I served Defendants' attorneys ("Defense Counsel") with Plaintiff's First Set of Requests for Production to Defendant. *See generally,* Ex. 1. I said that "Discovery must be completed by October 19," but I understand that this case involves many documents, and that Defendants may require more time for complete document production. As such, I also offered to be flexible by allowing Defendants until before filing summary judgment.

4.      I would have no issues if Defendants provided all the requested documents before summary judgment and expected to do so. I continually offered my cooperation to resolve any issues that may arise (Ex. 2, pp. 1-6), including informing them that "My only request is that if you have objection that you reach

Exhibit 7 - Attorney Declaration

out to me to see if we can resolve." Ex. 2, p. 2. I did not expect Defendants to respond to the requests on December 29, 2020, with boilerplate objections.

5.      On December 2, 2020, Defense Counsel sent me an e-mail to discuss any discovery issues that I wanted to address on the conference call with the Court, scheduled a week later, or if they should cancel the call. Ex. 2, p. 8. I responded by saying, "I think the big thing for me will be where we are on our discovery request. Approximate time as to when you think that will come? Again if you have any overbroad or other objections, I can work with you collaboratively to address." *Id.*

6.      I relied on Defense Counsel to disclose to me that there were serious concerns regarding discovery. However, Defense Counsel shared no concern and assured me that Plaintiff would receive the bulk of the production on December 4, 2020. Ex. 2, p. 6.

7.      As such, I responded by saying that I would then have no issues with canceling the conference call while reminding Defense Counsel that "Again, as long as you think there are no major issues with the discovery requests. If there are issues, I would be happy to work with felicitous cooperation to try to resolve. I am not anticipating that though..

8.      On the same day, Defense Counsel provided documents that could be considered only a partial production. Defense Counsel indicated that this response included the "bulk" of the document production, with remaining production and written responses to discovery requests to be delivered the following week. *See* Ex. 2, p. 6. Despite a large number of individual pages in the documents, much of the production contained documents Plaintiff already had access to (such as documents he filed and underlying Complainant's responses, investigation, and adjudication reports).

9.      Despite their promises, Defendants did not provide the remaining documents the following week.

10.     On December 17, 2020, I followed up with Defense Counsel in an e-mail and said, "Just wanted to see where we are on final discovery. I understand that the previous materials were a partial response[.]" Ex. 2, p. 9.

11.     Defendant finally served "Answers" on December 29, 2020. *See generally,* Ex. 3 (Defendant's Responses and Answers). Defendants failed to respond appropriately to Plaintiff's requests and instead provided boilerplate objections to 23 of Plaintiff's 27 requests. *See generally,* Ex. 3. Each objection was nearly

-2-

identical to the other, asserting a mix of: irrelevancy, vagueness, overbreadth, undue burden, attorney-client privilege, attorney work product, and privilege under state and federal privacy laws, including FERPA. *Id.*

12.     There was no evidence provided regarding the time or expense required. I requested a privilege log for documents withheld in the instructions section of the request for production, if Defendants claim attorney-client privilege. *See* Ex. 1, p. 6 (instruction subdivision (f)). Defendants claimed attorney-client privilege in many of Plaintiff's requests. *See generally,* Ex. 3. To date, Defendants have failed to provide a privilege log.

13.     Plaintiff and I collaborated in drafting a response letter to each of their objections. On January 11, 2021, I scheduled a conference call, and on the next day, I sent Defendants the drafted response. In the letter, we highlighted that a Court intervention would require time and expense but would not be necessary if Plaintiff could get access to just three or four significant categories of documents. *See* Ex. 4, p. 2. I also stated that the purpose of the conference was to "1) To find out if, based upon this letter, there [sic] parts that we can resolve informally without court intervention; and 2) The summary judgment deadline, and how we could approach it with these current concerns[.]" Ex. 4, p. 1. I attached an Addendum to the letter, which has some similarities with the arguments raised in the attached brief.

14.     The discovery sought by Plaintiff is relevant to, and in most cases, critical to his claims in this case. Plaintiff needs this information because for the reasons set forth in his January 12, 2021 letter, *see generally,* Ex. 4. The purpose relevancy of the discovery requests can mostly be sorted into four separate themes: those requests that demonstrate a motivation, financial and reputational, which may establish an inference that UI had reason to discriminate against Plaintiff based on his gender; those requests that tend to demonstrate that the process against Plaintiff was erroneous or inadequate; those that tend to demonstrate that individual Defendants' may have been biased against male parties accused of sexual misconduct, and those that demonstrate an actual difference in outcomes based on the gender of the accused/accuser.

15.     The discovery sought is proportional to the needs of the case: the instant documents, communications, and knowledge is exclusively possessed by UI and may not be obtained through other means; the instant requests all tend to establish a discriminatory intent or presence of bias, which may only be demonstrated by inferences which may be established through the instant discovery; and absent the discovery

-3-

requested it would be exceedingly difficult for Plaintiff to demonstrate a necessary element of his claim. *See generally,* Ex. 4.

16.     I conferred with Defendants in good faith in an effort to obtain disclosure or discovery without court action.

17.     On January 13, I met and conferred telephonically with Defense Counsel regarding discovery issues. Further, there were e-mails that were sent between me and Defense Counsel of record in an attempt to resolve our issues relating to discovery. *See generally,* Ex. 2.

18.     My client and I have been almost obscenely reasonable in narrowing the number, temporal breadth, and scope of discovery requests.

19.     After the meet and confer, it seemed as if an agreement was moving forward as Defendants seemed willing to work with Counsel, stating that the parties could "avoid any lengthy delay in decision" of the motion for summary judgment. *See* Ex. 2, p. 12. To that end, one of the four "distilled" requests has been resolved, and while Plaintiff is waiting on Defendant's response to another request on training materials, which also appears that it should be resolved. Of the two remaining requests, Plaintiff has put most of his efforts into attaining the OCR documents and/or communications because of the added pressure of time. There are disputes that need to be resolved on the OCR documents, and it appears that Defendants are objecting to the second request as well.

20.     On January 15, 2021, I e-mailed Opposing Counsel, saying that I have a busy day because of an oral argument in the afternoon, but agreed to talk during a break at 11:30 a.m. (Ex. 2, p. 13). That call never took place, but communication continued via e-mail. In these e-mail messages, I attempted to: 1) Resolve any remaining issues, going as far as to state that Plaintiff would withdraw requests depending on arguments that Defendants intend to make, and 2) determine Defendants' position on a request for a brief extension. Defense Counsel clarified that they would "not oppose [Plaintiff's] request for extension[;]" but plan[] to "oppose reopening discovery" (Ex. 2, p. 16).

21.     Defense Counsel then confirmed they would file their Motion for Summary Judgment later in the day because of being in a position to do so, but "hope[d] [Plaintiff] will be willing to honor [his] statement

-4-

that [he] will not resist any motion to amend that [they] might need to file in the future, should any documents [they] produce over the next couple of weeks change [their] defenses in this case..

22.     Negotiations relating to discovery continued until January 19, 2021, and there is a dispute regarding the OCR documents.

23.     Plaintiff was cautious of burden and expenses for UI and has done his part in reducing costs. For example, there are 21 reports of females accused of sexual misconduct, and Plaintiff wanted all 21 reports initially. However, to reduce cost, UI provided a brief statement of what each investigation was about, and Plaintiff picked just 6 such reports.

24.     On January 21, 2021, Defendants produced Plaintiff request of investigative reports, allowing Plaintiff to compare his report to cases where females were investigated for sexual misconduct.

25.     On January 25, 2021, Defendants produced only a part of what Plaintiff requested, confirming the dispute. While incomplete, these documents are significant because, in 2019, the OCR investigated UI for discriminating against males in sexual misconduct proceedings, specifically because of the actions of three Defendants, including Defendant Stevenson Earl and Defendant Frost. However, Defendants did not provide the outcome report of the investigation.

26.     On January 27, 2021, Defendants produced two appeals from females who were investigated for sexual misconduct.

27.     Plaintiff is still waiting on UI to produce Title IX training that is linked to individual Defendants, and training materials for a UI sponsored event regarding males and sexual misconduct.

28.     I understand that the exchange of written communications or a single telephone message will not, by itself, satisfy the requirements of meet and confer. I met and conferred with Defendants about the requested documents, always in good faith, seeking the possibility of resolution, which resulted in two resolutions.

29.     I attempted in good faith to reach a mutually agreeable resolution to our discovery dispute, and I believe strongly that good cause exists to justify the timing of the filing of the instant declaration and motion. This good cause may lie in either principle of equity or those of detrimental reliance.

-5-

30.     Despite our attempts, and through no fault of Counsel, the parties could not reach an amicable resolution of this dispute.

31.     I also certify that in the Plaintiff's Motion to Compel Appendix, Exhibits 1 and 3 were true and accurate copies of Plaintiff's Request for Production and Defendants' Response, that Exhibits 2, 4, and 5 are true copies of e-mail and mail correspondence, and that Exhibit 6 was provided to Plaintiff under seal.

32.     Finally, I certify that I have received supplemental discovery requests on January 18; 2021 (1st Supplement), January 22, 2021 (2nd and 3rd Supplements), January 27, 2021 (4th Supplement), and that I am anticipating receiving the final production request on January 29, 2021, based upon conversations with Defense Counsel: January 29, 2021 (Anticipated Final Production).


I declare under penalty of perjury that the foregoing is true and correct. Executed on January 29, 2021, Iowa City, Iowa.

Rockne Cole