IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>       Plaintiff,<br><br>v.<br><br>UNIVERSITY OF IOWA; BOARD OF REGENTS, STATE OF IOWA; TIFFINI STEVENSON EARL; IRIS FROST; LYN REDINGTON; ANGIE REAMS; CONSTANCE SCHRIVER CERVANTES; JOHN KELLER; MONIQUE DICARLO; and MARK BRAUN,<br><br>       Defendants. | **No. 3:19-cv-00047-RGE-HCA**<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.    INTRODUCTION

Plaintiff John Doe sues the University of Iowa, the Board of Regents of the State of Iowa, and several University and Board officials for allegedly violating his rights under state and federal law during sexual misconduct disciplinary proceedings that led to his expulsion from the University. The Court previously dismissed two of Doe's three claims of sex discrimination, as well as Doe's claims for race discrimination. Defendants now move for summary judgment on Doe's remaining claims. Because Doe fails to generate a genuine issue of material fact as to his remaining claims, the Court grants Defendants' motion.

## II.    BACKGROUND

### A.    Relevant Facts

The following facts are either uncontested or, if contested, viewed in the light most favorable to Doe, the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At the time of the events alleged in the complaint, Doe was a graduate student of sociology at the University of Iowa. Defs.' Statement Material Facts Supp. Mot. Summ. J. ¶ 1, ECF No. 128-1. Though Doe was a graduate student of sociology, he participated in the Sociology Undergraduate Research Group, "SURG," lab. *Id.* ¶¶ 1, 12. Doe's mentor, University of Iowa professor Dr. Michael Lovaglia, supervised the SURG lab. *Id.* ¶ 12. Doe was the only graduate student member of the SURG lab. Defs.' Sealed App. Vol. 7 Supp. Mot. Summ. J. Appx. 628, ECF No. 136. Complainants #1 and #2, both female undergraduate students, participated in the SURG lab. ECF No. 128-1 ¶ 13. Complainants met Doe through the SURG lab. Pl.'s Sealed Am. App. Vol. 1 Supp. Resist. Defs.' Mot. Summ. J., Hr'g Tr. 202:14–19, ECF No 179-1 at 53 (Complainant #1 hearing testimony); *id.* at 51:15–52:9 (Complainant #2 hearing testimony). Complainants understood Doe to have a leadership role in the lab. *See id.* at 52:6–12 (Complainant #2 hearing testimony); *id.* at 213:22–214:11 (Complainant #1 hearing testimony). Lovaglia similarly considered Doe to have an informal role as lab leader. *See id.* at 469:7–470:8 (Lovaglia hearing testimony). Doe contends he never wanted his participation in the SURG lab to be as a lab leader and did not refer to himself as the lab leader. ECF No. 136 at Appx. 628; *see also* Pl.'s Sealed Am. App. Vol. 2 Supp. Resist. Defs.' Mot. Summ. J., Hr'g Tr. 672:20–673:8, ECF No. 179-2 at 8 (Doe's hearing testimony).

In October 2016, Complainant #1 told Lovaglia some sexual activity occurred between her and Doe. Defs.' Sealed App. Vol. 5 Supp. Mot. Summ. J. Appx. 503, Lovaglia Dep. 479:19–22, 480:17–481:1, ECF No. 134. She told Lovaglia she asked Doe "not to pursue her anymore." *Id.* at 481:2–6. Lovaglia then met with Doe to discuss Doe's relationships with SURG lab members and Lovaglia's expectations for Doe's professionalism. ECF No. 128-1 ¶¶ 15–16.

In early February 2017, Complainant #1 met with Lovaglia again to inform him Doe continued to pursue her. *Id.* ¶ 17. Complainant #1 described incidents from the previous September

in which Doe had touched her breast and kissed her without her consent. *Id.*; Hr'g Tr. 291:4–19, ECF No. 179-1 at 75.

Lovaglia reported Complainant #1's claims to Defendant Monique DiCarlo, the University's Sexual Misconduct Response Coordinator and Title IX Coordinator. ECF No. 128-1 ¶¶ 10, 18. That same day, DiCarlo notified Defendant Tiffini Stevenson Earl, a Compliance Specialist in the University's Office of Equal Opportunity and Diversity, about Complainant #1's allegations against Doe. *Id.* ¶¶ 4, 29. DiCarlo met with Complainant #1 to confirm her allegations against Doe and confirm her request that the University proceed with a formal investigation. *Id.* ¶ 22; *see also* Defs.' Sealed App. Vol. 1 Supp. Mot. Summ. J. Appx. 60–62, ECF No. 130. Within days, Defendant Lyn Redington, the University's then-Assistant Vice President and Dean of Students for Student Affairs, issued a Notice of Complaint and Investigation and Interim Sanctions to Doe. ECF No. 128-1 ¶¶ 6, 23; *see also* ECF No. 130 at Appx. 63–65 (Notice). The Notice informed Doe of Complainant #1's formal complaint of sexual assault and sexual harassment against him and indicated Redington had assigned Stevenson Earl to conduct a formal investigation into the allegations. ECF No. 128-1 ¶ 23; *see also* ECF No. 130 at Appx. 63–65. Stevenson Earl then interviewed Complainant #1. ECF No. 128-1 ¶ 27.

In late February 2017, DiCarlo received a report from Complainant #2 alleging Doe sexually assaulted her during the first semester and brought alcohol into the SURG lab. ECF No. 128-1 ¶¶ 10, 28; ECF No. 130 at Appx. 77–78. DiCarlo met with Complainant #2 to confirm her allegations against Doe and confirm Complainant #2's request that the University proceed with a formal investigation. ECF No. 128-1 ¶ 29; ECF No. 130 at Appx. 79–80. Then, Stevenson Earl interviewed Complainant #2. ECF No. 128-1 ¶ 30.

Redington issued a Notice of Complaint and Investigation and Interim Sanctions to Doe, informing him of Complainant #2's allegations and explaining Stevenson Earl would conduct the formal investigation into Complainant #2's allegations due to the similarity with Complainant #1's allegations. ECF No. 128-1 ¶ 32; ECF No. 130 at Appx. 94–96. The Notice detailed Complainant #2's allegations, including that Doe touched Complainant #2's breast without her consent. ECF No. 130 at Appx. 94–95. The Notice further prohibited Doe from entering Seashore Hall, where the SURG Lab was located, without written permission from the Dean of Students. *Id.* at Appx. 96.

Doe and Complainants identified potential witnesses for Stevenson Earl to interview. ECF No. 128-1 ¶ 47; *see also* Stevenson Earl Dep. 13:20–14:8, 85:5–10, ECF No. 136 at Appx. 857–58, 875. Stevenson Earl exercised discretion regarding interviewees based on Doe's and Complainants' description of the information the potential witnesses could provide. *See* Stevenson Earl Dep. 84:16–24, 85:11–86:2, ECF No. 136 at Appx. 875–76. Between March and May 2017, Stevenson Earl investigated both complaints and conducted interviews of student witnesses, Lovaglia, Doe, and Complainants. ECF No. 128-1 ¶¶ 35–38, 42. Stevenson Earl did not interview a custodian that allegedly walked in on Doe and Complainant #2 in the SURG lab following the events giving rise to Complainant #2's claims. Pl.'s Am. Statement Add'l Material Facts Supp. Resist. Defs.' Mot. Summ. J. ¶ 7, ECF No. 185-2. Stevenson Earl also did not interview a restaurant worker who served Doe and Complainant #2 on one occasion. *Id.* ¶ 8. During Stevenson Earl's interviews with Lovaglia and Doe, Defendant Constance Schriver Cervantes, an Equity Investigator with the University's Office of Diversity, Equity, and Inclusion, sat in as a notetaker. ECF No. 128-1 ¶¶ 8, 42–43; Schriver Cervantes Dep. 12:20–14:2, ECF No. 136 at Appx. 750–51; ECF No. 185-2 ¶ 4. Doe's counsel was also present during his interview. *See* ECF No. 130 at Appx. 109.

Stevenson Earl issued a Memorandum of Findings, reporting the results of her investigation into Complainant #1's and Complainant #2's allegations. ECF No. 128 ¶ 50; Defs.' Sealed App. Vol. 3 Supp. Mot. Summ. J. Appx. 285–309, ECF No. 132 (Memorandum of Findings as to Complainant #1); *id.* at 310–32 (Memorandum of Findings as to Complainant #2). Stevenson Earl found there was sufficient evidence as to Complainant #1's and Complainant #2's allegations to charge Doe with violating the "Code of Student Life" and the "Sexual Misconduct, Dating/Domestic Violence, or Stalking Involving Students" policy. ECF No. 128 ¶ 50; *see also* ECF No. 132 at Appx. 285, 310. In her reports, Stevenson Earl included details of the Complainants' accounts and Doe's account of the events at issue. ECF No. 132 at Appx. 286–395; *id.* at Appx. 310–32.

As to Complainant #1, Stevenson Earl's report indicates in early September 2016, Doe invited Complainant #1 to an improv comedy show. *Id.* at Appx. 287. After the show, they went back to Doe's apartment and drank wine. *Id.* While at Doe's apartment, Complainant #1 contends Doe kissed her and touched her breast without her consent. *Id.* Complainant #1 alleges she indicated her lack of consent by pulling away from Doe. *Id.* Doe maintains there were several instances of consensual kissing between him and Complainant #1 that night. *Id.* at Appx. 290. Doe denies touching Complainant #1's breast. *Id.* Complainant #1 alleges she went to Lovaglia after Doe continued to pursue a relationship with her. *See id.* at Appx. 286, 288–89. In January 2017, Complainant #1 alleges Doe tickled her while they were cleaning the lab together. *Id.* at Appx. 289. Complainant #1 reported Doe's conduct to Lovaglia again shortly after the tickling incident. *Id.*; *see also* 128-1 ¶ 17. Doe alleges he tickled Complainant #1 in response to her tickling him first. ECF No. 132 at Appx. 292. He alleges she did not indicate it made her uncomfortable until Doe confronted her about not turning in work on time and signing in at the lab to receive credit when she was not doing lab work. *Id.* at Appx. 293.

Complainant #1 explained she waited to file a report because she thought she "could take care of the issues [her]self." *Id.* at Appx. 286. But due to Doe's failure to change after she told him she only wanted a professional relationship and after his October meeting with Lovaglia, she knew she had to bring the issues to Lovaglia's attention again. *Id.* at Appx. 286–87. She stated she could not "bear thinking [she] would be treated . . . [ ]flirtatiously and aggressively[ ] for another few years at the least." *Id.* at Appx. 287.

As to Complainant #2, Stevenson Earl's report summarizes that in late August 2016, Doe met with Complainant #2 to assist her in applying for research approval to facilitate her participation in the SURG lab. *Id.* at Appx. 312. After discussing lab matters, Complainant #2 alleges she agreed to stay and study with Doe. *Id.* Complainant #2 alleges Doe brought beer into the lab for both of them. *Id.* Complainant #2 indicates at some point Doe began asking her questions related to sex, which made her uncomfortable. *Id.* Complainant #2 alleges she contacted a friend to come pick her up. *Id.* At Doe's suggestion, she moved to the couch in the lab where Doe attempted to kiss her and she pulled away. *Id.* She also alleges Doe put his hand under her bra and touched her breast. *Id.* Complainant #2 alleges she removed Doe's hand and told him a friend was coming to get her. *Id.* Complainant #2 alleges Doe tried to kiss her on other occasions and made sexual comments to her. *Id.* at Appx. 313. Doe denies Complainant #2 pulled away when he kissed her in the SURG lab. *Id.* at Appx. 315. Doe alleges while on the couch Complainant #2 sat on Doe's lap facing him and they kissed for several minutes. *Id.* Doe alleges Complainant #2 then moved her shirt to expose her breast and gave Doe consent to touch her breast after he asked. *Id.*

When Stevenson Earl asked why Complainant #2 waited months to come forward, she responded she was embarrassed and "in shock." *Id.* at Appx. 311. She also explained she heard Doe "starting to make sexual comments" to a new lab member and so she reported to help herself and others "feel safe at Iowa." *Id.* at Appx. 312. In the notes for her interview

with Complainant #2, Stevenson Earl wrote Complainant #2 came forward, in part, after talking to Complainant #1. ECF No. 185-2 ¶ 19; *see* Pl.'s Sealed Am. App. Vol. 7 Supp. Resist. Defs.' Mot. Summ. J. 119, ECF No. 179-7. Stevenson Earl did not include this fact in her Memorandum of Findings. *See* ECF No. 132 at Appx. 311–14.

Stevenson Earl recommended the cases against Doe proceed to formal hearing. *See* ECF No. 132 at Appx. 309, 331. Stevenson Earl initially recommended disciplinary reprimand—which is a Step 1 sanction under the University's Student Judicial Procedure. *See* Pl.'s Sealed Am. App. Vol. 3 Supp. Resist. Defs.' Mot Summ. J. 158–59, ECF No. 179-3 (draft investigation report as to Complainant #1); *id.* at 124–25 (draft investigation report as to Complainant #2). However, after reviewing Stevenson Earl's draft report for the first investigation, DiCarlo and Redington inquired whether Stevenson Earl would be comfortable recommending a higher sanction given that there were two complainants. Pl. Am. App. Vol. 4 Supp. Resist. Defs.' Mot. Summ. J. 1, 32, 60, 107, 131, ECF No. 179-4. Stevenson Earl then recommended the sanction of suspension or expulsion should Doe be found responsible for the alleged violations following a formal hearing. ECF No. 132 at Appx. 309, 331.

After Stevenson Earl issued her investigation reports, Redington assigned Schriver Cervantes as the University's Charging Officer for Doe's case. ECF No. 128-1 ¶ 8; ECF No. 132 at Appx. 354. Schriver Cervantes issued a Formal Hearing Date and Notice of Charges to Doe and Complainants. ECF No. 128-1 ¶ 58. The Notice of Formal Hearing identified Defendant Iris Frost, a University Professor, as the Adjudicator. *Id.* ¶¶ 5, 60. It also informed Doe he was charged with two violations of the University of Iowa Sexual Misconduct Policy Rule 2.2 and Code of Student Life Rule 13 arising from the conduct alleged by Complainant #1 and Complainant #2. ECF No. 132 at Appx. 354–55. Rule 2.2 of the Sexual Misconduct Policy prohibits "sexual misconduct . . . including sexual assault or sexual harassment, or any form of

non-consensual sexual contact." ECF No. 136 at Appx. 625. Rule 2.3(c) of the Sexual Misconduct Policy defines consent as "a freely and affirmatively communicated willingness to participate in particular sexual activity or behavior, expressed either by words or clear, unambiguous actions." *Id.* at Appx. 626. Rule 13 of the Code of Student Life requires students abide by the Sexual Misconduct Policy. ECF No. 130 at Appx. 49.

Student Judicial Procedure Rule 12(D)(1) provides the Charging Officer with discretion to combine two or more complaints against the same student into a single hearing. ECF No. 136 at Appx. 620. Schriver Cervantes exercised her discretion to combine Complainant #1's and Complainant #2's complaints against Doe into a single hearing. *See id.* The complaints came before Frost for hearing on September 18, 2017. *Id.* Schriver Cervantes appeared as the Charging Officer on behalf of the University. *Id.* The hearing continued through September 20, 2017. *Id.*

At the hearing, Doe, through his attorney, and the University offered exhibits for consideration. *Id.* ¶ 68. Frost accepted some of Doe's exhibits into the evidentiary record. *Id.* ¶¶ 69–70; *see* ECF No. 136 at Appx. 623. Doe's attorney withdrew some exhibits and Frost excluded some exhibits following Schriver Cervantes's relevance, materiality, and authenticity objections. ECF No. 128-1 ¶ 69; ECF No. 136 at Appx. 622–23.

The parties submitted witness questions to Frost. ECF No. 128-1 ¶ 72; ECF No. 136 at Appx. 621. Frost indicated witness questions should be "relevant, material, and not dully repetitive," and she would ask all such questions submitted to her. Hr'g Tr. 14:12–19, ECF No. 179-1 at 6. During her examination of Complainant #1, Frost did not ask certain questions and related follow-up questions submitted by Doe. ECF No. 185-2 ¶ 30. Frost maintained three of the proposed questions, which were related to the height differences between Complainant #1 and Doe, were immaterial. ECF No. 136 at Appx. 638. Frost did not ask Doe's submitted question "Is it true that you initiated and engaged in frequent conversations with him after the incident?

If yes, why did you do that?" exactly as posed. ECF No. 185-2 ¶ 30; *see also* Defs.' Resp. Pl.'s Am. Statement Add'l Facts, ECF No. 187-1 ¶ 30. However, Frost asked questions regarding Complainant #1's interactions with Doe after the alleged incident of sexual assault. Hr'g Tr. 283:11–284:18, ECF No. 179-1 at 73.

During the examination of Complainant #2, Frost also omitted certain questions and follow-up questions submitted by Doe. *See* ECF No. 185-2 ¶ 30; ECF No. 187-1 ¶ 30. Frost did not ask whether Complainant #2's decision to file a complaint was prompted by Complainant #1 filing a complaint. *Id.* However, Frost did ask Complainant #2 about her interactions with Complainant #1. Hr'g Tr. 138:16–14310, 166:18–167:19, ECF No. 179-1 at 37–38, 44. Frost also did not ask Complainant #2 about her friendly communications with Doe after the alleged incident and her decision to spend time with him after the alleged incident. *See* ECF No. 187-1 ¶ 30.

The Complainants, Doe, student witnesses, and Lovaglia testified at the hearing. *See* Hr'g Tr., ECF No. 179-1 at 3 to ECF No. 179-2 at 72. Lovaglia testified at the hearing that when Complainant #1 reported problems with Doe in October 2016, Complainant #1 told him the kiss with Doe was consensual. *See* ECF No. 136 at Appx. 646; Hr'g Tr. 480:5–481:13, ECF No. 179-1 at 123. Lovaglia then clarified "I really hope I did not misunderstand her . . . my recollection is that she conveyed the idea that all of th[e] sexual behavior" occurring in Doe's apartment was consensual. Hr'g Tr. 483:23–484:8, ECF No. 179-1 at 124. Lovaglia further testified he considered Complainant #1 might be conveying it was consensual so as not to "cause any trouble" and that he "had a great deal of difficulty coming to a decision as to how to handle it . . . ." *Id.* at 484:9–19.

On October 3, 2017, Frost issued the Adjudicator's Decision. ECF No. 128-1 ¶ 77; ECF No. 136 at Appx. 620–48 (Adjudicator's Decision). Frost found Doe responsible for sexual

misconduct by sexually assaulting and sexually harassing both Complainants. ECF No. 136 at Appx. 647–48.

Frost found Complainant #1 credible. *Id.* at Appx. 638. Frost credited Complainant #1's testimony that she attempted to leave Doe's apartment alone the night Doe allegedly touched her breast and kissed her without her consent. *Id.* Frost placed weight on Complainant #1's testimony that she waited for Doe to leave after he walked her to her dorm and then contacted a close friend to go directly to his room to talk. *Id.* Frost noted Complainant #1's act of "seeking comfort from a trusted friend immediately upon being free of [Doe] speaks loudly." *Id.* Frost further found the testimony of Complainant #1's friend that he observed Complainant #1 to be shaken and confused to be consistent with a "troubled student subjected to a non-consensual sexual experience . . . ." *Id.* at Appx. 639. In her report, Frost did not include Lovaglia's testimony regarding his "recollection" of Complainant #1's remarks as to consent. *See* ECF No. 136 at Appx. 646; Hr'g Tr. 480:5–481:13, ECF No. 179-1 at 123.

As to Complainant #2, Frost noted Doe's account and Complainant #2's account diverged significantly as to events surrounding the alleged kissing and nonconsensual breast touch. *See* ECF No. 136 at Appx. 629–30. Frost described Doe's account of his interaction with Complainant #2 as "highly unlikely," further opining "it sounded like fantasy, not reality." *Id.* at Appx. 630. Frost found Complainant #2 to be credible. *Id.* Frost credited testimony from Complainant #2's boyfriend that Complainant #2 walked quickly away from the building when he picked her up that night and kept looking over her shoulder as consistent with Complainant #2's "version of the unwanted, unwelcome intimate events of August 31, 2016." *Id.* at Appx. 630–31.

Ultimately, Frost found Doe responsible for sexual assault and sexual harassment in violation of Sexual Misconduct Policy Rules 2.2, 2.3(1)(e)(3) and (4), and 2.3(2)(f)(2)(a)–(c), as to Complainant #1 and Complainant #2. *Id.* at Appx. 636, 646–47. Specifically, Frost found by a

preponderance of the evidence Doe made intentional contact of a sexual nature when he kissed Complainants and touched Complainants' breasts without their consent. *Id.* at Appx. 631, 639. As such, Frost found Doe responsible for sexual assault in violation of Rule 2.2 and Rule 2.3(1)(e)(3) and (4). *Id.* at Appx. 631, 640, 647–48. Frost also found by a preponderance of the evidence Doe's repeated and persistent efforts to engage in a romantic relationship with Complainant #1 and Complainant #2 throughout their participation in the SURG lab constituted sexual harassment in violation of Rule 2.3(f)(2)(c). *Id.* at Appx. 635–36, 644–45.

Redington issued a Notice of Sanctions to Doe, informing Doe of his immediate expulsion from the University. ECF No. 128-1 ¶ 83. Doe appealed the Adjudicator's Decision. *Id.* ¶ 86. The University's Associate Provost for Graduate Education, Defendant John Keller, decided Doe's internal appeal. *Id.* ¶ 9. Keller affirmed the Adjudicator's Decision and the sanctions imposed. *Id.* ¶ 88; *see also* ECF No. 136 at Appx. 655.

Doe further appealed to the Defendant Board of Regents. ECF No. 128-1 ¶¶ 11, 91; ECF No. 136 at Appx. 656. Doe also requested Defendant Mark Braun, Executive Director of the Board of Regents, issue a stay on Doe's expulsion pending his appeal. ECF No. 128-1 ¶ 92. Braun denied Doe's request for a stay. *Id.* ¶ 94; ECF No. 136 at Appx. 680–82. Doe submitted his appeal brief. ECF No. 128-1 ¶ 97. Complainant #1 and the University submitted responses to Doe's appeal. *Id.* ¶¶ 98–99. The Board of Regents voted in favor of affirming the University's disciplinary decision and notified Doe of its decision on June 11, 2018. *Id.* ¶¶ 100–01; ECF No. 136 at Appx. 739.

Additional facts are set forth below as necessary.

### B.   Procedural History

Doe filed a complaint in this Court on June 21, 2019. ECF No. 1. Doe amended his complaint several times, the last iteration being his third amended complaint filed February 14,

2020. ECF No. 57. Doe's third amended complaint contains eight counts and alleges claims under Title IX of the Education Amendments of 1972; 42 U.S.C. §§ 1981 and 1983; and state law. *See id.* Defendants moved to dismiss Doe's third amended complaint. ECF No. 60. The Court granted Defendants' motion as to Doe's claims in Counts 3, 4, 5, and 7. Order Grant. Part Den. Part Defs.' Mot. Dismiss 44–45, ECF No. 106. The Court granted Defendants' motion to dismiss Counts 1 and 8 in part. *Id.* at 45. The Court determined the individual Defendants were entitled to qualified immunity on Doe's procedural due process claims in Count 1, but denied Defendants' motion on Doe's substantive due process claims in Count 1. *Id.* The Court further determined Doe's request for declaratory and injunctive relief in Count 8 survived to the extent Doe's procedural due process claim survived on the merits. *Id.* The Court denied Defendants' motion to dismiss Doe's Title IX claim in Count 2 and Doe's equal protection claim in Count 6 in full. *Id.*

Defendants' now move for summary judgment on the remaining counts. ECF No. 128. Doe resists Defendants' motion. Pl.'s Am. Resist. Defs.' Mot. Summ. J., ECF No. 185. On June 3, 2021, the Court held oral argument on Defendants' motion. Hr'g Mins., ECF No. 191. At the hearing, Attorneys Kayla Reynolds and Christopher Deist represented Defendants. *Id.* Attorney Rockne Cole represented Doe. *Id.* Having considered the parties' briefing, supporting appendices, and arguments made at the hearing, the Court grants Defendants' motion for summary judgment.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists where the issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Where there is a genuine dispute of facts, those "facts must be viewed in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal quotation marks omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

To defeat a motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (omission in original) (quoting a prior version of Fed. R. Civ. P. 56(e)). In analyzing whether a party is entitled to summary judgment, a court "may consider only the portion of the submitted materials that is admissible or useable at trial." *Moore v. Indehar*, 514 F.3d 756, 758 (8th Cir. 2008) (internal quotation marks omitted) (quoting *Walker v. Wayne Cnty.*, 850 F.2d 433, 434 (8th Cir. 1988)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and the moving party is entitled to judgment as a matter of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) (internal quotation marks omitted) (quoting *Ricci*, 557 U.S. at 586).

## IV.   DISCUSSION

Defendants move for summary judgment on Doe's Title IX claim in Count 2, arguing Doe cannot demonstrate that sex was the motivating factor in the University's decision to discipline him. ECF No. 128 ¶ 2. Doe resists, arguing there is a genuine issue of material fact as to whether procedural irregularities in the investigation and hearing, in addition to biased statements by the decisionmakers, demonstrate the University disciplined Doe on the basis of sex. ECF No. 185 at 5–12. Defendants further argue they are entitled to summary judgment on Doe's claims under 42 U.S.C. § 1983 in Counts 1 and 6 because Doe fails to establish the individual Defendants violated his right to substantive due process, procedural due process,

or equal protection of the laws. ECF No. 128 ¶¶ 1, 3. Doe resists Defendants' arguments as to each of his § 1983 claims. ECF No. 185 at 15, 31. Doe argues there is sufficient evidence to demonstrate a genuine issue of material fact as to whether: 1) the individual Defendants' acted in an arbitrary and capricious manner during the disciplinary proceedings in violation of his substantive due process rights; 2) the individual Defendants denied him the right to a hearing before an impartial decisionmaker in violation of his procedural due process rights; and 3) the individual Defendants relied on sex-based stereotypes in violation of his equal protection rights. ECF No. 185 at 15–35. Finally, Defendants contend summary judgment is proper on Doe's claim for declaratory and injunctive relief in Count 8 because his claims fail on the merits. ECF No. 128 ¶ 4. Doe resists, arguing he is entitled to his requested declaratory and injunctive relief. ECF No. 185 at 35–39.

The Court finds Doe fails to show a genuine issue of material fact exists as to whether sex was a motivating factor in the University's decision to expel him. Additionally, no genuine factual dispute exists as to Doe's due process, equal protection, or declaratory relief claims. As such, Defendants are entitled to summary judgment on Doe's remaining claims.

## A.      Title IX (Count 2)

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *Does 1–2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 577 (8th Cir. 2021) (alteration in original) (quoting 20 U.S.C. § 1681(a)). To establish a Title IX claim, "a plaintiff must allege adequately that the University disciplined [the plaintiff] on the basis of sex—that is, because he is a male." *Rossley v. Drake Univ.*, 979 F.3d 1184, 1192 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 1692 (2021) (alteration in original) (internal quotation marks omitted) (quoting *Doe v. Univ. of Ark.-Fayetteville*, 974 F.3d 858, 864 (8th Cir. 2020)).

14

A plaintiff can demonstrate bias by showing "clearly irregular investigative and adjudicative processes" combined with pressure on the University to investigate and adjudicate Title IX claims by females and against males. *See id.* at 1196. "A plaintiff may illustrate gender bias by identifying 'statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.'" *Doe v. Wash. Univ.*, 434 F. Supp. 3d 735, 758 (E.D. Mo. 2020) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). "A decision that is against the substantial weight of the evidence and inconsistent with ordinary practice on sanctions may give rise to an inference of bias, although not necessarily bias based on sex." *Univ. of Ark.-Fayetteville*, 974 F.3d at 865 (citing *Doe v. Baum*, 903 F.3d 575, 585–86 (6th Cir. 2018); *Doe v. Miami Univ.* 882 F.3d 579, 592–93 (6th Cir. 2018); *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016)).

To survive summary judgment on his Title IX claim in Count 2, Doe is required "to set forth sufficient evidence to allow a reasonable jury to find that [the University] disciplined him on the basis of sex." *Rossley*, 979 F.3d at 1192. Doe points to alleged issues with Stevenson Earl's investigation; Redington's and DiCarlo's review of the draft investigatory reports; Frost's adjudication; and Keller's handling of the internal appeal as demonstrating sex bias motivated the University's decision to expel him. The Court addresses each of Doe's arguments in turn.

### 1.    Stevenson Earl

Doe argues Stevenson Earl's decision not to interview two of his proposed witnesses constitutes a procedural irregularity demonstrating sex bias. *See* ECF No. 185 at 12. Doe fails to show sex bias motivated Stevenson Earl's interview decisions.

As the investigator, Stevenson Earl had discretion to determine which witnesses to interview. During her investigation she did not interview two witnesses suggested by Doe: a custodian and a waiter. The custodian is alleged to have walked in after the events giving

rise to Complainant #2's claims. The custodian's encounter with Doe and Complainant #2 is alleged to have been very brief. *See* Hr'g Tr. 101:18–24, ECF No. 179-1 at 27; Hr'g Tr. 692:7–15, ECF No. 179-2 at 13. Stevenson Earl did not interview the custodian because she did not believe the custodian would provide information material to her investigation. Stevenson Earl Dep. 67:12–69:1, ECF No. 136 at Appx. 871. It is reasonable that Stevenson Earl determined the custodian would not have information material to whether Doe kissed and touched Complainant #2's breast without consent if the custodian only entered the room for a short time after any contact had occurred.

Similarly, Stevenson Earl did not interview the waiter who served Doe and Complainant #2 at a restaurant because she determined he would not provide evidence relevant to Complainant #2's claims. *Id.* at 85:5–86:2. To the extent the waiter could have provided information about Doe and Complainant #2's interactions, such information would have been limited to the time Doe and Complainant #2 spent in the restaurant. Given the potentially limited scope of the waiter's observations, it was reasonable for Stevenson Earl to conclude the waiter was unlikely to have information regarding a sexual assault occurring in the SURG lab and a pattern of sexual comments to Complainant #2 throughout the semester. The Court finds Stevenson Earl's conduct does not indicate a "clearly irregular investigative . . . process[ ]." *Rossley*, 979 F.3d at 1196.

Doe fails to provide sufficient evidence to generate a genuine dispute of material fact that Stevenson Earl acted with sex bias in exercising her discretion not to interview two of Doe's suggested witnesses.

### 2.    DiCarlo and Redington

Doe alleges DiCarlo's and Redington's commentary on Stevenson Earl's draft investigative reports demonstrates sex bias. ECF No. 185 at 9. DiCarlo and Redington requested Stevenson Earl consider recommending the complaints move to a formal hearing and a higher

sanction due to the number of complaints against Doe. *See* ECF No. 179-4 at p. 32, 60, 107, 131. DiCarlo and Redington do not appear to characterize their recommendations in terms of sex. *See id.* Doe points to no evidence to support a connection between DiCarlo's and Redington's comments on the draft investigative report and sex bias. *Cf. Univ. of Ark.-Fayetteville*, 974 F.3d at 865. Additionally, Doe fails to identify any University policy indicating it was clearly irregular for DiCarlo and Redington to review draft investigatory reports and provide comments. *Cf. Rossley*, 979 F.3d at 1196. None of Doe's other broad allegations against DiCarlo and Redington are supported in the record. As such, Doe fails to generate a genuine dispute of material fact that sex bias by DiCarlo and Redington motivated the University's decision to expel him.

### 3.    Frost

Doe argues the Adjudicator's Decision demonstrates sex bias through Frost's description of Doe's alleged interaction with Complainant #2 and Frost's exclusion of Lovaglia's testimony regarding Complainant #1. ECF No. 185 at 10–12. The Court finds Doe's arguments as to Frost unpersuasive.

First, Frost's characterization of Doe's account of his interaction with Complainant #2 as "fantasy" does not demonstrate sex bias. *See* ECF No. 136 at Appx. 630. Examining Frost's language in the context of her entire decision, it is clear Frost is describing Doe's drastically different account as fantastical in the sense it exceeded realistic expectations of an encounter between two individuals that just met. Such an interpretation is further supported by Doe's description of Complainant #2 as shy. *See* ECF No. 136 at Appx. 629–30. In support of his sex bias argument, Doe points to Frost's later use of the term "young man's fantasy" to describe a student's invitation to intimacy in a subsequent adjudication that was subject to an OCR investigation. ECF No. 185 at 10–11; *see also* Pl.'s Sealed Am. App. Vol. 5 Supp. Resist. Defs.'

Mot. Summ. J. 92, ECF No. 179-5. Doe argues Frost's use of this term in a subsequent case demonstrates Frost was motivated by sex bias in her adjudication of Doe. ECF No. 185 at 10–11. However, the subsequent case is distinguishable because Frost used gendered language to describe the student's recounting of events as a "young man's fantasy." ECF No. 179-5 at 92. Here, in contrast, Frost's use of the term "fantasy" appears straightforward and descriptive of the dramatic difference between Doe's and Complainant #2's versions of events. *See* ECF No. 136 at Appx. 630. Doe's reliance on Frost's use of the term "fantasy" in a subsequent adjudication to show she was motivated by sex bias in his case is unpersuasive.

Second, Frost's exclusion of Lovaglia's uncertain testimony about his "recollection" of Complainant #1's statements regarding consent does not demonstrate sex bias. In her deposition, Frost explained she did not include the testimony because Lovaglia qualified his testimony as being his "recollection." *See* Pl.'s Sealed Am. App. Vol. 6 Supp. Resist. Defs.' Mot. Summ. J. 34–36, Frost Dep. 35:14–16, 37:15–21, 39:19–25, 41:19–42:8, ECF No. 179-6. Frost further explained Lovaglia "was very hard on himself" and she "sense[d] that he was taking a great deal of responsibility and not placing blame in any direction." *Id.* at 37:15–21. Frost's explanation is reasonable considering Lovaglia's hearing testimony. After answering affirmatively that Complainant #1 told him the sexual behavior between her and Doe was consensual, Lovaglia clarified this was only his "recollection" and qualified that he hoped he did not misunderstand her. Hr'g Tr. 483:23–484:8, ECF No. 179-1 at 124. In qualifying his testimony, Lovaglia appeared to waiver on his statement that Complainant #1 said the kiss was consensual and explained he recalled "she conveyed the idea" the kiss was consensual. *See id.* He also conceded that he considered Complainant #1 may have indicated it was consensual because she did not want to cause trouble. *Id.* at 484:9–19. Even if Frost's exclusion of Lovaglia's testimony demonstrates bias, it is insufficient to show bias on the basis of sex. *Cf. Rossley*, 979 F.3d at 1196.

      4.      **Keller**

Doe argues Keller's deposition testimony—wherein he describes why he did not consider Lovaglia's testimony significant enough to reverse Frost's decision as to Complainant #1 or the Adjudication Decision as a whole—indicates Keller affirmed the Adjudication Decision and Doe's sanction on the basis of sex. ECF No. 185 at 5–7.

In describing why he did not find Lovaglia's testimony sufficient to reverse Frost's decision as to Complainant #1, Keller explained he considered the age of the students and the power differentials resulting from their positions as undergraduate student and graduate student in a leadership position. Keller Dep. 20:25–21:17, ECF No. 179-6 at 7. Keller then appeared to discuss consent stating, "you know, my experience with younger students, particularly females, is that they are sort of surprised by what might be taking place . . . so things happen without them really engaging in any kind of . . . verbal or physical sort of indication that there's approval there . . . ." *Id.* at 21:25–22:7. Doe's counsel then asked if the sex of the accuser was a factor in Keller's rejection of Lovaglia's testimony that Complainant #1 indicated her sexual activity with Doe was consensual. *See id.* at 29:17–20. Keller explained it was "a factor in the decision that [he] came to." *Id.* at 30:16–17. Keller clarified every sexual assault case he had dealt with involved a male accused of sexual assault by a female student and in his experience "young undergraduate women . . . tend to be more vulnerable and impressionable than they would be if they were older and more experienced . . . ." *Id.* at 30:21–31:15. In light of the context of Keller's testimony, Keller's discussion of sex when prompted by Doe's counsel is incidental to his primary focus on age and resulting power differentials.

Further, Keller performed a thorough review of the investigation and the Adjudication Decision. ECF No. 136 at Appx. 655; *see id.* at 8:20–9:2, 12:10–13:7, 41:1–43:3. Keller was familiar with the facts set forth in the investigation report that prompted the University to proceed

with a formal hearing. Keller Dep. 12:16–18, ECF No. 179-6 at 5. Keller was also apprised of Frost's decision, which provided a recounting of the parties' versions of events, identified the exhibits considered, and explained Frost's reasons for crediting Complainants' versions of events over Doe's. *See id.* at 12:19–21. The decision to expel Doe was based on the culmination of all of these processes. *See* ECF No. 136 at Appx. 655. To the extent Keller's observations constitute sex bias, they are insufficient to demonstrate Doe was expelled on the basis of sex. *Cf. Rossley*, 979 F.3d at 1194. A reasonable jury could not find Keller's narrow statement about why he did not consider the testimony of one witness as sufficient evidence that sex bias motivated the University to expel Doe.

Doe also argues external pressure placed on the University to investigate and adjudicate Title IX claims against males, when considered in connection with Keller's comments, demonstrates sex bias motivated the University to expel him. In affirming this Court's grant of summary judgment on the plaintiff's Title IX claim in *Rossley*, the Eighth Circuit noted the pressure on the school to investigate and adjudicate Title IX complaints by females against males did not rise to the level described in *Doe v. University of Arkansas-Fayetteville*. *Rossley*, 979 F.3d at 1196 (citing *University of Ark.-Fayetteville*, 974 F.3d at 865). In *Rossley*, plaintiff relied on the "2011 Dear Colleague Letter" to argue the school was under pressure to investigate and adjudicate Title IX complaints by women against men. *Id.* In *University of Arkansas-Fayetteville*, plaintiff highlighted that the Office for Civil Rights and the Arkansas legislature were investigating the school for its alleged improper handling of sexual assault claims by females against males. 974 F.3d at 863. There, plaintiff's accuser also publicly criticized the school's initial finding of no misconduct, spoke with multiple media outlets, and started a campus-wide protest. *Id.* at 863–64. Here, Doe argues the University was subject to external pressure to investigate and adjudicate Title IX claims against males in part

because of an employment discrimination lawsuit and an athletics discrimination lawsuit. ECF No. 185 at 13–15. Doe attempts to make a connection between discrimination suits writ large and Title IX sexual assault complaints by females against males. Due to the general nature of Doe's reliance on discrimination suits, the external pressure identified here is more like plaintiff's reliance on the 2011 Dear Colleague Letter in *Rossley*. 979 F.3d at 1196. Such generalization is insufficient to demonstrate the extensive external pressure present in *University of Arkansas-Fayetteville*. 974 F.3d at 863–64. As such, Doe fails to demonstrate the existence of sufficient external pressure on the University so as to generate a genuine dispute of material fact that sex bias motivated Doe's expulsion.

Considering the evidence in the light most favorable to Doe, a reasonable jury could not find Stevenson Earl's investigation, DiCarlo's and Redington's commentary on the draft investigation reports, Frost's adjudication, and Keller's internal appeal decision sufficient to demonstrate sex bias motivated the University's decision to expel Doe. Nor could a reasonable jury find there existed sufficient external pressure on the University to adjudicate Title IX claims in favor of females alleging complaints against males to suggest the University acted on the basis of sex. *Cf. Rossley*, 979 F.3d at 1196. As such, Defendants are entitled to summary judgment on Doe's Title IX claim in Count 2.

## B.    Due Process (Count 1)

### 1.    Substantive due process

In Count 1, Doe brings claims under 42 U.S.C. § 1983, alleging the individual Defendants violated his substantive due process rights, as set forth in the Fourteenth Amendment. ECF No. 57 ¶¶ 340–88. Defendants argue they are entitled to summary judgment on Doe's claims because he fails to identify any fundamental right entitled to substantive due process protection. ECF No. 139 at 31–36. Even if Doe identified a protected right, Defendants argue

his claims nevertheless fail because he cannot show Defendants' actions shocked the conscience or that Defendants were deliberately indifferent to his fundamental rights. *Id.* at 36–37. Doe's resistance identifies a variety of alleged fundamental rights. ECF No. 185 at 31–34. At the hearing, Doe narrowed his substantive due process claims to the deprivation of his right to consensual sexual conduct. Doe argues Frost's adjudication was arbitrary and capricious. *Id.* at 32. Doe further argues Keller's and Braun's appellate review of Frost's decision was arbitrary and capricious. *Id.* at 31–33.

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) (quoting 42 U.S.C. § 1983). The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Fundamental rights or liberties that are protected by substantive due process are those implicit in the concept of ordered liberty or derived from our Nation's history and tradition . . . ." *Van Orden v. Stringer*, 937 F.3d 1162, 1168 (8th Cir. 2019), *cert. denied sub nom. Orden v. Stringer*, 140 S. Ct. 1146 (2020). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . ." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

In *Lawrence v. Texas*, the Supreme Court determined the right to liberty under the Due Process Clause gave same-sex couples the right to engage in private sexual conduct without government intervention. 539 U.S. 558, 578 (2003). Due in part to the Supreme Court's apparent application of rational basis scrutiny to the statute at issue in *Lawrence*, the Circuit Courts of Appeal are split as to whether the Supreme Court intended to recognize a fundamental right to private, consensual sexual conduct. *Id.* at 579. ("The Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual.");

*see, e.g.*, *Seegmiller v. LaVerkin City*, 528 F.3d 762, 771–72 (10th Cir. 2008) (holding there is no broad fundamental right to sexual conduct under *Lawrence*'s application of a rational basis analysis); *Lofton v. Sec'y of Dep't of Child. & Fam. Servs.*, 358 F.3d 804, 817 (11th Cir. 2004) (holding *Lawrence* did not create a fundamental right to private sexual conduct and only requires rational basis standard of review); *Cook v. Gates*, 528 F.3d 42, 56 (1st Cir. 2008) (determining *Lawrence* applied a balancing test that is neither strict scrutiny nor rational basis and recognized a liberty interest in private, consensual sexual conduct); *Witt v. Dep't of Air Force*, 527 F.3d 806, 816–17, 821 (9th Cir. 2008) (finding *Lawrence* requires the application of heightened scrutiny). The Eighth Circuit has not addressed whether *Lawrence* recognizes a fundamental right to private consensual sexual conduct. For purposes of analyzing Defendants' motion, the Court assumes, without deciding, Doe has a fundamental right to private, consensual sexual conduct.

"[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Riley v. St. Louis Cnty. of Mo.*, 153 F.3d 627, 630–31 (8th Cir. 1998) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)); *see also Doe v. Univ. of Neb.*, 451 F. Supp. 3d 1062, 1110 (D. Neb. 2020) ("The 'core of the concept [of substantive due process is] protection against arbitrary action' by the government." (alteration in original) (quoting *Putnam v. Keller*, 332 F.3d 541, 547 (8th Cir. 2003))). A substantive due process claim can be stated in two ways. *Riley*, 53 F.3d at 631. "One, substantive due process is violated when the state infringes 'fundamental' liberty interests without narrowly tailoring that infringement to serve a compelling state interest." *Id.* Or, two, "substantive due process is offended when the state's actions either shock the conscience or offend judicial notions of fairness or human dignity." *Id.* (cleaned up).

"To prevail on an as-applied substantive due process claim, the [plaintiff] must show both that the state officials' conduct is conscience-shocking and that it violated a fundamental right." *Van Orden*, 937 F.3d at 1167. "One question in a substantive due process challenge . . . is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8 (1998)). Conduct is conscience-shocking when it is "intended to injure in some way unjustifiable by any government interest." *Putnam*, 332 F.3d at 548. Conduct "evinc[ing] a deliberate indifference to protected rights" can also be conscience shocking when the actor "had an opportunity to consider other alternatives before choosing a course of action." *Id.* (internal quotation marks and citation omitted); *Neal v. St. Louis Cnty. Bd. of Police Comm'rs*, 217 F.3d 955, 958 (8th Cir. 2000) ("[W]here a state actor is afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action, the chosen action will be deemed 'conscience shocking' if the action was taken with 'deliberate indifference.'" (quoting *Lewis*, 523 U.S. at 850–51)). "Mere negligence can never be conscience-shocking and cannot support a claim alleging a violation of substantive due process rights." *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005). "Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury." *Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) (internal quotation marks and citation omitted).

a.      Frost

Doe fails to show Frost's actions in the disciplinary proceeding and the Adjudication Decision rise to the level of conscience-shocking conduct violative of Doe's substantive due process rights. *Cf. Van Orden*, 937 F.3d at 1167. As discussed above, Frost's decision to omit Lovaglia's hearing testimony regarding Complainant #1 from her decision was reasonable given

the nature of the testimony and Lovaglia's clarification that it was only his "recollection." Lovaglia's qualification of his testimony in this manner suggested some uncertainty regarding Complanant #1's remarks regarding consent. This is apparent in Lovaglia's change from his affirmative testimony that Complainant #1 told him it was consensual to his testimony that he recalled she "conveyed the idea" the sexual conduct was consensual. *See* Hr'g Tr. 483:23–484:8, ECF No. 179-1 at 124. Further, there is no evidence Frost failed to consider Doe's recounting of the facts giving rise to the Complaints. In her decision, Frost summarized the accounts of Complainants and Doe. *See* ECF No. 136 at Appx. 627–646. Doe points to no conduct by Frost that indicates she acted with an intent to injure Doe or with deliberate indifference to his fundamental rights. *Cf. Riley*, 53 F.3d at 631. Defendants are entitled to summary judgment on Doe's substantive due process claim as to Frost.

> b.     Keller

Doe also fails to demonstrate Keller engaged in conscience-shocking conduct during Doe's internal appeal in violation of his substantive due process rights. Doe contends Keller did not review all of the materials necessary to conduct his appellate review. ECF No. 185 at 7–9; ECF No. 185-2 ¶ 88. Doe further claims Keller spent "inadequate time" reviewing the allegedly truncated record. ECF No. 185-2 ¶ 89. The Court finds Doe fails to demonstrate Keller's conduct in his appellate review was conscience-shocking as to the materials he reviewed or the duration of his review.

The Court first considers the substance of the record before Keller. In his deposition, Keller testified he reviewed Doe's appeal letter and any appeal documentation from the University, though he did not believe he had access to the hearing transcript. Keller Dep. 8:20–9:1, 12:6–10, ECF No. 179-6 at 4–5; *see also* ECF No. 136 at Appx. 654 (Letter from Redington to Keller indicating Redington transmitted appeal documents to Keller). However, Keller confirmed he had

access to the investigative report, Adjudicator's Decision, exhibits to the hearing on Complainants' claims, and Doe's student record. *Id.* at 12:10–13:7. Even assuming Keller did not have the hearing transcripts available to him, the Court finds Keller did not act in a conscience-shocking manner in reviewing the comprehensive documents. In Doe's appeal letter he provides a lengthy account of "his side of the story" and identifies where he claims Frost erred. ECF No. 179-3 at p. 82–98. In his resistance, Doe acknowledges he notified Keller of "filtered facts and material misrepresentations," and discriminatory motives. ECF No. 185 at 32. The investigative report and Adjudicator's Decision similarly contain summaries as to where Doe's factual recounting differs from Complainants'. Doe fails to show Keller engaged in conscience-shocking conduct related to the substance of the materials he considered in conducting his appellate review.

Next, the Court considers the duration of Keller's review of the materials. Keller explained his appellate review varies based on the facts of each case. Keller Dep. 41:24–43:3, ECF No. 179-6 at p. 12. He testified his initial review may take two to three hours. However, he explained he returns to the materials to engage in another careful review. *Id.* at 42:14–24. Keller testified he spent eight to ten hours reviewing the materials for Doe's appeal. *Id.* at 43:1–3. Thus, Keller spent several hours on multiple occasions reviewing the materials necessary to conduct his appellate review. Doe fails to demonstrate Keller's methodical, multi-hour appellate review process is conscience-shocking conduct.

Given the extensive nature of the records before Keller, in addition to Keller's stated method of spending several hours reviewing materials and then returning to the materials to conduct another multi-hour review, Doe fails to demonstrate an intent to injure or a deliberate indifference to Doe's protected rights. *Cf. Riley*, 53 F.3d at 631. In fact, Keller's process demonstrates his intent to engage in a thorough and contemplative appellate review. Doe fails to

provide support for his claim that Keller engaged in a "sham and cursory affirmation of Frost's biased, outrageous, and unsupported findings." ECF No. 185 at 33.

Viewing the evidence in the light most favorable to Doe, the alleged shortcomings of Keller's appellate review do not amount to the egregious and outrageous conduct necessary to shock the conscience. *Cf. Putnam*, 332 F.3d at 548. Doe points to no facts suggesting Keller intended to injure Doe or that Keller was deliberately indifferent to Doe's rights in conducting his appellate review. *See id.* Defendants are entitled to summary judgment on Doe's substantive due process claim as to Keller.

### c.     Braun

Finally, Doe fails to show Braun's actions as the Executive Director of the Board of Regents in conducting Doe's external appellate review were conscience-shocking in violation of Doe's substantive due process rights. *Cf. Van Orden*, 937 F.3d at 1167. Doe argues generally that Braun failed to engage in a deliberate and careful appellate review. ECF No. 185 at 32. Doe points to no specific actions taken by Braun demonstrating an alleged indifference to Doe's protected rights. *Cf. Neal*, 217 F.3d at 958. Doe merely argues Braun's indifference can be assumed from the Board of Regents's affirmation of Doe's expulsion. ECF No. 185 at 32. Without specific actions to consider, the Court cannot assess whether Braun acted in an outrageous and egregious manner. Braun's decision to uphold Doe's sanctions, without more, is insufficient to demonstrate a deliberate indifference to Doe's protected rights or an intent to injure Doe. *See Putnam*, 332 F.3d at 548; *Neal*, 217 F.3d at 958. Defendants are entitled to summary judgment on Doe's substantive due process claim as to Braun.

### 2.     Procedural due process

In its order granting in part and denying in part Defendants' motion to dismiss Doe's third amended complaint, the Court granted the individual Defendants qualified immunity on Doe's

27

procedural due process claims. ECF No. 106 at 45. The Court found Doe failed to plausibly allege he was denied the right to adequate notice of the charges against him or that he was not provided the right to review evidence against him prior to the disciplinary hearing. *See id.* at 27–29. The Court concluded Doe's request for declaratory and injunction relief survived to the extent Doe's procedural due process claim survived on the merits. *Id.* at 45.

Defendants argue they are entitled to summary judgment on Doe's procedural due process claims because Doe cannot demonstrate he was denied procedural due process during his disciplinary proceedings. ECF No. 139 at 46–47. Doe argues the individual Defendants violated his procedural due process rights in several ways. ECF No. 185 at 15–31. At the summary judgment hearing, Doe argued Defendants deprived him of the right to be heard by an impartial decisionmaker and receive adequate notice. Because the Court has denied Doe's procedural due claim relating to the adequacy of notice, the Court only considers whether Defendants are entitled to summary judgment on Doe's claim that Defendants violated his right to a hearing before an impartial decisionmaker. *See* ECF No. 106 at 29. The Court finds Doe fails to show there is a genuine dispute of material fact as to whether Frost's credibility determinations and the manner of the proceedings demonstrate Defendants deprived him of the right to be heard by an impartial decisionmaker.

As in its order granting in part and denying in part Defendants' motion to dismiss, the Court assumes, without deciding, Doe has a liberty or property interest entitled to procedural due process protections. *See* ECF No. 106 at 21. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[P]rocedural due process must be afforded [to] a [disciplined] student on the college campus 'by way of adequate notice, definite charge, and a hearing with opportunity to present one's own side of

28

the case and with all necessary protective measures.'" *Jones v. Snead*, 431 F.2d 1115, 1117 (8th Cir. 1970) (quoting *Esteban v. Cent. Mo. State Coll.*, 415 F.2d 1077, 1089 (8th Cir. 1969)). Courts "apply the standard of reasonableness in determining whether or not a student has been deprived of his constitutional rights." *Id.*

The record does not support Doe's claim that he was denied the opportunity for a hearing before an impartial decisionmaker. Doe appears to contend he was denied procedural due process because Frost did not credit his version of the events. However, Doe points to no evidence to suggest Frost's credibility finding was motivated by sex bias. The record shows Frost credited Complainants' testimony, relying in part on consistent testimony from witnesses who had contact with Complainants directly after the events at issue. *See* ECF No. 136 at Appx. 630–31, 638–39. Further, as discussed above, Doe fails to show Frost's decision to omit a portion of Lovaglia's testimony from her decision or her description of Doe's account as "fantasy" demonstrate Frost was biased. Absent a showing of bias, Doe cannot maintain a claim for a violation of procedural due process merely because the adjudicator found the Complainants' version of events more credible than his. To the extent Doe alleges Frost's credibility determinations violated his right to procedural due process, his claim fails.

Doe also fails to show the manner of the proceeding violated his procedural due process rights. Doe was present throughout the hearing. He was represented by counsel, who offered exhibits and submitted witness questions to Frost. ECF No. 136 at Appx. 621–23. Doe's counsel objected to exhibits offered by the University and withdrew exhibits in response to objections by the University. *See* Hr'g Tr. 44:6–14, ECF No. 179-1 at 13; ECF No. 136 at Appx. 622. Doe argues he had to present "his side of the story" through submitting questions to Frost for her to ask witnesses. ECF No. 185 at 20–21. This method of proceeding is not inconsistent with the manner of disciplinary proceedings. Even so, Doe was given the opportunity at the end of his

examination to provide Frost with any other information he thought she may need in rendering her decision. Hr'g Tr. 829:3–15, ECF No. 179-2 at 47; *see Jones*, 431 F.3d at 1117. Frost's decision demonstrates she was aware of and "heard" Doe's version of the events. *Mathews*, 424 U.S. at 333. Frost noted where Complainants' and Doe's versions of the facts diverged. *See* ECF No. 136 at Appx. 627–29, 637–39. Doe fails to provide sufficient evidence to show the manner of the proceedings violated his procedural due process rights.

Viewing the evidence in the light most favorable to Doe, a reasonable jury could not find Frost's adverse credibility determinations as to Doe were the product of bias against him. Doe also fails to show the manner of the proceeding deprived him of the opportunity to be heard by an impartial decisionmaker. Because Doe fails to generate a genuine issue of material fact as to his procedural due process claims, Defendants are entitled to summary judgment on the procedural due process component of Doe's claims in Count 1.

Because Doe fails to generate a genuine issue of material facts as to both the substantive and procedural due process components of his claims in Count 1, Defendants are entitled to summary judgment on Count 1.

### C.     Equal Protection (Count 6)

In Count 6, Doe brings claims under 42 U.S.C. § 1983, alleging the individual Defendants violated his right to equal protection under the law, as set forth in the Fourteenth Amendment. ECF No. 57 ¶¶ 485–510. Defendants argue they are entitled to summary judgment on Doe's equal protection claims because Doe fails to raise a genuine issue of material fact as to whether Defendants intentionally discriminated against him based on his membership in a protected class. ECF No. 139 at 48–50. Specifically, Defendants argue Plaintiff cannot demonstrate a similarly situated individual outside of Doe's protected class received favorable treatment where he received unfavorable treatment. *Id.* at 49. Doe sets forth the law regarding equal protection but does not

rebut Defendants' argument. *See* ECF No. 185 at 34–35. Doe's complaint appears to allege the individual Defendants discriminated against him on the basis of race, national origin, alienage, and sex. *See* ECF No. 57 ¶¶ 488–89, 494–95. However, at the hearing, Doe only argued the individual Defendants violated his equal protection rights by relying on sex-based stereotypes to make credibility determinations adverse to Doe. Because Doe fails to demonstrate any similarly situated individual outside his protected class received favorable treatment where he received unfavorable treatment, his claim fails as a matter of law.

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins*, 503 U.S. at 120 (quoting 42 U.S.C. § 1983). The Equal Protection Clause of the Fourteenth Amendment prohibits States from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. To establish a claim under the Equal Protection Clause, a plaintiff "must, as a threshold matter, demonstrate that [he] ha[s] been treated differently by a state actor than others who are similarly situated simply because [plaintiff] belong[s] to a particular protected class." *Keevan v. Smith*, 100 F.3d 644, 647–48 (8th Cir. 1996). "In general, the Equal Protection Clause requires that the government treat . . . similarly situated persons alike." *Id.* at 648. "Treatment of dissimilarly situated persons in a dissimilar manner by [a state actor] does not violate the Equal Protection Clause." *Id.* "Absent a threshold showing that [ ]he is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Id.* (internal quotation marks omitted) (quoting *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994)).

Doe alleges Complainants received favorable treatment during the University's disciplinary proceeding. ECF No. 57 ¶ 497. Doe does not identify any other comparator in his complaint, resistance, or supporting materials. *See id.*; ECF No. 185 at 34–35. "It goes almost

without saying that . . . sexual assault complainant[s] and those [they] accuse[ ] of sexual assault are not similarly situated as complainants." *Regents of the Univ. of Minn.*, 999 F.3d at 581 (internal quotation marks omitted) (quoting *Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 74 (1st Cir. 2019)). Complainants, by reason of their position in the disciplinary proceeding, are not similarly situated to Doe. *See id.* ("Jane was not similarly situated because no one filed a complaint against her . . . ."). Thus, any alleged difference in treatment between Doe and Complainants does not violate the Equal Protection Clause. *See Keevan*, 100 F.3d at 648. Because Doe fails to meet the threshold requirement of demonstrating a similarly situated individual received favorable treatment, his equal protection claim fails as a matter of law. *Cf. id.* Defendants are entitled to summary judgment on Count 6.

### D.      Declaratory/Injunctive Relief (Count 8)

In Count 8, Doe seeks 1) a declaratory judgment that the University's sexual misconduct policies, both on their face and as applied to him, violate the Due Process Clause of the Fourteenth Amendment and analogous provisions of the Iowa Constitution; and 2) an injunction requiring the individual Defendants to reinstate him as a student, clear his record, and restrain the University from implementing further disciplinary proceedings against him. ECF No. 57 ¶¶ 531–47 (alleging the University's policies are unconstitutionally vague and overbroad, and violated his procedural due process rights). Following the Court's partial dismissal of Count 8, Doe's request for declaratory judgment and injunctive relief survived as to Doe's claims that the University's sexual misconduct policies are unconstitutionally vague and overbroad. Doe's request in Count 8 also survived to the extent Doe's procedural due process claim survived on the merits. ECF No. 106 at 9–10.

At the hearing, Doe confirmed he is not pursuing, and his complaint does not contain, a First Amendment claim. Because Defendants are entitled to summary judgment on Doe's

substantive and procedural due process claims, as discussed above, the Court has no basis on which to order declaratory and injunctive relief. Thus, the Court need not perform an injunctive relief analysis. Defendants are entitled to summary judgment on Count 8.

## V.   CONCLUSION

Doe fails to demonstrate a genuine issue of material fact exists as to whether sex bias motivated the University's decision to expel him, as alleged in Count 2. As to his claims under § 1983, Doe fails to generate a genuine dispute of material fact that the University policy or individual Defendants deprived him of a fundamental right to consensual sexual conduct. Doe similarly fails to generate a genuine dispute of material fact as to whether he received a meaningful opportunity to be heard during the disciplinary proceedings. Thus, Defendants are entitled to summary judgment on Doe's substantive due process and procedural due process claims in Count 1. Finally, Doe fails to demonstrate a similarly situated comparator received favorable treatment, as required to establish an equal protection claim. Thus, his claim in Count 6 fails as a matter of law. Because Defendants are entitled to summary judgment on Doe's due process claims in Count 1, Doe's request in Count 8 for declaratory and injunctive relief on those claims must fail.

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 128, is **GRANTED**.

The Clerk of Court shall enter judgment in favor of Defendants and against Plaintiff.

The parties are responsible for their own costs.

**IT IS SO ORDERED.**

Dated this 20th day of September, 2021.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE

33